GRAHAMHOLLIS APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
David Lin (SBN 312350)
dlin@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: (619) 692-0800
Facsimile: (619) 692-0822

Attorneys for Plaintiffs MARTA L CERON DE
OROZCO and EMMA BARCENAS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA L CERON DE OROZCO and EMMA BARCENAS, individually and on behalf of all similarly situated employees of Defendants in the State of California,<br><br>      Plaintiffs,<br><br>    v.<br><br>FLAGSHIP FACILITY SERVICES, INC.; and DOES 1 THROUGH 50, inclusive,<br><br>      Defendants. | Case No.: 3:18-CV-02397-JLS-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; (2) PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS; (3) APPROVAL OF THE CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVE; (5) APPOINTMENT OF SETTLEMENT ADMINISTRATOR; AND (6) SETTING A FINAL APPROVAL HEARING**<br><br>Date:    January 30, 2020<br>Time:   1:30 p.m.<br>Dept:   4D<br>Judge:   Hon. Janis L. Sammartino |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL BACKGROUND ..................................................................... 2

    A.   PLAINTIFF'S CLASS AND PAGA CLAIMS ............................... 2

    B.   DEFENDANT'S STRONGLY DENY PLAINTIFFS' CLAIMS ................. 3

    C.   DISCOVERY COMPLETED ........................................................ 4

III. SUMMARY OF THE SETTLEMENT TERMS AND RELIEF OBTAINED ........ 6

    A.   SETTLEMENT CLASS DEFINITION ......................................... 6

    B.   SETTLEMENT AMOUNTS .......................................................... 7

    C.   CALCULATION OF INDIVIDUAL SETTLEMENT PAYMENTS ............ 8

    D.   SCOPE OF THE RELEASE ........................................................... 9

    E.   ALLOCATION OF UNCLAIMED FUNDS ................................... 9

    F.   SETTLEMENT ADMINISTRATION AND NOTICE PROCEDURE ....... 10

IV.  LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS
    ACTION SETTLEMENTS ...................................................................... 10

V.   LEGAL ARGUMENT ............................................................................ 12

    A.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23 ........... 12

    B.   THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE ........ 16

        1.   The Strength of Plaintiffs' Case ......................................... 16

        2.   Risk, Expense, Complexity, and Likely Duration of Further
            Litigation ........................................................................ 17

        3.   Risk of Maintaining Class Action Status Throughout Trial ...... 18

        4.   Amount Offered in Settlement ........................................... 18

        5.   Extent of Discovery Completed and the State of the
            Proceedings ..................................................................... 19

        6.   Experience and Views of Counsel ...................................... 20

        7.   Presence of a Government Participant ................................ 20

VI.  THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES ..................... 21

    A.   THE SERVICE AWARD AND ATTORNEY'S FEES PROVISION
        FALL WELL WITHIN THE RANGE OF REASONABLENESS ............ 21

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION

1.   Courts Routinely Award Class Representative A Service Award......21

2.   The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney's Fees and Reimbursement of Actual Costs.....................................................................................22

VII.   THE NOTICE TO CLASS MEMBERS IS FAIR AND ADEQUATE..................24

VIII.   CONCLUSION.........................................................................................25

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION

# TABLE OF AUTHORITIES

Page(s)

**United States Supreme Court Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)...............................................................................11, 12, 14, 15

*Crown, Cork & Seal Co. v. Parker*,
   462 U.S. 345 (1983)........................................................................................14

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .......................................................................................24

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .......................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)........................................................................................12

**Federal Cases**

*Adoma v. Univ. of Phoenix, Inc.*,
   913 F.Supp.2d 964 (E.D.Cal.2012) ...............................................................21

*Antonopulos v. North Am. Thoroughbreds, Inc.*,
   1991 WL 427893 (S.D. Cal. May 6, 1991) ....................................................24

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .........................................................................11

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ..................................................................10, 16

*Cotter v. Lyft, Inc.*,
   193 F. Supp. 3d 1030 (N.D. Cal. 2016).........................................................21

*Custom LED, LLC v. eBay, Inc.*,
   2013 WL 6114379 (N.D. Cal. Nov. 20, 2013) ..............................................21

*Dickey v. Advanced Micro Devices, Inc.*,
   No. 15-CV-04922-HSG, 2019 WL 4918366 (N.D. Cal. Oct. 4, 2019)........................20

*Dunleavy v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) ................................................................. 11, 24

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir.1998) ................................................11, 12, 13, 16

*In re Heritage Bond Litig.*,
   2005 WL 1594403 (C.D. Cal. June 10, 2005) .......................................... 24

*Hopson v. Hanesbrands Inc.*,
   No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .......................... 21

*Ingram v. The Coca- Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) .............................................................. 22

*Long v. Stanley Black & Decker, Inc.*,
   No. 14-CV-1246 JLS (BGS), 2015 U.S. Dist. LEXIS 53595 (S.D. Cal.
   Apr. 23, 2015) ...................................................................... 24, 25

*Mangold v. California Pub. Utils. Comm'n*,
   67 F.3d 1470 (9th Cir. 1995) ................................................................. 23

*In re MD.C. Holdings Sec. Litig.*,
   1990 WL 454747 (S.D. Cal. Aug. 30 1990) ................................................... 24

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ................................................................. 12

*Noll v. eBay, Inc.*,
   309 F.R.D. 593 (N.D. Cal. 2015)............................................................. 15

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*,
   292 F. Supp. 3d 1018 (S.D. Cal. 2017)...................................................... 16

*Officers for Justice v. Civil Service Commission*,
   688 F.2d 615 (9th Cir. 1982) ........................................................... 16, 19

*In re Oracle Secs. Litig.*,
   No. 90–0931, 1994 WL 502054 (N.D.Cal. June 18, 1994) ......................................... 22

*Pelletz v. Weyerhaeuser Co.*,
   592 F. Supp. 2d 1322 (W.D. Wash. 2009) .................................................... 22

*In re Public Ser. Co. of New Mexico*,
   1992 WL 278452 (S.D. Cal. July 28, 1992) .................................................. 24

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir.1994) .............................................................................. 25

*Smith v. Tower Loan of Miss., Inc.*,
    216 F.R.D. 338 (S.D.Miss.2003) ..................................................................... 22

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ........................................................................... 11

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ........................................................... 14

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) ........................................................................... 16

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................. 24

*Wolin v. Jaguar Land Rover North Am. LLC*,
    617 F.3d 1168 (9th Cir. 2010) ......................................................................... 13

*Zubia v. Shamrock Foods Co.*,
    No. CV1603128ABAGRX, 2017 WL 10541431 (C.D. Cal. Dec. 21,
    2017) ............................................................................................................... 21

**California State Cases**

*Bell v. Farmers Ins. Exch.*,
    115 Cal. App. 4th 715 (2004) .......................................................................... 22

*Laffitte v. Robert Half Int'l Inc.*,
    1 Cal. 5th 480 (2016) ....................................................................................... 24

*Serrano v. Priest*,
    20 Cal. 3d 25 (1977) ....................................................................................... 23

**Statutes**

28 U.S.C. § 1441 ...................................................................................................... 3

Private Attorneys General Act of 2004 (PAGA), Cal. Labor Code § 2698 et
    seq. .......................................................................................................... *passim*

Cal. Business and Professions Code §§ 17200, et seq. .......................................... 9

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

California Labor Code § 203 ................................................................... 3

Fair Labor Standards Act (29 U.S.C. §§ 206, et seq) ................................*passim*

Labor Management Relations Act ............................................................ 17

**Other Authorities**

Fed. Rule Civ. Proc. 23(b)(3)(B) ............................................................ 15

Fed. Rule Civ. Proc. 23(c)(2)(B) ............................................................ 24

Fed. Rule Civ. Proc. 23(b)(3)(D) ............................................................ 12

Fed. Rule Civ. Proc. 23(a) and (b) ......................................................... 12

Fed. Rule Civ. Proc. 23(e) ...................................................................... 11

Fed. Rule Civ. Proc. Rule 30(B)(6) ......................................................... 5

Fed. Rule Civ. Proc. Rule 23 .................................................................. 26

James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999).................. 12

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF CLASS ACTION

# I.    **INTRODUCTION**

Plaintiffs Marta L. Ceron De Orozco and Emma Barcenas ("Plaintiffs") seek preliminary approval of a non-reversionary $2,000,000 Class Action, Collective Action, and Private Attorney General Act of 2004, Cal. Labor Code § 2698 et seq., ("PAGA") Settlement entered into by Plaintiffs on behalf of themselves and other similarly situated individuals and/or aggrieved janitorial employees who worked for Defendant Flagship Facility Services, Inc. ("Defendant" or "Flagship") in California between August 13, 2014 through  the date of preliminary approval (the "Class Period"). [*See* Declaration of Graham S.P. Hollis in Support of Plaintiffs' Motion for Preliminary Approval ("Hollis Decl.") ¶ 13; Exhibit 1, Settlement Agreement ("SA"), to Hollis Decl.]  The proposed settlement ("Settlement") is an excellent result for the approximately 6,150 Settlement Class Members. [Hollis Decl., ¶ 46.] The Settlement was reached only after the Parties conducted extensive investigation of Plaintiffs' claims. [Hollis Decl., ¶¶ 31-39.] The Parties conducted a thorough analysis and review of Defendant's employment policies and practices applicable during the Class Period; reviewed thousands of documents and records, including a significant sample of putative class members' time and payroll records during the Class Period, and conducted in-depth Class Member interviews prior to participating in private mediation. [*Id.* at ¶ 37.] The Settlement is the product of hard-fought negotiations, after a full-day mediation before Tripper Ortman, Esq., an experienced mediator well-versed in wage and hour class actions. [*Id.* at ¶ 26.] The Settlement is also strongly supported by experienced counsel, who carefully considered the strength of Plaintiffs' claims and Defendant's potential defenses, as well as the expense, complexity, risks, and likely duration of continued litigation. [Id. at ¶¶ 6-12.] The Settlement is fair, adequate and reasonable in light of the uncertainty of Plaintiffs' claims; the significant risks and expense of continued litigation, which the parties anticipates will likely continue for several years, and including the possibility of appeal. Thus, the Settlement merits preliminarily approval because it satisfies all of the criteria for approval; it provides significant and timely monetary relief to the class and avoids costly and lengthy litigation.

## II.    FACTUAL BACKGROUND

Plaintiff Marta L. Ceron De Orozco ("Ceron") is a former non-exempt employee of Defendant who worked for Defendant as a janitor in San Diego, CA from January 1999 to October 2017. [Hollis Decl., ¶ 19.] Plaintiff Emma Barcenas ("Barcenas") is a former non-exempt employee of Defendant who worked as a janitor at the San Diego International Airport from June 20, 2001 through December 20, 2016. [Hollis Decl., ¶ 20.] At all relevant times, Defendant classified Plaintiffs and other janitorial employees as non-exempt and compensated them on an hourly basis. [Hollis Decl., ¶ 84.] Defendant provides facility maintenance services at various locations throughout California. [Hollis Decl., ¶ 13.]

## A.    PLAINTIFF'S CLASS AND PAGA CLAIMS

Plaintiffs' main claims alleged in the operative Complaint are as follows:

1. Failure to Provide Off-Duty Meal and Rest Breaks. Plaintiffs claim janitorial employees were required to use their personal cell phones and company radios to communicate with Defendant and other co-workers and managers at all times during their shifts. [*See* Declaration of Emma Barcenas in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement ("Barcenas Decl."), ¶¶ 7, 10; *See also* Declaration of Marta L. Ceron de Orozco in Support of Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement, ("Ceron de Orozco Decl."), ¶¶ 6, 9.] Plaintiffs allege Defendant had a pattern and practice of requiring the non-exempt janitors to leave their cell-phones and/or radios "ON" at all times, including during meal and rest breaks, and to require them to answer phone calls and perform janitorial tasks, even when Plaintiffs were on their breaks. [Ceron Decl. ¶ 6; Barcenas Decl. ¶ 7.] Plaintiffs allege they were not allowed to leave their work sites during their breaks. [*Id.* ¶ 6]

2. Failure to Pay for All Wages for Off-the-Clock Work. Plaintiffs allege that Defendant would require them to clock-out for a thirty (30) minute, unpaid, meal period, even though they were required to keep their radios and/or cell phones "on" at all times. [Hollis Decl. ¶ 23.] Plaintiffs allege that Defendant's supervisors knew that Plaintiffs were interrupted during their meal periods and required to work while off-the clock, but failed

to compensate them and other janitorial employees for this time. [*Id.* ¶ 37.]

3. <u>Failure to Reimburse for Necessary Business Expenses</u>.  Plaintiffs alleges that Defendant has a company policy that requires the use of their personal cell-phone to communicate with their supervisors. Plaintiffs allege that Defendant's $1.87 a month reimbursement policy does not properly compensate for all the work-related use of their cell phones. [Hollis Decl., ¶ 43; Exhibit 4 to Hollis Decl.]

4. <u>Waiting Time Penalties and PAGA Penalties</u>. Plaintiffs allege statutory waiting time penalties under California Labor Code section 203 and civil penalties under PAGA resulting from Defendant's alleged failure to pay all minimum, regular and overtime wages for the work performed off-the-clock during on-duty meal periods.  [Hollis Decl., ¶ 14.]

On August 13, 2018, Plaintiff Ceron filed the original Complaint in this Action in the Superior Court for the County of San Diego. On September 5, 2018, Plaintiff Ceron filed a First Amended Complaint adding a cause of action for civil penalties under PAGA. On October 18, 2018, Defendant filed a Notice of Removal removing the Action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441. On January 9, 2019, Plaintiffs filed a Second Amended Complaint adding Plaintiff Emma Barcenas ("Barcenas"). On January 23, 2019, Defendant filed its Answer to Plaintiffs' Second Amended Complaint similarly denying all liability as well as disputing that the Action is appropriate for class treatment.

## B.    DEFENDANT'S STRONGLY DENY PLAINTIFFS' CLAIMS

Defendant vehemently denies any liability or wrongdoing of any kind associated with the claims alleged, and further denies that this Action is appropriate for class treatment for any purpose other than settlement. [Hollis Decl., ¶¶ 18, 46.] For example, Defendant maintains that class members had autonomy in the execution of their duties and that their hours worked varied greatly and claim that these variations present an obstacle to class certification. [*Id.*] Defendant maintains that they comply with all of their meal and rest period obligations under California law, and that Plaintiff and all Settlement Class Members were properly provided with the opportunity to take all meal and rest periods to

which they were entitled at all times during the Class Period. [*Id.* at ¶ 44.]  Defendants vehemently deny that any putative class member was required to answer calls during their shifts and that, any class member who did so, did so voluntarily. [*Id.* at ¶ 46.] Defendant claims there are no written policies specifically requiring class members to stay on-duty or to answer phone calls or to stay close to their assigned areas at all times during their shifts. [*Id.*] Defendant contends its timekeeping practices did not deprive Plaintiffs or the putative class of any minimum or overtime wages, and that each putative class member was required to accurately record all his or her time worked in Defendant's timekeeping system for payment of wages, thereby posing an obstacle to class certification. [*Id.* at ¶¶ 45-46.] Defendant vehemently denies that any putative class member was ever required to perform work while off-the-clock. [*Id.* at ¶ 45]. Defendant maintains that if any putative class members ever performed any work while off-the-clock, they did so without authorization, and that Defendant was unaware of it, and that, if Defendant had known that putative class members had performed work off-the-clock, it would have provided them compensation for their work. [*Id. at ¶¶* 45-46.]

With respect to Plaintiffs' claim for waiting time penalties, Defendant alleged that its good-faith belief in the use of its timekeeping and payroll practices precludes the imposition of any waiting time penalties since Plaintiffs will not be able to prove that Defendant's alleged failure to pay all final wages at the time of separation was "willful." [*Id.* at ¶ 45.] Defendant claims that they did not engage in any Labor Code or Wage Order violations and Plaintiffs will not be able to demonstrate that Defendant is liable for civil penalties under the Labor Code or statutory penalties under PAGA. [*Id.* at ¶ 16.]

## C.    DISCOVERY COMPLETED

The Parties exchanged initial disclosures on November 19, 2018. [Hollis Decl., ¶ 25.] Plaintiffs served a first set of formal written discovery consisting of interrogatories and document requests on December 21, 2018. [*Id.*] Defendant provided responses and documents on January 22, 2019. [*Id.*] Plaintiffs served a second set of written discovery, consisting of 19 interrogatories and 50 document requests on February 22, 2019. [*Id.*]

Defendant's document production included Plaintiffs' personnel file, Defendant's policies regarding meal and rest periods, handbooks, reimbursement policies, information about Defendant's business, among others. [Hollis Decl., ¶ 25.] Plaintiffs obtained the names and contact information for over 630 employees, and Defendant produced a sample of time and pay records consisting in multiple thousands of documents. [*Id.*]

Defendant propounded three sets of Request for Production of Documents to Plaintiff Ceron, the first on January 4, 2019, the second on January 31, 2019, and the third on February 22, 2019. Defendant also propounded two sets of Request for Production of Documents to Plaintiff Barcenas, the first on February 12, 2019, and the second on February 22, 2019. [*Id.* at ¶ 25]. Plaintiffs each responded to the first sets of interrogatories on March 19, 2019 and March 20, 2019, respectively, and second set of interrogatories on March 22, 2019 and March 21, 2019, respectively. [*Id.*] Plaintiff Ceron responded to a third set of requests for production of documents on March 22, 2019. [*Id.*] Both Plaintiffs responded to Defendant's Requests for Admissions, Plaintiff Ceron on March 22, 2019 and Plaintiff Barcenas on March 21, 2019. [*Id.*]

In addition to written discovery, Plaintiffs conducted several depositions of Defendant's persons most qualified pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure on March 27 and March 28, 2019, which were not completed. [Hollis Decl. ¶ 25.] Defendant took one full-day deposition of Plaintiff Ceron and one full-day deposition of Plaintiff Barcenas. [*Id.*] Defendant also contends they did not conclude Plaintiffs depositions, and will seek to conclude them absent approval of the Settlement. [*Id.*] Prior to engaging in Settlement discussions, the parties participated in multiple and extensive meet and confer efforts regarding the discovery propounded in the Action. [Hollis decl. ¶ 33.] In addition, the parties jointly submitted several discovery issues to this court, and participated in several discovery conferences, [Dkt. Nos. 30-36], after which Defendant supplemented their prior document production and produced additional pay documents; information regarding their vacation policies, and additional policies. [Hollis Decl. ¶ 25.]

After conducting independent investigations of the allegations and an extensive

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

exchange of discovery including formal written discovery and multiple depositions, the Parties agreed to engage in settlement negotiations and attempted to resolve Plaintiffs' claims through private mediation. [Hollis Decl. ¶ 26.] On August 6, 2019, the Parties participated in a private mediation with mediator Tripper Ortman, which, after extensive negotiations between the Parties, resulted in a Memorandum of Understanding and then a Stipulation and Settlement Agreement. [Hollis Decl. ¶ 26.] The Parties' negotiations were hard-fought, conducted at arms-length, and free from collusion. [Id. at ¶ 27.] Each party was represented at the mediation by experienced class action attorneys with specialized knowledge of class action employment law.

The Parties, with the assistance of the mediator, discussed the many difficult legal and factual issues, in some cases with little or no governing law to guide them. [Hollis Decl. ¶ 27.] During this process, both sides were required to make reasonable compromises in light of the facts, issues, and risks presented. [*Id.*] In particular, Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in such litigation. [*Id.*] Class Counsel also considered the burdens of proof necessary to establish and maintain class certification and then to establish liability against Defendant and to defeat all the defenses raised by Defendant. [*Id.*] All of these factors indicated that the best interests of the Class Members would be served by a settlement of this Action in the manner and upon the terms set forth in the Joint Stipulation of Settlement and Release.

## III.   SUMMARY OF THE SETTLEMENT TERMS AND RELIEF OBTAINED

## A.   SETTLEMENT CLASS DEFINITION

The Class is composed of all members of Non-Exempt Class and the Waiting Time Penalties Subclass. The Non-Exempt Class is defined as all current and former non-exempt janitorial employees who worked for Defendant in California from August 13, 2014 through the present. [SA at ¶ 1.22.] The "Waiting Time Penalties Subclass" is defined as all members of the Non-Exempt Class whose employment with Defendant ended at any time from and after August 13, 2015. [SA at ¶1.39.]

/ / /

Case No.:3:18-CV-02397-JLS-JLB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION

**B.    SETTLEMENT AMOUNTS**

1. <u>Maximum Settlement Amount</u>. Defendant will pay a Maximum Settlement Amount of $2,000,000. [SA at ¶1.20.] The Maximum Settlement Amount does not include the employer's share of the applicable payroll taxes. [SA, at ¶1.20.]

2. <u>Net Settlement Amount</u>. The Net Settlement Amount ("NSA") is the portion of the Maximum Settlement Amount available for distribution to participating Class Members after the deduction of the court-approved Class Counsel's fees and costs, the Class Representative Service Award, the Settlement Administration Costs, and LWDA's portion of the PAGA Payment. The NSA is currently estimated in $1,291,000 ($2,000,000 - $600,000 - $39,000 - $20,000 - $35,000 - $15,000). [Hollis Decl. ¶ 55; SA, at ¶ 1.21.] Any amounts not awarded to the Class Representative and any amounts not awarded as Class Counsel's Fees and Costs, will be allocated to the Net Settlement and distributed to the Class Members. [Hollis Decl. ¶ 55.]

3. <u>Settlement Administration Costs</u>. The Settlement Administration Costs are estimated not to exceed $39,000. [Hollis Decl. ¶50; SA at ¶4.7; Ex. 6 to Hollis Decl.]

4. <u>Payment to the LWDA</u>. The parties agree to pay the sum of $20,000 for all applicable penalties under PAGA. The $20,000 will be allocated 75% (or $ 15,000) paid directly to the LWDA and the remaining 25% (or $5,000) will be distributed among the Participating Class Members as penalties. [SA at ¶ 1.26.]

5. <u>Class Counsel Attorney's Fees and Costs.</u> Subject to Court approval, Class Counsel seek an award of $600,000, representing 30% of the Maximum Settlement Amount, as payment for attorney's fees already incurred prosecuting this Action. [*Id.* at ¶ 4.5.] Class Counsel also seeks reimbursement of out of pocket expenses incurred not to exceed $35,000. [*Id.* at ¶ 4.4.]

6. <u>Class Representative Service Payments</u>. Subject to Court approval and the execution of a general and broader release in favor of the Defendant, Plaintiffs seek preliminary approval of a Class Representative Service Award in an amount not to exceed $10,000 each.  [Hollis Decl. ¶ 79.]

Graham**HOLLIS** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION

## C.     CALCULATION OF INDIVIDUAL SETTLEMENT PAYMENTS

1.   <u>The Non-Exempt Class and Waiting Time Subclass</u>. Each Class Member who does not submit a Request for Exclusion will be mailed a check representing their Individual Settlement, which shall be calculated based on the number of workweeks worked during the class period. The Settlement Administrator will determine Class Members' pro rata portion of the Net Settlement Amount by first determining each Class Member's Qualifying Workweeks during the Class Period. [SA at ¶¶4.3(a)-(d).] Each Class Member's Qualifying Workweeks will be calculated by first determining the number of workweeks the Class Member worked during the class period. Then, if the Class Member is a member of the Waiting Time Penalties Subclass, the Settlement Administrator will allocate an additional six workweeks to him/her. The individual payment to each Class Member will be determined based on the percentage of Qualifying Workweeks allocated to the particular Class Member over the total number of Qualifying Workweeks for all Class Members. [*Id.*] If all Class Members participate in the Settlement, average individual payment to each Class Member will be approximately $209.91 [$1,291,000 / 6,150] and the average payment per workweek will be at least $3.22 [$1,291,000 / 400,000]. These amounts will increase in proportion to the number of Class Members who exclude themselves. [Hollis Decl. at ¶55.]

2.   <u>Opt-In FLSA Settlement Payment</u>.   The parties allocated 5% of the Net Settlement Amount to the settlement of the FLSA claims. [SA at. ¶ 4.3(e).] Class Members will need to opt-in to the FLSA Settlement by timely submitting their FLSA Opt-In Form to receive their FLSA Settlement Payment. Each participating Class Member shall be entitled to a pro-rata share of the FLSA Settlement Fund based on the ratio of the total number of Qualifying Workweeks that he or she worked during the Class Period to the total number of Qualifying Workweeks that all participating Class Members worked during the Class Period. [*Id.*] To the extent a Class Member fails to timely submit their FLSA Opt-In Form, he/she will receive his/her proportionate share of the Net Settlement Fund and their release will not include FLSA claims.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

## D. SCOPE OF THE RELEASE

The release is carefully tailored to the claims at issue in the case. Upon the Effective Date, the Class Representative and all Participating Class Members shall be deemed to have released any and all claims alleged in the Second Amended Complaint ("the Released Claims"), during the Class Period which includes claims for: (a) Failure to provide meal periods, or premium pay; (b) Failure to provide rest periods, or premium pay; (c) Failure to pay all minimum and regular wages; (d) Failure to pay all overtime wages; (e) Failure to pay accrued vacation wages; (f) Failure to indemnify necessary business expenses; (g) Failure to timely pay all wages due during, and upon separation of, employment; (h) Failure to provide accurate itemized wage statements; (i) Failure to maintain accurate records; (j) Violation of Cal. Business and Professions Code §§ 17200, et seq., arising from the claims that are alleged in the Second Amended Complaint; (k) All statutory and civil penalties arising from the claims alleged in the Second Amended Complaint; and (l) Related damages, restitution, disgorgement, interest, attorneys' fees, costs, or expenses relating to any such claims. [SA at ¶12.1.]

In addition, Class Members who submit an FLSA Opt-In Form, will be deemed to have opted in to the collective action for claims under the FLSA and will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation, contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties. [*Id.* at ¶12.2.]

## E. ALLOCATION OF UNCLAIMED FUNDS

The 2,000,0000 Maximum Settlement Amount is non-reversionary and if any Class Members opt out of the Settlement, amounts allocated to those individuals will not revert to Defendant. [SA at ¶¶ 1.20, 9.1.] If any checks remain uncashed after 180 days, the

residual amounts will be donated to Legal Aid at Work, a California non-profit agency which provides free legal services on employment issues to low-income workers, as a *cy pres* recipient. [*Id.* at ¶ 9.3.]

## F.    SETTLEMENT ADMINISTRATION AND NOTICE PROCEDURE

Rust Consulting (the "Settlement Administrator") will provide notice to all Class Members. [SA at ¶¶6.1-6.4.] The Settlement Administrator will initially undertake address verification measures including utilization of an Accurint (or substantially similar) skip trace as well as searching the National Change of Address Database maintained by the United States Postal Service. [*Id.* at ¶6.3.] This will ensure that all reasonable measures have been undertaken to obtain the most up to date address for Class Members <u>before</u> the Settlement Notice is mailed. The terms of the Settlement do not require Class Members to undertake the burden of completing and returning a claim form. Should any Class Member wish to opt out, the Notice of Settlement will explain how to inform the Settlement Administrator that they do not wish to participate in or be bound by the terms of the Settlement. Class Members will have sixty (60) days to provide notice of their desire to opt out of the Settlement to the Settlement Administrator from the date of mailing of the Settlement Notice. [Ex. A at 1, 9, 10]. Class Members who do not opt out of the Settlement will be entitled to their pro rata share of the Settlement. [SA at ¶4.3(c).]

The Settlement Notice will be mailed with the FLSA Opt-In Form. [Exhibit B of the Settlement Agreement]. Class Members who wish to participate in the collective action settlement of claims under the FLSA will have 60 days from the mailing of the Settlement Notice to complete and the FLSA Opt-In Form. [*Id.*]

## IV.    <u>LEGAL STANDARD FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS</u>

Judicial policy strongly favors settlement, particularly in class actions and other complex litigation cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *see also* 4 Albert Conte & Herbert B. Newberg, Newberg on Class

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Actions ("4 Newberg (4th ed. 2002)") § 11:41 (4th ed. 2002). "To vindicate the settlement of such serious claims, however, judges have the responsibility of ensuring fairness to all members of the class presented for certification." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). The decision to approve or reject a proposed settlement is committed to the Court's sound discretion. *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1238 (9th Cir. 1998)).

There are two stages to a court's approval of a proposed class action settlement. In the first phase, the court temporarily certifies a class, authorizes notice to that class, and preliminarily approves the settlement, with final approval contingent on the outcome of a fairness hearing. The Court must consider the due process concerns of absent class members. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Thus, before granting preliminary approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). Having certified the Settlement Class, the Court must then next make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e). The court's role in evaluating a proposed settlement is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir.1998). The purpose of the Court's preliminary evaluation of the proposed Settlement is to determine whether it is within the "range of reasonableness," and thus whether notice to the Class and a formal fairness hearing are appropriate. *See* Alba Conte & Herbert Newberg, 4 Newberg on Class Actions (2002) ("Newberg"), §§ 11.25. If a court determines that a proposed class action settlement deserves preliminary approval, then notice of the action is given to the class members.

# V.     LEGAL ARGUMENT

## A.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

### 1.    All Rule 23(a) Prerequisites Certification Are Met

Parties may settle a class action before class certification and stipulate that a defined class be conditionally certified for settlement purposes. *Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003). A proposed settlement class is still subject to the requirements of Federal Rule of Civil Procedure 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 at 620 (1997). However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." *Id.* Plaintiffs respectfully submits that conditional certification is appropriate because the Settlement Agreement satisfies the requirements of both Rule 23(a) and Rule 23(b).

### a. *Rule 23(a)(1) —Numerosity*

There are approximately 6,150 Class Members. (*See* **Exhibit 3** to Hollis Decl., Defendant's Response and Objection to Plaintiff's Special Interrogatories, Set One, at 2). A putative class of this size satisfies the Rule 23(a)(1) numerosity element in the settlement context. 5 James Wm. Moore et al., *Moore's Federal Practice*, § 23.22 (3d ed. 1999).

### b. *Rule 23(a)(2) —Commonality*

Federal Rule of Civil Procedure 23(a)(2) requires that there be "questions of law or fact common to the class." Commonality requires that the class members have suffered the same or similar injury. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon*, 150 F.3d at 1019. The commonality preconditions of Rule 23(a)(2) are "construed permissively." *Id.*

Here, the Settlement Class has been defined to include only the non-exempt

Graham**Hollis** APC<br>3555 Fifth Avenue Suite 200<br>San Diego, California 92103

janitorial employees, which are the employees Plaintiffs claim were subject to the Flagship Mobile Phone Policy and who were required to keep their personal cellphones "ON" at all times and interrupted during their meal and rest breaks.  [Hollis Decl. ¶ 23; *See*, *e.g.*, Ex. 4.] Similarly, janitorial employees were all subject to the same Unpaid Meal Periods and Rest Break policy, which required employees to clock-out for a Meal Period (even though Plaintiffs claim there were still on-duty and monitoring their phones and/or radios) and did not allow them to leave the premises during rest breaks. [Hollis Decl. ¶¶ 83-84; Ex. 4.] Plaintiffs and the putative class members suffered similar violations and Defendant's liability can be determined on a class-wide basis using evidence common to the class.

### c. *Rule 23(a)(3) —Typicality*

Under this rule's "permissive standards," a class plaintiff's claims are "typical" if they are "reasonably co-extensive with those of absent class members." *Hanlon,* 150 F.3d at 1020. "The test for typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North Am. LLC,* 617 F.3d 1168, 1175 (9th Cir. 2010).

Here, Plaintiffs' claims are based on the same facts and same legal theories applicable to the rest of the Class Members. Plaintiffs contend that according to the company-wide policies and corporate representative testimony, all putative class members were subject to Defendant's above-described labor and payroll practices and all of their injuries are a result of their exposure to these allegedly unlawful wage and hour practices.

### d. *Rule 23(a)(4) —Adequacy of Representation*

Adequacy requirements are established on the basis that the proposed Class Representatives, Named Plaintiffs, have no conflict of interest with other Class Members and are represented by qualified counsel. *Hanlon*, *supra,* 150 F.3d at 1020. Plaintiffs Ceron and Barcenas have demonstrated their dedication and commitment to the class and have no known conflicts of interest. [Hollis Decl., ¶ 85, Ceron Decl., ¶¶ 5-10, 14-18; Barcenas Decl. ¶¶ 5-11, 15-19.]

Case No.:3:18-CV-02397-JLS-JLB

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION

Plaintiffs' Counsel are well-situated to assume the responsibilities of Class Counsel because they are experienced employment and class action litigators who are fully qualified to pursue the interests of the Class. [Hollis Decl. at ¶¶6-12.] Plaintiffs' Counsel are adequate class counsel under Rule 23(a)(4) and meet the criteria for fairly and adequately representing the class under Rule 23(g)(1).

### e. *Rule 23(b)(3) —Predominance and Superiority*

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc., v. Windsor* 591 at 521 U.S. at 623. Plaintiffs contend several questions of law and fact are common to their claims and to those of the putative Class and provide a justification for handling the dispute on a representative rather than on an individual basis for settlement purposes. *Id*. For example, common questions of fact include whether Defendant's required its non-exempt janitor to monitor their phones or radios during their meal and rest breaks; whether class members were required to clock-out for meal breaks but asked to monitor their phones during meal periods. Common questions of law include whether Defendant's common written policy regarding "unpaid meal periods" is illegal because it requires employees to clock-out for the alleged "on-duty" breaks; whether Defendant's common and written rest break policy is illegal because it requires its janitorial employees to remain at the premises for rest breaks and/or breaks less than 20 minutes.

Class treatment is also the superior method for resolving all claims in this case because a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis. *See generally Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345 (1983). A court need not consider manageability when certification is solely for the purpose of settlement. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1066 n.12 (C.D. Cal. 2010); *see also Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Case No.:3:18-CV-02397-JLS-JLB

intractable management problems, for the proposal is that there be no trial.").

Here, Class Members' claims involve the same issues arising from the same factual bases. If Class Members' claims were considered on an individual basis, over 6,000 cases would follow a similar trajectory, and each would come to a similar result. Furthermore, individual cases would consume a significant amount of the Court's and the Class Members' resources. It is also likely that Class Members would not pursue litigation on an individual basis due to the high costs of pursuing individual claims. The interests of the Settlement Class Members in individually controlling the litigation are minimal, especially given the same broad-based policy and practices would be at issue. *See*, e.g., *Noll v. eBay, Inc.*, 309 F.R.D. 593, 604 (N.D. Cal. 2015) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.") Given the sheer number of Class Members, and resolution of claims spanning nearly five and half years, it is clear that class treatment is the superior method to resolve the claims pleaded herein.

One of the matters pertinent to the court's consideration regarding the superiority of a class action is the "extent and nature of any litigation concerning the controversy already begun by or against class members." Fed R. Civ. P. 23(b)(3)(B). Here, there are two active related cases which may have some overlapping claims and class members in common with the instant case: *Rivera v. Flagship Facility Services, Inc.*, Case No. 18CV329704, filed June 8, 2018 and *Gonzalez v. Flagship Facility Services, Inc.*, Case No. 17CV316313, filed September 26, 2017, both pending in Santa Clara Superior Court. [Hollis Decl., ¶28.] While there is overlap between the *Rivera* case and the instant case, the parties in the *Rivera* case have put discovery on hold pending the outcome of this proposed Settlement. [*Id.* at ¶29.] Proceedings in the *Rivera* case therefore will not affect this Settlement and this Settlement, if approved, may obviate the need for further proceedings in *Rivera*.

The plaintiff in *Gonzalez* contends that the class in the instant case is a subset of his putative class, but has narrowed the scope of discovery to the facilities department and culinary department. [*Id.* at ¶30.] Proceedings in *Gonzalez* will not affect this Settlement

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

and this Settlement, if approved, will narrow the scope of issues in *Gonzalez*.

## B.   THE SETTLEMENT IS FAIR, ADEQUATE AND REASONABLE

In determining the issue of preliminary approval of class action settlement, courts are guided by the policy that the law favors and prefers the compromise and settlement of class action suits. *Chem Bank v. City of Seattle,* 955 F.2d 1268, 1275 (9th Cir. 1992); *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 625 (9th Cir. 1982); *Van Bronkhorst v. Safeco Corp*., 529 F.2d 943, 950 (9th Cir. 1976).

A proposed settlement warrants approval if it is "fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. In determining the fairness of the proposed settlement, a court may weigh:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1037 (S.D. Cal. 2017) (quoting *Hanlon*). Here, each of these factors weighs in favor of approval.

### 1.   The Strength of Plaintiffs' Case

In order to succeed on the merits at trial, Plaintiffs would need to prove that Defendant maintained a policy or a practice of requiring their non-exempt janitors to monitors their phones during meal and rest breaks, which resulted in Defendant's failure to legally provide meal and rest breaks despite Defendant's time records showing full 30-minute off-the-clock meal periods. [Hollis Decl. ¶ 47.] Defendant maintains that it provided all legally-required, uninterrupted meal and rest breaks, that Defendant strictly prohibits off-the-clock work, that it provided Class Members with work phones so that they did not need to use their personal cell phones and alternatively reimbursed Class Members for the use of their personal cell phones when necessary. [*Id.* at ¶ 42.] Defendant claims that the accrual of vacation time is governed by disparate collective bargaining agreements and is therefore too individualized for class treatment, and that its wage statements and records

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

are accurate. [*Id.* at ¶¶ 42-46.] Moreover, Defendant argues that the time Class Members spent renewing their security badges is non-compensable and that Plaintiff's vacation pay claim is preempted by the Labor Management Relations Act ("LMRA"). [*Id.* at ¶42.]

The Settlement is the result of arm's-length negotiations conducted over the course of a year, including each Party's individual discovery and valuation of the case and one full-day mediation session before an experienced mediator with expertise in employment matters. [*Id.* at ¶26.]  Given this disagreement and neutral third-party evaluation of the same, the Court should find that this factor weighs in favor of the $2 million settlement being fair, reasonable and adequate.

## 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

Absent the Settlement, there would be a significant amount of motion practice including motions to compel the production of all contact information for the putative class members, motion for class certification, motions to decertify the class, cross motions for summary judgment, and motions in limine, among others prior to the trial of this Action. [Hollis Decl. at ¶ 48.] Therefore, further litigation could greatly delay resolution of this case and increase expenses. Prior to any judgment, the parties would have had to litigate class certification, which if granted, will required significant additional discovery, time, and expense prior to the parties being prepared for trial. [*Id.*]

Even though the parties have conducted depositions and written discovery, the formal discovery here is still in its early stages and focused only on pre-certification discovery. [Hollis Decl., ¶ 48.] For example, to date, the parties have not concluded their pre-certification discovery, written discovery or depositions. [*Id.* at ¶ 25.] As part of the trial, the parties will likely incur in significant additional expense, including the expense of retaining experts to testify at trial.  [*Id.* at ¶ 48.]

Even if Plaintiff were successful in proving the merits of the class action claims, defendants would likely submit an appeal. [*Id.*] Thus, the parties will have to engage in expensive and protracted appellate practice. This Settlement avoids all those risks, and the accompanying expense, and instead provides immediate and substantial monetary relief.

The Settlement commits Defendant to create a Settlement Fund of $2,000,000 to compensate Class Members for their alleged damages, and compensate Class Counsel for their fees and costs in the litigation. [SA at ¶ 1.20.] These factors weigh in favor of settlement of the action.

### 3.    Risk of Maintaining Class Action Status Throughout Trial

The parties here hotly dispute whether the Non-exempt Class can be validly certified in the absence of the Settlement. Plaintiffs anticipate the Parties will have to undergo significant additional litigation before the Action is certified, and anticipate the Defendant will file at least one motion seeking to decertify the class prior to the trial in the action. Therefore, this factor also weighs in favor of finding the Settlement being fair, reasonable, and adequate as Defendant does not object to conditional certification.

### 4.    Amount Offered in Settlement

This Settlement represents exceptional value to the class. The reasonableness of the proposed Settlement is underscored by the fact that Defendant has potentially viable grounds for not only challenging its liability, but also Plaintiffs' estimate of the potential value of each claim, and Plaintiffs' ability to maintain class certification. Here, assuming preliminary approval is granted, the NSA, currently estimated at $1,291,000, will be distributed to the Class Members depending on the number of workweeks worked during the Class. [Hollis Decl. ¶¶ 54-55.]  If all of the 6,150 estimated Class Members participate, the average recovery per class member will be approximately $209.91. [Hollis Decl., ¶ 55.] These are substantial sums that adequately recognizes the Plaintiff's and Class Members damages and compensates each of them appropriately.  Moreover, Class Members will be able to receive their payments soon after Final Approval rather than having to wait through years of protracted and uncertain litigation.

While Settlement and the amounts paid to Class Members represents a significant discount on Plaintiff's estimate of the overall $147 million exposure to Defendant, this reduction represents an extremely reasonable compromise considering Defendant's defenses and the substantial risks Plaintiffs would face establishing class certification and

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

establishing liability on all claims against Defendant. [*Id.* at ¶¶ 41-46.] The Settlement commits Defendant to create a Settlement Fund that will provide Class Members a financial recovery and extinguish the risks attendant to continued litigation and any appeals that would likely be filed following the class certification decision or judgment in Plaintiff's favor. Indeed, such efforts by Defendant would likely result in a delay of several years before this case could finally be resolved, whereas the Settlement provides Class Members with a significant and timely recovery from the $2,000,000 settlement amount, making it well within the range of reasonableness.

The Settlement reflects a compromise on all of the disputed issues identified above. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Service Commission*, 688 F.2d 615, 628 (9th Cir. 1982). As the Ninth Circuit noted in *Officers for Justice*, "[u]ltimately the amount of the [settlement payments] will be less than what some class members feel they deserve but, conversely, more than the defendants feel those individuals are entitled to. This is precisely the stuff from which negotiated settlements are made." *Id.*

### 5.     Extent of Discovery Completed and the State of the Proceedings

Plaintiffs sought extensive discovery from Defendant, including two sets of Requests for Production of Documents and Special Interrogatories and took depositions of Defendant's Persons Most Knowledgeable on the topics of Defendant's policies, practices, and procedures regarding human resources, the use and reimbursement for cellular phones, payroll, and vacation accrual. [Hollis Decl. ¶¶ 33-34.] Defendant also sought extensive discovery from Plaintiffs, including full day depositions of each named Plaintiff. [*Id.* at ¶ 25.] With the information collected from Defendant and from interviews with Class Members who worked at different locations and during different time periods within the Class Period, Class Counsel was able to prepare a detailed analysis of the maximum liability exposure for Defendant if Plaintiffs succeeded at trial. [*Id.* at ¶¶ 27, 83.] This factor also weighs in favor of approval.

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

### 6.   Experience and Views of Counsel

"An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2019 WL 4918366, at *4 (N.D. Cal. Oct. 4, 2019) (internal citations omitted). Here, Class Counsel have extensive experience in complex California wage and hour litigation. [Hollis Decl., ¶¶ 6-12.] This settlement agreement is the result of arms-length negotiations, between experienced counsel representing the interests of the Plaintiff and Defendant. Class Counsel recommends the Settlement [Hollis Decl. ¶¶40, 48] and the Settlement was reached after the Parties spent significant time and resources investigating Plaintiffs' claims, engaging in formal and informal discovery, meeting and conferring regarding the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses, and a full day of mediation before a mediator with a wealth of experience in employment class action matters. Moreover, the Settlement was reached with the help of an experienced mediator. [*Id.* at ¶ 26.]

### 7.   Presence of a Government Participant

No government entity participated in this case. However, Plaintiff brought claims under the California Private Attorney General Act of 2004, Cal. Labor Code § 2698 et seq., ("PAGA"). Because Plaintiff will share civil penalties of $20,000 with the State of California, this factor weighs in favor of approval of the Settlement.  *See e.g. Adoma v. Univ. of Phoenix, Inc.*, 913 F.Supp.2d 964, 977 (E.D. Cal. 2012) (Karlton, J.) (weighing civil penalties paid pursuant to PAGA in favor of settlement approval).

The amount allocated to PAGA payments is also reasonable. The settlement of PAGA civil penalties in the sum of $20,000, 75% of which ($15,000) will be paid directly to the LWDA is reasonable and appropriate under the circumstances. The $15,000 portion to be paid to the LWDA was not the result of self-interest at the expense of other Class Members. Where settlements "negotiate[] a good faith amount" for PAGA penalties and "there is no indication that this amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v.*

*Hanesbrands Inc.,* No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009). Courts have regularly approved PAGA settlements which represented only a tiny fraction of the total possible recoverable PAGA penalties. See, e.g., Zubia v. Shamrock Foods Co., No. CV1603128ABAGRX, 2017 WL 10541431, at *14 (C.D. Cal. Dec. 21, 2017) (approving a PAGA settlement of 0.1%).

## VI.   THE SETTLEMENT HAS NO OBVIOUS DEFICIENCIES

A court should consider possible deficiencies in a settlement including, for example, (i) issues surrounding the release of claims, (ii) the notice plan, (iii) the plan of allocation, (iv) the *cy pres* designee, and (v) a request for attorneys' fees. *See Custom LED, LLC v. eBay, Inc.*, 2013 WL 6114379, *7-8 (N.D. Cal. Nov. 20, 2013). Releases in class settlements should be approved when claims released by unnamed class members are limited to those related to the conduct alleged in the complaint. *Cotter v. Lyft, Inc.,* 193 F. Supp. 3d 1030, 1038 (N.D. Cal. 2016). The scope of the release here follows the above parameters, as it is limited to claims reasonably related to the factual allegations asserted in this action. Unrelated claims – e.g., claims for discrimination – are not released by this settlement on a class-wide basis. Claims that arise against Defendant post-preliminary approval, even wage and hour-based claims, are likewise not released.

## A.   THE SERVICE AWARD AND ATTORNEY'S FEES PROVISION FALL WELL WITHIN THE RANGE OF REASONABLENESS

### 1.   Courts Routinely Award Class Representative A Service Award

Courts routinely approve service awards to compensate named plaintiffs for the services they provide and the risks they incur during the course of the class litigation. *Ingram v. The Coca- Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *see also Bell v. Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 726 (2004) (upholding "service payments" to named plaintiffs for their efforts in bringing class case); *Pelletz v. Weyerhaeuser Co.*, 592 F. Supp. 2d 1322, 1329 (W.D. Wash. 2009) (noting that such awards "may be merited for time spent meeting with class members, monitoring cases, or responding to discovery") (*quoting* Manual §

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

21:62 n.971); Manual § 21:62 n.971 (noting that service awards are warranted). Federal courts recognize that "a class representative is entitled to some compensation for the expense he or she incurred on behalf of the class." *In re Oracle Secs. Litig*., No. 90–0931, 1994 WL 502054, at *1 (N.D.Cal. June 18, 1994) (*citing In re Continental Ill. Secs. Litig.*, 962 F.2d 566, 571 (7th Cir.1992)). "Such payments, however, must be reasonable in light of applicable circumstances, and not 'unfair' to other class members." *Smith v. Tower Loan of Miss., Inc*., 216 F.R.D. 338, 368 (S.D.Miss.2003) (citation omitted); *see also In re Oracle Secs. Litig*., 1994 WL 502054 at *1 (reducing requested payment of $2,500 to $500 for spending "between two and five hours").

Here, Plaintiffs assisted counsel with the investigation of the claims, preparation of the complaints, provided relevant documents, and worked with Class Counsel throughout the case, as detailed in the supporting declaration filed concurrently with this motion. [Hollis Decl., ¶¶ 79-80; Ceron Decl., ¶¶ 11-19; Barcenas Decl., ¶¶ 12-20.] Plaintiffs were crucial in the prosecution of the litigation. Both Plaintiffs spent significant hours discussing with Class counsel the facts related to their employment with Defendant and litigating this Action prior to the parties reaching the Settlement. [Ceron Decl., ¶¶ 11-19; Barcenas Decl., ¶¶ 12-20.] Plaintiffs Ceron and Barcenas estimate they each spent between thirty (30) and forty (40) hours in this litigation, answering questions from counsel, answering discovery, looking and providing documents, attending depositions, attending mediations and reviewing settlement documents.  [Ceron Decl., ¶ 21; Barcenas Decl., ¶ 23.]

## 2. The Significant Amount of Work Performed by Class Counsel Supports the Request for Attorney's Fees and Reimbursement of Actual Costs

Class Counsel seeks an award of 30%, or $600,000 as payment for attorneys' fees for prosecuting this class, collective, representative action. [Hollis Decl. ¶ 75.]  Class Counsel also seeks reimbursement of out of pocket expenses incurred not to exceed $35,000. [*Id.* at ¶ 75.] Class counsel has performed a significant amount of work to date, including conducting extensive research, investigation and analysis of each potential cause of action.  [*Id.* at ¶¶ 25-27, 31-39.] Class Counsel is highly experienced in wage and hour

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

matters and class action cases, and has been appointed class counsel in numerous employment class action cases. [Hollis Decl., ¶¶ 6-12; Ex. 2 to Hollis Decl.] Additionally, Class Counsel has committed and continues to commit significant financial and staffing resources to the representation of the Class Members.  [Hollis Decl., ¶ 76.]  Class Counsel's work resulted in the Settlement which provides significant benefits to class members. When, as in the instant case, a federal court sits in diversity, state law governs the right to fees as well as the calculation of fees. *See Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995). In California, "when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorneys' fees out of the fund."  *Serrano v. Priest*, 20 Cal. 3d 25, 34 (1977). The overwhelming majority of federal and state courts hold that when class action litigation establishes a monetary fund for the benefit of the class members, the Court may determine the amount of a reasonable fee based on an appropriate percentage of the fund created. This was recently explained by the California Supreme Court in *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 503 (2016).

Courts in the Ninth Circuit and the Southern District of California regularly award attorney's fees of one-third of the total class settlement value. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of fees equal to one-third of total recovery); *In re Public Ser. Co. of New Mexico*, 1992 WL 278452, at* 1, * 12 (S.D. Cal. July 28, 1992) (awarding fees equal to one-third of total settlement); *Antonopulos v. North Am. Thoroughbreds, Inc.*, 1991 WL 427893, at *1, *4 (S.D. Cal. May 6, 1991) (awarding fees equal to one-third of total settlement); *In re MD.C. Holdings Sec. Litig.*, 1990 WL 454747, at 1, 10 (S.D. Cal. Aug. 30 1990) (awarding 30% attorneys' fee plus expenses); *In re Heritage Bond Litig.,* 2005 WL 1594403 (C.D. Cal. June 10, 2005) (awarding 33 1/3 % in attorneys' fees); *Long v. Stanley Black & Decker, Inc.,* No. 14-CV-1246 JLS (BGS), 2015 U.S. Dist. LEXIS 53595, at *15-19 (S.D. Cal. Apr. 23, 2015) (awarding 30% in attorney's fees).

Graham**Hollis** APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION

As will be explained further in the fee motion that will be filed along with the final approval motion, the requested fees and costs are extremely reasonable. Class Counsel has had to divert many of its resources to this case to effectively prosecute and settle this action. [Hollis Decl., ¶ 76.] Accordingly, for purposes of this Motion, and as will be explained in detail in the fee application, the requested fee amount falls well within the range of reasonableness. *See e.g. Van Vranken,* 901 F. Supp. at 297 (noting class counsel fee awards of 30- 50% are more typical where the common fund is less than $10 million).

## VII.   THE NOTICE TO CLASS MEMBERS IS FAIR AND ADEQUATE

The Court must provide Class Members the best class action settlement notice practicable. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). Under Fed. R. Civ. P. 23(c)(2)(B), a class notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a Class Member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Class Members are entitled to the best notice practicable, reasonably calculated under the circumstances to apprise him or her of the pendency of the class action. *Silber v. Mabon*, 18 F.3d 1449, 1453–54 (9th Cir.1994).

Here, the proposed class notice satisfies these requirements because it informs Class Members, in plain language, about the terms of the Settlement and explains the payments to which they are entitled under the Settlement. [Ex. A at 1.] The proposed notice plan, calling for first-class mailed notice to all Class Members, is consistent with class notices approved by state and federal courts. The Class Notice in this case summarizes the lawsuit, including the contentions and denials of the parties, the proceedings to date, and the terms and conditions of the Settlement. [*Id.* at 2-5.] The Class Notice fully informs Class Members of the Settlement's effect on their rights, of their options as Class Members

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

(*i.e.,* to object, opt out, opt-in as members of the collective action, and/or do nothing), and of the consequences of exercising those options. [*Id.* at 8-11.] The Class Notice also outlines the procedure and deadlines for opting out of the Settlement, for submitting objections to the Settlement, and how to receive a settlement payment – stating clearly that Class Members do not need to submit a claim form in order to receive a settlement payment under the class action, thereby encouraging Class Member participation and increasing the likelihood of Class Members obtaining recovery. [*Id.*] The Class Notice further explains that Class Members can receive an additional payment for their participation in the FLSA collective action if they submit a timely and valid FLSA Opt In Form, thereby encouraging them to do so. [*Id.* at 5.] The Class Notice states the amount of the proposed service award to be paid to Class Representatives; states the amount of Class Counsel's request for attorney's fees; states the amount to be paid to the Claims Administrator; states the amount to be paid to the LWDA; states the date, time and place of the final approval hearing; and explains how Class Members can obtain additional information. [*Id.* at 4-5, 10-11.]

## VIII.  **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement, grant conditional certification pursuant to Federal Rule of Civil Procedure 23 for settlement purposes only, appoint Plaintiffs as the Class Representatives for the purpose of settlement, appoint Plaintiffs' attorneys as Class Counsel, approve the form and content of the proposed Class Notice, approve as to form the proposed FLSA Opt In Form; appoint Rust Consulting as the Settlement Administrator, and set a final approval hearing date.

Dated: November 22, 2019

GRAHAM**HOLLIS** APC

By: _____

GRAHAM S.P. HOLLIS
VILMARIE CORDERO
DAVID LIN
Attorneys for Plaintiffs Marta L. Ceron De Orozco and Emma Barcenas

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103