GRAHAMHOLLIS APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
David Lin (SBN 312350)
dlin@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: (619) 692-0800
Facsimile: (619) 692-0822

Attorneys for Plaintiffs MARTA L CERON DE
OROZCO and EMMA BARCENAS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA L CERON DE OROZCO and EMMA BARCENAS, individually and on behalf of all similarly situated employees of Defendant in the State of California,<br><br>        Plaintiff,<br><br>   v.<br><br>FLAGSHIP FACILITY SERVICES, INC.; and DOES 1 THROUGH 50, inclusive,<br><br>        Defendant. | Case No.: 3:18-CV-02397-JLS-JLB<br><br>**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFFS' MOTION FOR: (1) PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT; (2) PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS; (3) APPROVAL OF THE CLASS NOTICE AND NOTICE PLAN; (4) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVE; (5) APPOINTMENT OF SETTLEMENT ADMINISTRATOR; AND (6) SETTING A FINAL APPROVAL HEARING**<br><br>Date:    January 30, 2020<br>Time:   1:30 p.m.<br>Dept:   4D<br>Judge:  Hon. Janis L. Sammartino |

*GRAHAM**HOLLIS** APC*
*3555 FIFTH AVENUE SUITE 200*
*SAN DIEGO, CALIFORNIA 92103*

I, Graham S.P. Hollis, declare as follows:

1. I am an attorney at law licensed to practice before all courts of the State of California. I am a shareholder of the law firm GrahamHollis, APC in San Diego, California. Co-shareholder Vilmarie Cordero and associate David Lin are the primary attorneys from my firm handling this case. I am thoroughly familiar with, and have personal knowledge of, all of the facts set forth herein. If called as a witness, I could and would competently testify to the information set forth below.

2. I submit this declaration in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, which seeks an order: (1) preliminarily approving the proposed Settlement; (2) approving the form and content of the Class Notice; (3) approving the FLSA Opt In Form; (4) provisionally certifying the Settlement Class; (4) appointing Plaintiff as Class Representative and Plaintiff's Counsel as Class Counsel; (5) appointing Rust Consulting as the Settlement Administrator; and (6) scheduling a Final Approval Hearing.

3. A true and correct copy of the fully executed Joint Stipulation of Settlement and Release ("Settlement Agreement" or "SA") is attached hereto as **Exhibit 1**. A true and correct copy of the Notice of Class Action Settlement ("Class Notice") is attached as **Exhibit A** to the Settlement Agreement. A true and correct copy of the FLSA Collective Action Member Consent to Join Form ("Opt In Form") is attached as **Exhibit B** to the Settlement Agreement.

4. A copy of the Settlement Agreement was provided to the State of California, Labor and Workforce Development Agency ("LWDA") at the same time Plaintiff's Motion for Preliminary Approval of Class and Collective Action Settlement was filed with the Court.

5. I am not aware of any class, representative or other collective action in any other court in this, or any other jurisdiction, that asserts claims similar to those asserted in this action on behalf of a class or group of individuals who would also be members of the class defined in this action. I made a reasonable inquiry of other members of my law firm and they are not aware of any such similar actions.

Case No. 3:18-CV-02397-JLS-JLB

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**CLASS COUNSEL'S CLASS ACTION EXPERIENCE**

6.      I have been a member of the State Bar of California since 1985. I have personally tried many bench and jury trials to verdict in various courts in California and I have represented employees and employers in employment litigation matters since 1995. My involvement in various forms of class action litigation spans more than twenty years.

7.      Over the past ten years, my firm has been appointed as class counsel and received adequate and fair settlements in over eighty class action lawsuits in the district and state courts of California with claims similar to those presented here. Additionally, my firm currently serves as plaintiff's counsel for approximately thirty wage and hour class and representative employment law cases.  A list of the cases in which my firm has served as class counsel and/or currently serves as counsel for plaintiffs in wage and hour employment actions pending throughout California is attached hereto as **Exhibit 2**.

8.      I have also served as defense counsel in the following class action cases: *Garza, et al. v. SRH Investments LLC, et al.*, Superior Court for the County of Los Angeles; *Avila, et al. v. Gateway Ivey Ranch Associates, et al.,* Superior Court for the County of San Diego; *Cabrera, et al. v. Fieldstone Communities, Inc., et al.,* Superior Court for the County of San Diego; *Cheatwood, et al. v. Greystone Homes, Inc., et al.*, Superior Court for the County of San Bernardino; *Castro, et al. v. Kaufman & Broad of Southern California, Inc. et al.*, Superior Court for the County of San Diego; *Flores, et al. v. Eastlake Trails Co. LLC et al.,* Superior Court for the County of San Diego; *Pacheco, et al. v. WL Coral Gate Associates, et al.*, Superior Court for the County of San Diego; *Garcia, et al. v. Cambridge Homes, et al.,* Superior Court for the County of Riverside; *Harris, et al. v. LNC Properties, LTD, et al.,* Superior Court for the County of San Bernardino; *Soriano, et al. v. Kaufman and Broad of Southern California, Inc., et al.,* Superior Court for the County of Kern; *Rodriguez, et al v. Epic Development Corporation, et al.,* Superior Court for the County of Kern; *Gates, et al. v. Kaufman and Broad Coastal Valleys, Inc., et al.,* Superior Court for the County of Los Angeles; *Zimmerman, et al. v. West Venture Development, Inc., et al.*, Superior Court for the County of San Bernardino; *Robles, et al. v. Rockfield*

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1   *Development Corporation, et al.,* Superior Court for the County of San Bernardino; *Riley,*
2   *et al. v. So Cal Housing Partners, LLC, et al.,* Superior Court for the County of San
3   Bernardino; *Castillo, et al. v. LNC Properties LTD, et al.,* Superior Court for the County
4   of San Bernardino; *Reynoso, et al v. DOES 1-50,* inclusive, Superior Court for the County
5   of San Diego; *Frais v. Forecast Group*, Superior Court for the County of Los Angeles;
6   *Haney v. The Presley Group*, Superior Court for the County of Riverside; *Le Doux v. KB*
7   *Homes*, Superior Court for the County of Los Angeles; *Long v. West Venture,* Superior
8   Court for the County of Los Angeles; *Manning v. Presley Homes,* Superior Court for the
9   County of Los Angeles; *McLellan v. Stratham Group,* Superior Court for the County of
10  Los Angeles; *Winkler v. West Venture,* Superior Court for the County of Los Angeles.

11      9.      Ms. Cordero has been a member of the American Bar Association since her
12  admission to the Puerto Rico State Bar on January 2006.  Ms. Cordero has been admitted
13  to the New York State Bar since April 2008 and has been a member of the State Bar of
14  California since January 2010. Ms. Cordero further received a Master of Law (LLM) with
15  a concentration in Employment and Labor Law from the University of San Diego, School
16  of Law on May 2009. Ms. Cordero has represented employees in employment litigation
17  matters since 2006. In just the past nine years, Ms. Cordero and I have been appointed as
18  class counsel on the following California Superior Court cases – notably *Chavez v. Real*
19  *Time Staffing Services, Inc*. settled for $1.9 million on behalf of 3,120 class members, and
20  Judge Medel awarded 35% in fees; *Escoto-Miranda v. Evans Tire & Service Centers, Inc*.
21  settled for $800,000 on behalf of 450 class members, and Judge Strauss awarded 33% in
22  fees; *Subia v. National Securities Industries, Inc.* in the Superior Court for the County of
23  Santa Clara settled for $275,000 on behalf of 187 class members, and Judge Lucas awarded
24  30% in fees; *Flannery v. AGR Group*, settled for $1,324,937 on behalf of approximately
25  5,182 class members, and Judge Andler awarded 33% in fees; *Costa v. Altman Specialty*
26  *Plants, Inc.*, settled for $2.4 million on behalf of 4,414 class members; *Parmelee v.*
27  *Driveline Retail Merchandising, Inc.* settled for $1,000,000 on behalf of approximately
28  1,261 class members, and Judge Kapetan awarded 33.33% in fees; *Stafford v. Dollar Tree*

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

*Stores, Inc.*, settled for $4.6 million on behalf of approximately 5,000 class members and Judge Paul L. Beeman awarded 33 and 1/3% in fees; *Digiacomo v. Michael Castelli, Inc.*, Superior Court of the County of Riverside, which settled for $225,000 on behalf of approximately 35 class members and Judge Waters awarded 33% in fees.

10.     Mr. Lin has been a member of the New York State Bar since April 2010 and a member of the State Bar of California since December 2016. Mr. Lin represented plaintiffs in securities and antitrust class action cases from September 2011 until June 2018.

11.     Mr. Lin currently serves as plaintiff's counsel in the following class and representative actions: *Hernandez v. All Ways Clean*, pending in Superior Court County of San Luis Obispo; *Lawson v. Executive Maintainence, Inc.*, pending in Superior Court County of Orange; *Maharaj v. Charter Communications, Inc.*, pending in Superior Court County of San Diego; *Nathan v. OS Restaurant Services, LLC, et al.*, pending in Superior Court County of San Diego; *Parvizi v. Classic Residence Management, LP*, pending in Superior Court County of San Diego; *Pina v. Paradise Wings, et al.*, pending in Superior Court County of San Diego; *Quinones v. Atria Management Company, LLC, et al.*, pending in Superior Court County of Los Angeles; *Ralda v. Smart & Final Stores, LLC*, pending in Superior Court County of Los Angeles; *Salazar v. PODS Enterprises, LLC.*, pending in Superior Court County of San Bernardino; *Summa v. LF Sportswear, Inc.*, pending in the United States District Court Central District of California; *Valles v. Anthony, Inc.*, pending in Superior Court County of Los Angeles; and *Whittington v. Eureka Restaurant Group, LLC*, pending in Superior Court County of Los Angeles.

12.     My associates and I have considerable experience handling complex wage and hour class action cases with claims similar to those asserted in this action and have successfully represented tens of thousands of employees in state and federal court cases throughout California.

## CASE BACKGROUND AND PROCEDURAL HISTORY

13.     On August 13, 2018, Plaintiff Marta L. Ceron de Orozco (hereinafter "Ceron") filed the Complaint in this Action in the Superior Court for the County of San

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Diego, entitled *Ceron de Orozco v. Flagship Facility Services.*, Civil Case No. 37-2018-00040481-CU-0E-CTL ("the Action"), against Defendant Flagship Facility Services, Inc. (hereinafter "Defendant" or "Flagship") and Does 1-50, inclusive.  Defendant is organized under the laws of the State of California and provides commercial janitorial and facility maintenance services at various office locations and airports throughout California. Plaintiff alleged multiple causes of action under the California Labor Code and the federal Fair Labor Standards Act ("FLSA") including:  (1) Failure to Provide Meal Periods; (2) Failure to Provide Rest Periods; (3) Failure to Pay Minimum and Regular Wages; (4) Failure to Pay All Overtime Wages; (5) Failure to Pay Accrued Vacation Wages; (6) Failure to Indemnify Necessary Business Expenses; (7) Failure to Provide Accurate Itemized Wage Statements; (8) Failure to Timely Pay All Wages Due Separation of Employment; (9) Failure to Produce Employment Records; (10) Violation of Business & Professions Code § 17200, et seq.; and (11) Violation of FLSA (29 U.S.C. §§ 207, 211 (c), 2 I 6(b)). The Class Period was defined as the period of time between August 13, 2014 through the date of the preliminary approval.

14.   On September 5, 2018, Ceron filed a First Amended Complaint realleging all of the causes of action in her original complaint and adding a cause of action for Violation of the Private Attorneys General Act of 2004 ("PAGA"), Labor Code §§ 2698, *et seq.* Plaintiff Ceron sought to recover, *inter alia*, unpaid wages, unreimbursed expenses, interest, attorney's fees, damages, liquidated damages, penalties, and costs pursuant to Labor Code §§201, 202, 203, 204, 210, 218.5, 218.6, 223, 225.5, 226, 226.3, 226.7, 227.3, 510, 512, 558, 1174, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, 2802, the Private Attorney General Act, California Labor Code section 2698, *et seq.*, California Business and Professions Code § 17200, *et seq.*, and the provisions of the applicable IWC Wage Order.

15.   On October 18, 2018, Defendant filed a Notice of Removal removing the Action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1441.

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Case No. 3:18-CV-02397-JLS-JLB

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

16.     On October 25, 2018, Defendant filed an Answer to Ceron's First Amended Complaint denying all liability and wrongdoing of any kind associated with the claims alleged in this action, as well as disputing that the action is appropriate for class treatment.

17.     On January 9, 2019, Plaintiff Ceron filed a Second Amended Complaint adding Plaintiff Emma Barcenas ("Barcenas"). Collectively, Plaintiff Ceron and Plaintiff Barcenas will be referred to as "Plaintiffs" hereinafter.

18.     On January 23, 2019, Defendant filed its Answer to Plaintiffs' Second Amended Complaint denying all liability and wrongdoing of any kind associated with the claims alleged in this action, as well as disputing that the action is appropriate for class treatment.

19.     Plaintiff Ceron is a former non-exempt employee of Defendant who worked for Defendant as a janitor in San Diego, CA from January 1999 to October 2017. As a janitor, Ceron's duties included, but were not limited to, cleaning the airport terminals by dusting and mopping and changing out the trash bags in the trash cans. Defendant compensated Ceron on an hourly basis at all relevant times.

20.     Plaintiff Barcenas is a former non-exempt employee of Defendant who worked as a janitor at the San Diego International Airport from June 20, 2001 through December 20, 2016. As a janitor, Plaintiff Barcenas' duties included, but were not limited to, cleaning the airport terminals by dusting and mopping and changing out the trash bags in the trash cans. Defendant compensated Barcenas on an hourly basis at all relevant times.

21.     Plaintiffs allege that pursuant to Defendant's policies and procedures, they and other Class Members were regularly required to remain on duty during meal and rest periods in order to comply with supervisors' demands that they respond to calls at all times. As such, Plaintiffs allege that they and other Class Members were required to work through meal breaks, take untimely meal breaks, or take meal breaks that were less than thirty minutes to answer supervisors' calls. Similarly, Plaintiffs allege that Defendant failed to authorize and permit them to take legally compliant rest periods of at least 10 minutes for every four-hour work period, or major fraction thereof, because Defendant required them

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

to remain on duty. As a result of these policies and procedures, Plaintiffs and other Class Members were never able to leave the premises during their break periods. Plaintiffs further allege that they and other Class Members had to stay after work to fill out paperwork renewing their identification badges at least once a year without compensation. As a result, Plaintiffs allege that they and Class Members were not compensated for the off-the-clock work they performed during meal breaks and after they clocked out.

22.   Plaintiffs allege that due to Defendant' policies and practices of having Plaintiffs and other Class Members work off-the-clock during their meal breaks and after work, Defendant failed to maintain accurate records, failed provide accurate wage statements, failed to properly pay overtime wages, and failed to properly pay accrued vacation wages.

23.   Plaintiffs allege Defendant's failure to reimburse Plaintiffs and other Class Members for all necessary business expenses because Plaintiffs and other Class Members had to answer calls from their supervisors on their personal cell phones approximately once every hour but received only $0.94 per pay period for the use of their personal cell phones. Moreover, Plaintiffs allege that Defendant required them to keep their personal cell phones "ON" at all times so that managers could call them even during their meal and rest breaks.

24.   Moreover, Plaintiffs allege that Defendant failed to produce Plaintiffs' and other Class Members' employment records in a timely manner after receiving employment records request letters via certified mail.

25.   The Parties engaged in extensive exchanges of formal and informal discovery in this matter, including Requests for Production of Documents, Special Interrogatories, and depositions of Plaintiff Marta Ceron de Orozco, Plaintiff Emma Barcenas, and the Persons Most Knowledgeable at Defendant, as well as informal exchanges of information and documents relevant to the claims and defenses in this Action. The parties exchanged initial disclosures on November 19, 2018. Plaintiffs served a first set of formal written discovery consisting of interrogatories and document requests on December 21, 2018. Defendant provided responses and documents on January 22, 2019. Plaintiffs served a

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

second set of written discovery, consisting of 19 interrogatories and 50 document requests on February 22, 2019. Defendant's document production included Plaintiffs' personnel file, Defendant's policies regarding meal and rest periods, handbooks, reimbursement policies, information about Defendant's business, among others. Plaintiffs obtained the names and contact information for over 630 employees, and Defendant produced a sample of time and pay records consisting in multiple thousands of documents. Defendant propounded three sets of Request for Production of Documents to Plaintiff Ceron, the first on January 4, 2019, the second on January 31, 2019, and the third on February 22, 2019. Defendant also propounded two sets of Request for Production of Documents to Plaintiff Barcenas, the first on February 12, 2019, and the second on February 22, 2019. Plaintiffs Ceron and Barcenas also each responded to a first set of interrogatories on March 19, 2019 and March 20, 2019, respectively, and a second set of interrogatories on March 22, 2019 and March 21, 2019, respectively. Plaintiff Ceron responded to a third set of requests for production of documents on March 22, 2019. Both Plaintiffs responded to Defendant's Requests for Admissions, Plaintiff Ceron on March 22, 2019 and Plaintiff Barcenas on March 21, 2019. In addition to written discovery, Plaintiffs conducted several depositions of Defendant's persons most qualified pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure on March 27 and March 28, which were not completed. Defendant also took one full-day deposition of Plaintiff Ceron and one full-day deposition of Plaintiff Barcenas. Defendant also contends they did not conclude Plaintiffs depositions, and will seek to conclude them absent approval of the Settlement. Prior to engaging in Settlement discussions, the parties participated in multiple and extensive meet and confer efforts regarding the discovery propounded in the Action. In addition, the parties jointly submitted several discovery issues to this court, and participated in several discovery conferences. After the Court's ruling regarding the pending discovery issues, Defendant supplemented their prior document production and produced additional pay documents; information regarding their vacation policies, and additional policies.

26.     On August 6, 2019, the parties attended a mediation with Tripper Ortman, a

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

well-respected neutral third-party mediator who specializes in resolving employment class action matters, including wage and hour violations.   Prior to opening his full-time mediation practice Mr. Ortman was a partner in the Labor and Employment Department of Seyfarth Shaw LLP. During his tenure at Seyfarth, Mr. Ortman handled all aspects of class action and single plaintiff employment cases, from the pleading stage through trial. His experience includes the successful defense of major wage and hour, discrimination, and unfair competition class actions, as well as the defense of employers in a variety of claims arising out of alleged violations of the California Labor Code and the FLSA. Mr. Ortman was also an active member of Seyfarth Shaw's National Trial Team.

27.   In preparation for this mediation, my firm prepared a comprehensive mediation brief that outlined the relevant factual and legal issues, contained a detailed analysis of the time and payroll records, and presented a complete breakdown of the liability exposure for Defendant if Plaintiffs succeeded on each of his claims at trial. During the mediation session, the parties engaged in good-faith, non-collusive, arms-length negotiations, free from collusion, exchanged additional information regarding the realistic damages exposure to Defendant, discussed the relative strengths and weaknesses of Plaintiffs' claims, the risks and delays of further litigation, the current state of the law as it related to Plaintiffs' claims, and the difficulty Plaintiffs may have in obtaining and maintaining class certification of each of their claims. During this process, both sides were required to make reasonable compromises in light of the facts, issues, and risks presented. In particular, Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in such litigation. Class Counsel also considered the burdens of proof necessary to establish and maintain class certification and then to establish liability against Defendant and to defeat all the defenses raised by Defendant. Mr. Ortman's role in mediating this case was extremely helpful in managing the parties' expectations and provided a useful and neutral analysis of the issues and risks to all parties. At all times the parties' negotiations were hard-fought and conducted at arm's length between attorneys with substantial wage and hour class action experience and the Settlement Agreement is

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

evidence of the parties' substantial efforts to reach a mutually agreeable compromise. The parties were able to reach a settlement at the mediation, subject to the preparation and execution of a comprehensive Settlement Agreement, as well as the entry of Final Approval and Judgment by the Court.

28.   **Related Actions** In addition to the present case pending in the Southern District of California, there are two other related class actions currently pending against Flagship in Santa Clara Superior Court – *Rivera v. Flagship Facility Services, Inc.*, Case No. 18CV329704, filed June 8, 2018 and *Gonzalez v. Flagship Facility Services, Inc.*, Case No. 17CV316313, filed September 26, 2017.

29.   *Rivera* involves class claims on behalf of non-exempt janitorial employees of Flagship in California from June 8, 2014 to the present for (1) Failure to Pay Wages; (2) Failure to Provide Meal Periods; (3) Failure to Provide Rest Periods; (4) Failure to Furnish Accurate Wage Statements; (5) Failure to Pay Earned Wages Upon Termination or Discharge; (6) Failure to Indemnify for Work Expenses; and (7) Unfair Competition in Violation of Business & Professions Code Section 17200. The releases in the instant Settlement Agreement overlap with the *Rivera* class claims and would bind any members of the *Rivera* class who did not opt out. The parties in the *Rivera* case have put discovery on hold pending the outcome of this proposed Settlement.

30.   *Gonzalez* involves class and representative claims brought on behalf of all non-exempt Flagship employees in California from September 26, 2013 to the present for (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Provide Accurate Itemized Wage Statements; (6) Failure to Pay All Wages Due Upon Separation of Employment; (7) Violation of Business & Professions Code Section 17200, *et seq.*; and (8) Violation of the Private Attorney Generals Act of 2004. While there is some overlap between the claims to be released in the Settlement Agreement and the *Gonzalez* claims, *Gonzalez* also involves employees who do not fall within our class definition. For example, the class defined in *Gonzalez* includes employees who worked in the facilities and food

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

services departments. Thus, while this settlement may narrow the class in *Gonzalez*, it would not eliminate *Gonzalez*'s claims. The plaintiff in *Gonzalez* contends that the instant case is a subset of his putative class, and has narrowed the scope of his discovery requests to the facilities department and culinary department in light of this potential settlement.

## CLASS COUNSEL'S INVESTIGATION OF THE CLASS AND PAGA CLAIMS

31. Prior to filing the Complaint in this action, my firm conducted a thorough investigation into the merits of Plaintiffs' claims and the applicable law related thereto, as well as reviewed numerous documents and records provided by Plaintiffs in support of their claims. My firm also requested Plaintiffs' employment files and spent significant time reviewing their employment records.

32. My firm spent significant time conducting in-depth, fact-finding interviews with the Plaintiffs and other witnesses regarding their employment at Flagship in order to assess the relative strength of the potential claims.

33. During the year that this case has been pending, the parties participated in multiple Informal Discovery Conferences with the Court. My firm propounded two sets of Requests for Production of Documents and Special Interrogatories to Flagship. Defendant propounded multiple sets of Requests for Production of Documents and Special Interrogatories on Plaintiffs, as well as one set of Requests for Admission to both Plaintiffs.

34. My firm also took depositions of Defendant's Persons Most Knowledgeable under Federal Rule of Civil Procedure 30(b)(6) on the topics of Defendant's policies, practices, and procedures regarding human resources, the use and reimbursement for cellular phones, payroll, and vacation accrual.

35. My firm subpoenaed Plaintiffs' cell phone providers to obtain Plaintiffs' phone records and spent a significant amount of time reviewing Plaintiffs' phone records for instances when Plaintiffs received calls from their supervisors.

36. Prior to mediation, my firm reviewed and analyzed the substantial amount of information and documents which Defendant provided to my firm, including personnel records for both Plaintiffs, employee handbooks, policies relating to meal and rest breaks,

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

wages, overtime, and minimum wage, a sample of roughly 630 Class Members' contact information, and a sample of pay and timekeeping records.

37.     Attorneys and paralegals from my firm conducted detailed phone interviews with a sample of Class Members, regarding the causes of action alleged in the Complaint and how these claims related to Class Members' employment during the Class Period. During the course of this investigation we discovered that many Class Members were required to answer calls during their meal and rest breaks and/or were interrupted during their breaks. These Class Members reported that they were not paid a meal period premium for their missed meal periods and were not compensated for the time they spent working during their meal periods. Moreover, many Class Members reported not being compensated for off-the-clock time that they spent renewing their security badges and/or unused paid vacation time upon separation of employment.

38.     My firm has conducted a thorough investigation and discovery into the merits and legal basis of Plaintiff's meal and rest break claims, overtime claims, late/missed payment claims, and wage statement claims and performed significant legal research with respect to the applicable law and potential defenses raised by Flagship to Plaintiff's claims. My firm's investigation and discovery allowed us to prepare a complete liability analysis and potential exposure to Flagship if Plaintiff succeeded on all claims at trial, which we measured against the relative strength of the claims in order to better identify an appropriate range of settlement figures. This analysis was based on information represented in Flagship and class members' records, as well as facts and information gleaned from class member interviews regarding the claims alleged during the class period, including the number of shifts worked per pay period, the average number of employees employed at any given time, class members' average rates of pay, the estimated violation rate for meal and rest break claims, the amount of any unpaid overtime wages, and the number of former employees owed waiting time penalties, among others.

39.     I believe that the documents and information exchanged and analyzed by the parties through informal discovery and formal discovery, as well as multiple depositions,

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Case No. 3:18-CV-02397-JLS-JLB
**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

and the parties' discussions during mediation, are sufficient for the parties to make an informed decision about a fair resolution of this action at this time.

## CLASS COUNSEL'S EVALUATION OF THE CLASS AND PAGA CLAIMS FOR SETTLEMENT PURPOSES

40.   I believe the Settlement provides a real and substantial benefit to the Class Members considering the highly disputed nature of the claims. Our determination of a fair value of the settlement was based on a number of factors, including our investigation of the applicable law as it applied to the facts discovered, the suitability of the case for class treatment, Plaintiffs' claims and the associated damages, as well as Flagship's potential defenses thereto.

41.   In preparation for mediation, Class Counsel prepared a calculation of estimated maximum damages exposure assuming that there were 1,397 Class Members working at any given time within the Class Period; a 100% violation rate for meal and rest break claims; an average of 0.5 hours of off-the-clock work per shift; an average hourly rate of pay of $14/hour, and a total of 271 pay periods in the Class Period. With these assumptions in mind, Class Counsel calculated a total maximum recovery for the Class of $147,559,515.26, including the portion of PAGA penalties payable to aggrieved employees. However, Flagship hotly contests the violation rates and argues that there were no off-the-clock hours worked at all. Class Counsel greatly reduced its estimates given Flagship's asserted defenses discussed below:

42.   During the year that this action has been pending, the parties have engaged in numerous and extensive discussions regarding the factual and legal issues presented by the litigation and Defendant' potential defenses thereto. The major points of contention in this case are that Flagship argues that Flagship provided Plaintiffs and Class Members compliant meal and rest breaks, that it provided work phones so that employees did not need to use their personal cell phones, that it properly reimbursed Class Members for any work-related use of personal cell phones, that the time Class Members spent obtaining and renewing security badges is non-compensable, and that the vacation pay claim is preempted

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

by the Labor Management Relations Act ("LMRA"). In short Flagship maintains that it did not engage in and cannot be liable for any Labor Code, Wage Order, or FLSA violations experienced by Plaintiff and Class Members.

43.    Flagship argues that it maintains compliant mobile phone use policies, contending that its janitorial staff has never been required to use their personal cell phones for work. Flagship notes that it distributed phones throughout the terminals so that janitors could be easily reached and would not need to use their own personal cell phones. Flagship also cites its Mobile Phone Policy which provided tiers for reimbursement for the use of personal cell phones and Plaintiffs' pay records reflect that they were reimbursed $1.87 per month for any business-related use of their personal cell phones. These arguments drastically undercut the potential value of Plaintiffs' claims.

44.    Flagship argues that it maintains compliant meal and rest periods, relying on the policies set forth in its California Supplement to Employee Handbook. Flagship also cites its own time records and dearth of documentary evidence supporting Plaintiffs' allegations that they were regularly interrupted during meal periods.

45.    Flagship contends that it strictly prohibits off-the-clock work, arguing that the timekeeping systems they employ are accurate and that it only rounds time in the employees' favor, for example allowing employees to clock in eight minutes after the start of their shift and clock out eight minutes prior to the end of their shift and still be paid for the full eight hours of work. Moreover, Flagship argues that its not liable for waiting time penalties because it had a good faith belief in its time keeping and payroll practices and any issues relating to payment of final wages was not "willful."

46.    Further, Flagship argues that Plaintiffs' claims are inappropriate for class treatment. Flagship contends that there is no written or unwritten policy that Plaintiffs or Class Members were required to monitor their cell phones or respond to calls during their breaks and that, if any class member did so, it was voluntarily Flagship estimates that there are roughly 6,150 Class Members, (**Exhibit 3**, Defendant's Response and Objection to Plaintiff's Special Interrogatories, Set One, at 2), who were supervised by hundreds of

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

Graham**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

different supervisors at various locations through the state. Moreover, Flagship argues that Class Members' accrual rates of vacation time are governed by various collective bargaining agreements which differ from place to place. Therefore, Flagship argues, individualized issues exist such that Plaintiffs cannot support class-wide claims.

47.     Plaintiffs believe that the class claims against Flagship are meritorious and that class certification is appropriate as to all of the claims alleged in the litigation against Flagship. Plaintiffs note that the policies regarding unpaid meal and rest breaks, overtime, timekeeping, and business expenses were set out in its Employee Handbook and were broadly applicable to all Class Members. (**Exhibit 4**, Excerpt from Defendant's Employee Handbook). However, Plaintiffs acknowledge that they face a significant battle in maintaining class certification, proving liability, and proving damages as to all claims. Plaintiffs also understand that it is difficult to prove cases of off-the-clock work. Plaintiffs and other Class Members reported that they were required to perform work off-the-clock work in obtaining and renewing their security badges but there are no time records of this and the damages had to be calculated based on interviews of Class Members. Plaintiffs recognize that while they contend that they and Class Members were not provided duty-free, uninterrupted meal periods, Class Members' time records reflect Class Members did take full 30-minute meal periods.

48.     Given the hotly contested nature of Plaintiffs' claims and the inherent difficulties and uncertainties of proof at trial, I believe that $2,000,000 is a fair and reasonable compromise of Class Members' claims, based on the strengths and weaknesses of the claims, Flagship's various formidable defenses, and the avoidance of further risk, time, and expense of further litigation. Absent this Settlement, the Parties would engage in protracted litigation including expert discovery, motions to compel the production of all contact information for the putative class members, motion for class certification, motions to decertify the class, cross motions for summary judgment, and motions in limine, among others prior to the trial. Moreover, despite the extensive discovery already exchanged, the discovery conducted thus far focused on pre-certification issues and much more discovery

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

would need to be conducted before trial. This would require significant time and expense, all without any guarantee of recovery for the Class Members. Even if Plaintiffs prevailed at trial, Defendant would likely appeal.

## THE SETTLEMENT TERMS

49.   The Parties have entered into this non-reversionary Settlement, for which Plaintiff now seeks the Court's approval and the basic terms of which are as follows:

50.   **Settlement Amount:** Defendant will pay a Maximum Settlement Amount in the amount of $2,000,000. (SA at ¶1.20). The Maximum Settlement Amount shall include the Settlement Administrator's costs for administering the settlement (not to exceed $39,000) (*id.* at ¶4.7); Class Counsel's award of attorneys' fees ($600,000) (*id.* at ¶4.4); Class Counsel's reasonably incurred litigation costs (not to exceed $35,000) (*id.* at ¶4.4); the individual Class Representative Service Award for each Class Representative ($10,000 each, $20,000 total) (*id.* at ¶4.5); the amount to be paid to the California Labor and Workforce Development Agency ($15,000). (*Id.* at ¶4.6). The Maximum Settlement Amount does <u>not</u> include the employer's share of the applicable payroll taxes. (SA, at ¶1.20). Although Defendant will not oppose Class Counsel's request for the stated amount of fees and costs or for the Class Plaintiff's enhancement request, the award of such amounts is subject to Court approval and the settlement is not conditioned upon the Court granting theses requests. (SA, at ¶4.4).

51.   **Scope of the Settlement Class:** The Settlement Class is comprised of all persons who are members of Non-Exempt Class.   (*Id.* at ¶1.22). The "Waiting Time Penalties Subclass" means all members of the Non-Exempt Class whose employment with Defendant ended at any time from and after August 13, 2015 through the Preliminary Approval Date. (*Id.* at ¶1.39).

52.   **Settlement Administration:**   Rust   Consulting   (the   "Settlement Administrator") will provide notice to all Class Members. (*Id.* at ¶¶6.1-6.4). The Settlement Administrator will initially undertake address verification measures including utilization

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

of an Accurint (or substantially similar) skip trace as well as searching the National Change of Address Database maintained by the United States Postal Service. (*Id.* at ¶6.3). This will ensure that all reasonable measures have been undertaken to obtain the most up to date address for Class Members <u>before</u> the Settlement Notice is mailed. The terms of the Settlement do not require Class Members to undertake the burden of completing and returning a claim form. Should any Class Member wish to opt out the Notice of Settlement will explain how inform the Settlement Administrator that they do not wish to participate in or be bound by the terms of the Settlement. Class Members will have sixty (60) days to provide notice of their desire to opt out of the Settlement to the Settlement Administrator from the date of mailing of the Settlement Notice. (Ex. A at 1, 9, 10). Class Members who do not opt out of the Settlement will be entitled to their pro rata share of the Settlement. (SA at ¶4.3(c)).

53.     The Settlement Notice will be mailed with the FLSA Opt-In Form. (Ex. B). Class Members who wish to participate in the collective action settlement of claims under the FLSA will have 60 days from the mailing of the Settlement Notice to complete and the FLSA Opt-In Form. (*Id.*)

54.     **Settlement Allocation:** The settlement funds are allocated fairly and no Class or Class Member is receiving preferential treatment. The Settlement Administrator will determine Class Members' pro rata portion of the applicable Settlement Funds by first determining each Class Member's "Qualifying Workweeks." (SA at ¶¶4.3(a)-(d)). Each Class Member's Qualifying Workweeks will be calculated by first determining the number of workweeks Class Members worked during the class period. Then, if the Class Member is a member of the Waiting Time Penalties Subclass, the Settlement Administrator will allocate an additional six workweeks to him/her. The individual payment to each Class Member will be determined based on the percentage of Qualifying Workweeks allocated to the particular Class Member over the total number of Qualifying Workweeks for all Class Members. (*Id.*)

55.     The Net Settlement Amount (i.e. after deductions for Settlement

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

Administration fees and costs, Class Counsel fees and costs, and enhancement payment to the Class Representative) will be at minimum $1,291,000.00 [$2,000,000 - $600,000 - $39,000 - $20,000 - $15,000 - $35,000]. If all Class Members participate in the settlement, average individual payment to each class member will be approximately $209.91 [$1,291,000 / 6,150] and the average payment per workweek will be at least $3.22 [$1,291,000 / 400,000]. These amounts will increase in proportion to the number of Class Members who exclude themselves. Class Members' shares may also increase if the Settlement Administration fees and Class Counsel's fees and costs are less than the amounts estimated in the Settlement Agreement because any amounts not allocated to Settlement Administration fees, Class Counsel's fees and costs, or Service Awards will be allocated to the Net Settlement Amount.

56.     The FLSA Collective Action Settlement Fund will be 5% of the Net Settlement Amount. (SA at ¶4.3(e)). The Settlement Administrator will determine the amount that each Class Members will be entitled under the FLSA Collective Action Settlement Fund in the same manner as Net Settlement Amount, i.e. by dividing the Class Members' individual Qualifying Workweeks by the total number of Qualifying Workweeks for all Class Members. Class Members who submit a timely and valid FLSA Opt In Form will be deemed a member of the FLSA collective action and will receive a payment from the FLSA Collective Action Settlement Fund. (*Id.*) Any funds allocated to the FLSA Collective Action Settlement Fund for which Class Members do not timely submit an FLSA Opt In Form will be redistributed pro-rata among all Participating Class Members. (*Id.*)

57.     **Procedure for Requesting Exclusion.** Class Members who wish to exclude themselves from the Settlement must mail a written request to be excluded from the Class to the Claims Administrator no later than sixty (60) calendar days after the date of mailing of the Notice. (SA at ¶6.7; Ex. A at 10). Sixty calendar days is more than enough time for Class Members to review the notice, consult with Class Counsel and/or the Claims Administrator if they have questions, and exercise their right to request exclusion from this

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

1   Settlement if they so desire.

2       58.   **Release By Class Members:**   Class Members who do not opt out of the

3   settlement will release Flagship and its parent companies, parent companies, subsidiaries,

4   affiliates, shareholders, members, agents, officers, directors, employees, predecessors,

5   successors, insurers, attorneys, and assigns ("the Released Parties") from any and all claims

6   alleged in the Second Amended Complaint ("the Released Claims"), during the Class

7   Period which includes claims for: (a) Failure to provide meal periods, or premium pay; (b)

8   Failure to provide rest periods, or premium pay; (c) Failure to pay all minimum and regular

9   wages; (d) Failure to pay all overtime wages; (e) Failure to pay accrued vacation wages;

10  (f) Failure to indemnify necessary business expenses; (g) Failure to timely pay all wages

11  due during, and upon separation of, employment; (h) Failure to provide accurate itemized

12  wage statements; (i) Failure to maintain accurate records; (j) Violation of Cal. Business

13  and Professions Code §§ 17200, et seq., arising from the claims that are alleged in the

14  Second Amended Complaint; (k) All statutory and civil penalties arising from the claims

15  alleged in the Second Amended Complaint; and (l) Related damages, restitution,

16  disgorgement, interest, attorneys' fees, costs, or expenses relating to any such claims. (SA

17  at ¶12.1).

18      59.   Class Members who submit an FLSA Opt-In Form, will be deemed to have

19  opted into the collective action for claims under the FLSA and will fully and forever release

20  and discharge the Released Parties from any claims arising out of, or related to the actual

21  claims asserted or factual allegations in the Action including all claims made under the Fair

22  Labor Standards Act ("FLSA") and any alleged federal wage and hour

23  violations/allegations that were made or could have been made based on the actual claims

24  asserted or factual allegations in the Action, whether premised on statute, regulation

25  contract, tort or other theory of liability under federal law or regulation by any Class

26  Member against the Released Parties. (*Id.* at ¶12.2).

27      60.   **Released Parties:**   The Released parties are defined as "Defendant Flagship

28  Facility Services, Inc., and its present and former officers, directors, members, managers,

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

shareholders, agents, parents, subsidiaries, affiliates, insurers, operators, partners, joint ventures, consultants, attorneys, successors, or assignees." (*Id.* at ¶1.34).

61. The Releases are tailored to the claims that were asserted in the Second Amended Complaint or which could have been asserted based on the facts alleged in the Second Amended Complaint.

62. **General Release by Named Plaintiff/Class Representative:** Plaintiffs agree to provide a full and separate general release of any and all claims against the Released Parties regardless of whether such claims have been alleged against Flagship including known or unknown claims, which are defined as follows: "Unknown Claims" means any of the Class Representative's Released Claims which the Class Representative does not know or suspect to exist in his favor at the time of the release, and which, if known by him might have affected his decision to release his claims as set forth in the Settlement Agreement. With respect to any and all claims being released, the Parties stipulate and agree that, upon the Effective Date, the Class Representatives shall have expressly, knowingly, and intentionally waived for themselves the benefits and rights of any statute, rule, doctrine, or common law principle of any jurisdiction whatsoever that provides that a general release does not extend to unknown claims, including without limitation any applicable benefits or rights under California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

The Class Representatives shall be deemed to have, and by operation of the Judgment shall have, waived all such benefits and rights as to the Class Representatives' Released Claims. The Class Representatives may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Class Representatives' Released Claims and, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all of Class Representatives' Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representatives acknowledge the significance and consequence of this waiver and assumes full responsibility for any loss that may be incurred by reason of such waiver. The Class Representatives further acknowledge that the foregoing waiver was separately bargained for and a key element of the settlement of which this release is a part. (SA at ¶4.5).

63.     Plaintiffs acknowledge that they are waiving and releasing any rights under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is knowing and voluntary. Plaintiffs and Defendant agree that this waiver and release does not apply to any rights or claims that may arise under the ADEA after the Effective Date of this Settlement Agreement. Plaintiffs acknowledge that the consideration given for this waiver and release is in addition to anything of value to which Plaintiffs were already entitled. (*Id.* at ¶4.5(f)).

64.     Class Members who wish to object to the Settlement must mail their written Notice of Objection to the Claims Administrator postmarked no later than sixty (60) calendar days after the date of mailing of the Notice. (*Id.* at ¶7.5; Ex. A at 10-11). Sixty calendar days is more than enough time for Class Members to review the notice, consult with Class Counsel and/or the Claims Administrator if they have questions, and exercise their right to object to this Settlement if they so desire.

## CLASS NOTICE AND NOTICE PLAN

65.     A copy of the proposed Class Notice is attached as **Exhibit A** to the Settlement Agreement.

66.     The Notice Packet is accurate and informative. The Class Notice summarizes the lawsuit, including the contentions and denials of the Parties, the proceedings to date, and the terms and conditions of the Settlement in plain language in an informative and coherent manner. (Ex. A, 1-3). The Class Notice also fully informs Class Members of the

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

Settlement's effect on their rights, of their options as Class Members (*i.e.,* to object, opt out, opt-in as members of the collective action, and/or do nothing), and of the consequences of exercising those options. (*Id.* at 8-11). The Class Notice also outlines the procedure and deadlines for opting out of the Settlement, for submitting objections to the Settlement, and how to receive a settlement payment – stating clearly that Class Members do not need to submit a claim form in order to receive a settlement payment under the class action, thereby encouraging Class Member participation and increasing the likelihood of Class Members obtaining recovery. (*Id.*) It further explains that Class Members can receive an additional payment for their participation in the FLSA collective action if they submit a timely and valid FLSA Opt In Form, thereby encouraging them to do so. (*Id.* at 5).

67.     The Class Notice also states the amount of the proposed service award to be paid to Class Representatives Marta L. Ceron de Orozco and Emma Barcenas; states the amount of Class Counsel's request for attorney's fees; states the amount to be paid to the Claims Administrator; states the amount to be paid to the LWDA; states the date, time and place of the final approval hearing; and explains how Class Members can obtain additional information. (*Id.* at 4-5, 10-11).

68.     The FLSA Opt In Form informs Class Members that they are entitled to an additional payment if they submit a timely and valid FLSA Opt In Form and participate in the FLSA collective action. (Ex. B). The FLSA Opt In Form is accurate and informative. It will state the estimated payment to each Class Member. In addition, a prepaid envelope will be included in order to encourage participation.

69.     Furthermore, the Class Notice also makes clear that the Settlement does not constitute an admission of liability by Flagship, that the Court has not ruled on the merits of the action, and that the final settlement approval decision has yet to be made. (Ex. A at 3, 11).

70.     The parties agreed to hire Rust Consulting, an experienced third-party administrator, to serve as Claims Administrator. Prior to selecting Rust Consulting as the Claims Administrator, the parties obtained competitive bids from two other third-party

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

settlement administrators.

71.     In addition, Class Counsel negotiated two separate methods of address verification for the Class Members prior to the mailing of the Class Notice. The Claims Administrator shall perform a National Change of Address (NCOA) search, as well as an Accurint® (or substantially similar) in-depth skip trace to attempt to obtain the best possible address for the Class Members. Accurint® is a search database that provides a much more reliable updated address than an NCOA search alone, as it attempts to locate individuals using information from credit bureaus and public records. Whereas an NCOA search requires Class Members to maintain an updated address with the U.S. Postal Service, the Accurint® search will locate newer addresses for Class Members who, for example, recently applied for a credit card or have an account with a utility company.

72.     The Objection/Exclusion deadline is sixty (60) calendar days following the initial mailing of the Notice. (SA at ¶6.7). Any Class Member who properly requests exclusion using this procedure will not receive any payment from the Net Settlement Fund and will not be bound by the Settlement. Class Members who do not submit a valid and timely Request for Exclusion, however, shall be bound by all terms of the Settlement and any judgment entered in the litigation once the Settlement is approved by the Court. (*Id.*)

73.     Not more than twenty-one (21) days after the Effective Date, the Settlement Administrator shall mail to each Participating Class Member his or her individual payment, less the employee's share of relevant tax withholdings, from a Qualified Settlement Fund administered by the Settlement Administrator, and funded by Flagship. (*Id.* at ¶8.4).

74.     The proposed notice plan, calling for first-class mailed notice to all Class Members, as well as in-depth skip tracing at the outset and further in-depth skip tracing on Class Notices returned without a forwarding address, is consistent with class notices approved by federal courts, and under the circumstances here, is the best notice practicable and the method most likely to reach the greatest number of Class Members.

## CLASS COUNSEL'S FEES AND COSTS ARE REASONABLE

75.     Class Counsel will request an attorneys' fee award in the amount of 30% of

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

the Maximum Settlement Amount or $600,000, and reimbursement of actual litigation costs, not to exceed $35,000. (SA at ¶4.4). These amounts are warranted and reasonable because of the substantial work and effort incurred to achieve the Settlement on behalf of the Class and the substantial monetary relief obtained.

76.    My firm has committed significant financial and staffing resources to the representation of Plaintiffs and Class Members, diverting resources from other cases. Attorneys and paralegals from my firm have spent significant amounts of time conducting interviews with Class Members as well as conducting research, drafting pleadings and motions, propounding and responding to discovery requests. Plaintiffs' fee request will be supported by a detailed explanation of the qualifications of each timekeeper, and their corresponding hourly rate, along with an explanation of the amount of time worked on the various tasks performed on behalf of Plaintiffs and the Class. Similarly, the costs request will be supported at the time of final approval with an explanation of the amount and nature of the costs incurred.

77.    Given that case law supports as high as a 50% fee award on common settlement funds of less than $10 million, *See e.g. Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) (noting class counsel fee awards of 30-50% are more typical where the common fund is less than $10 million), Class Counsel's request for an attorney fee award of $600,000, representing 30% of the Maximum Settlement Amount is both "reasonable and fair" in light of the amount of work performed and the amount of resources and labor employed in the prosecution of this action. Based on my experience and knowledge of the relevant legal market for wage and hour class actions, these amounts accurately reflect the marketplace for similar representation of plaintiffs in wage and hour cases on a contingency basis.

78.    Plaintiff will provide details of Class Counsel's fees award request in the motion for Final Approval and award of attorney's fees and costs, to be filed in advance of the Final Approval hearing.  In making a fee request in class actions such as this, I always analyze the factors that the court must consider in awarding fees. I believe that such

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

circumstances exist here to justify the requested attorney's fees award of 30% including: (a) the skilled work involved in achieving such an excellent result for the Class and bringing the hotly contested action to a conclusion; and (b) the associated risks in taking this matter on a contingency basis. In light of these considerations, I believe Class Counsel's requested fee of $600,000 is reasonable.

## CLASS REPRESENTATIVE SERVICE AWARD TO PLAINTIFFS

79.     At the same time as Class Counsel's fee request, Plaintiffs Ceron and Barcenas will request a Class Representative Service Awards in the amount of $10,000 each or $20,000 total, which shall be in addition to the Individual Settlement Payment that each Plaintiff is entitled to receive as a Class Member. As will be set forth in the accompanying memorandum of points and authorities that Plaintiffs will file in support of Plaintiffs' motion for Final Approval, such service awards are routinely made in wage and hour class actions like this case, particularly when, as here, Plaintiff Ceron initiated action by seeking legal assistance from Class Counsel and assisted with the preparation of the LWDA letter and Complaint. Both Ceron and Barcenas regularly communicated with Class Counsel via telephone and email, provided relevant documents, identified potential witnesses, attended depositions, and worked closely with Class Counsel throughout this litigation to protect the best interests of the Class. They also helped Class Counsel prepare discovery requests by identifying relevant documents and information which were in Flagship's possession.

80.     Plaintiffs' participation was an essential element that allowed Class Counsel to reach a settlement. I believe other Class Members would not have taken any action individually, and they would not have received the compensation afforded by this Settlement but for Plaintiffs' contributions.   Furthermore, under the terms of the Settlement, Plaintiffs will execute a general release of claims, which is an expansive release that was not required of other Class Members, who will execute a limited release of claims. I believe that the requested service award in the amount of $10,000 for each of the Plaintiffs is fair and reasonable.

Case No. 3:18-CV-02397-JLS-JLB

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

## PROVISIONAL CERTIFICATION OF THE CLASS IS APPROPRIATE

81. For the purposes of settlement, Plaintiffs contend and Flagship does not dispute that provisional certification of the Class is appropriate.

82. The class definitions are precise, objective and presently ascertainable and makes abundantly clear who is a Class Member. In addition, Class Members can be identified easily by way of Flagship's records. Flagship maintains records containing relevant information about Plaintiff and Class Members, including, but not limited to: full dates of employment during the Class Period; job title; job description; full name; social security number; payroll records, time records; mailing address; and telephone number.

83. During the exchange of information, Defendant produced employee handbooks and policies and procedures that Plaintiffs contend were applicable to all Class Members during the Class Period and all Class Members were subject to the same policies and procedures throughout the Class Period. Moreover, Class Counsel interviewed approximately sixty (60) Class Members who worked at different locations and over different time periods within the Class Period who reported suffering the same kinds of violations that Plaintiffs suffered.

84. At all times during their employment with Flagship, Plaintiffs worked as non-exempt janitorial employees, compensated on an hourly basis, and were subject to the same policies and procedures as other Class Members. Therefore, Plaintiffs' claims are typical of the Class they seek to represent because they were subject to the same alleged illegal policies, procedures, practices, and course of conduct as other Class Members.

85. Throughout the pendency of this litigation, Plaintiffs have had no conflict of interest with the Class and has, along with Class Counsel, worked toward a positive resolution of this case for a year and half, demonstrating their dedication to prosecuting this action and obtaining the best possible recovery for the Class. In addition, Plaintiffs' interests are co-extensive with those of the Class. Plaintiffs seek relief identical to that sought by every other Class Member. Since all members of the Class need to demonstrate the same elements to recover on their claims, the interests of Class Members are

GRAHAM**HOLLIS** APC
3555 FIFTH AVENUE SUITE 200
SAN DIEGO, CALIFORNIA 92103

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

sufficiently aligned with those of Plaintiffs, and Plaintiffs can be expected to pursue the interests of all Class Members adequately. In addition, Plaintiffs retained counsel with extensive experience in prosecuting complex wage and hour class actions who have worked diligently to obtain this Settlement for the Class.  I believe that this case could not have continued without Plaintiffs' efforts and desire to obtain this positive result for the Class. There are no conflicts between Plaintiffs or Class Counsel and the other Class Members.

86.     By consolidating more than six thousand potential individual actions into a single proceeding, this Court's use of the class action device enables it to manage this litigation in a manner that promotes a better use of time, effort, and expense for the litigants and the judicial system. Absent class treatment, similarly-situated employees with small but nevertheless potentially meritorious claims for damages would, as a practical matter, have no means of redress because of the time, effort and expense required to prosecute individual actions. Accordingly, class treatment is superior to other available methods for the fair and efficient adjudication of the controversy.

87.     In conclusion, it is my opinion that this Settlement Agreement is fair, reasonable and adequate, and in the best interest of the Class. The Settlement is an excellent result, considering the formidable arguments that Flagship advanced against liability, damages, and class certification, which, in light of these issues, and the fact that the Settlement was the product of protracted, contentious, and arm's-length negotiations before an experienced and neutral third-party mediator, I believe that the Settlement should be preliminarily approved.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed this 22nd day of November, 2019, at San Diego, California.

GRAHAM**HOLLIS** APC

By: _____

GRAHAM S.P. HOLLIS
Attorney for Marta L. Ceron De Orozco
and Emma Barcenas

Case No. 3:18-CV-02397-JLS-JLB

**DECLARATION OF GRAHAM S.P. HOLLIS IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**

# EXHIBIT 1

# JOINT STIPULATION OF CLASS ACTION AND PAGA REPRESENTATIVE ACTION SETTLEMENT AND RELEASE

This Stipulation of Class and Collective Action and PAGA Representative Action Settlement and Release ("Stipulation") is entered into by and between Plaintiffs Marta Ceron de Orozco and Emma Barcenas ("Plaintiffs"), individually and on behalf of the Class (as defined herein), and Flagship Facility Services Inc., ("Defendant") (collectively the "Parties") with regard to the following action pending in the United States District Court in the Southern District of California with the title *Marta L Ceron de Orozco and Emma Barcenas v. Flagship Facility Services, Inc. and DOES 1 through 50*, Case No. 18CV02397 JLS JLB, subject to the terms and conditions herein and the approval of the Court pursuant to the Federal Rules of Civil Procedure. Capitalized terms used herein shall have the meanings set forth in Section 1 or as defined elsewhere in this Settlement.

The Parties agree that the Action shall be, and hereby is, ended, settled, resolved, and concluded by agreement of Defendant to pay the settlement amount of Two Million Dollars ($2,000,000) as provided in Section 1.20 below ("Maximum Settlement Amount" or "Gross Settlement Amount") pursuant to the terms and conditions of this Stipulation and for the consideration set forth herein, including but not limited to, a release of claims by Plaintiffs and the Participating Class Members as set forth herein.

The Parties expressly acknowledge that this Stipulation is entered into solely for the purpose of compromising significantly disputed claims and that nothing in this Stipulation is an admission of liability or wrongdoing by Defendant. If for any reason the Stipulation is not approved, it will be of no force or effect, and the Parties will be returned to their respective positions immediately prior to and as if they had never executed this Stipulation as more fully set forth below.

## 1. DEFINITIONS

1.1    "Action" means the civil action entitled *Marta L. Ceron de Orozco and Emma Barcenas v. Flagship Facility Services, Inc. and DOES 1 through 50*, Case No. 18CV02397 JLS JLB, pending in the United States District Court in the Southern District of California.

1.2    "Class" or "Class Member" means all individuals who are members of the Non-Exempt Class and/or the Waiting Time Penalties Subclass (as defined below).

1.3    "Class Counsel" means the attorneys for the Class and the Class Members, who are Graham S.P. Hollis, Vilmarie Cordero, and David Lin of GrahamHollis APC, 3555 Fifth Avenue, San Diego, California 92103.

1.4    "Class Counsel's Fees and Costs" means the attorneys' fees and costs incurred and to be incurred by Class Counsel in the Action.

1.5    "Class Notice" means the Court-approved Notice of Proposed Class Action Settlement, substantially in the form attached hereto as **Exhibit A** and incorporated by reference herein, which, which will notify Class Members of, among other things, the following: the conditional certification of the Class for settlement purposes, Preliminary Approval of the Settlement, the basic terms of the Settlement, the calculation of Individual Settlement Payments, the procedures for disputing and objecting to the Settlement, and requesting exclusion from the Settlement, and the scheduling of the Final Approval Hearing. Following the Court's Preliminary Approval of the Settlement, the Settlement Administrator shall mail the Class Notice to all Class Members.

1.6    "Class Period" means August 13, 2014 through the date of Preliminary Approval of the Settlement.

1.7    "Class Representatives" or "Plaintiffs" means Marta Ceron de Orozco and Emma Barcenas, collectively.

1.8    "Class Representative Service Award" means the sums to be paid to Plaintiffs Marta Ceron de Orozco and Emma Barcenas in recognition for their efforts in obtaining the benefits of this Settlement. The Service Award shall not exceed Ten Thousand Dollars ($10,000) to Marta Ceron de Orozco and shall not exceed Ten Thousand Dollars ($10,000) to Emma Barcenas. The Class Representative Service Award will be paid in addition to the Individual Settlement Payments that Plaintiffs are entitled to as Class Members.

1.9    "Complaint" means the Complaint filed in the Action on August 13, 2018. "First Amended Complaint" means the amended Complaint filed in the Action on September 5, 2018. "Second Amended Complaint" means the second amended Complaint filed in the Action on January 9, 2019, which is the operative Complaint.

1.10    "Court" means the United States District Court for the Southern District of California, Honorable Janis L. Sammartino presiding.

1.11    "Defendant" means Flagship Facility Services, Inc., and its present and former officers, directors, members, managers, shareholders, agents, parents, subsidiaries, affiliates, insurers, operators, partners, joint ventures, franchisees, franchisors, consultants, attorneys, successors, or assignees.

1.12    "Defendant's Counsel" means the attorneys for the Defendant, who are Michael F. McCabe, Arthur M. Eidelhoch, Kristin E. Hutchins, and Emily A. Mertes of Littler Mendelson, P.C., 333 Bush Street, 34th Floor, San Francisco, CA 94104.

1.13    "Effective Date" means the date of the Final Approval Date, if there are no objections to the Settlement. If there is any objection to the Settlement, "Effective Date" means the date on which the Court's order granting Final Approval is no longer appealable or the final resolution of any appeal in any favor of approving the Settlement. Thus, this date is the later of the following: (1) the date the Final Approval is entered by the Court if no objections are filed to the Settlement; (2) if objections are filed and overruled, and no appeal is taken of the Final Approval order, sixty-five (65) days after the Final Approval is entered by the Court; or (3) if an appeal is

taken from the Court's overruling of objections to the settlement, ten (10) days after the appeal is withdrawn or after an appellate decision affirming the Final Approval decision becomes final.

1.14   "Final Approval" means the final formal court order and judgment signed by the Court following the Final Fairness and Approval Hearing in accordance with the terms herein, approving the Settlement.

1.15   "Final Approval Date" means the date upon which the Court enters Final Approval, after having determined that the Settlement is fair, adequate, and reasonable to the Class as a whole, following: (i) distribution of the Class Notice to the Class; (ii) an opportunity for Class Members to review the Class Notice, opt-in to the FLSA Settlement, opt-out of the Settlement, and submit timely objections to the Settlement; and (iii) the Final Approval Hearing.

1.16   "Final Approval Hearing" means the hearing set by the Court to: (a) determine whether the Court should give Final Approval to this Settlement; (b) consider any objections made; (c) consider the request for attorney's fees and costs submitted by Class Counsel; (d) consider the Settlement Administration Costs; (e) consider the PAGA Payment to the State of California Labor and Workforce Development Agency ("LWDA"); and (f) consider the request for the Class Representative Service Award to Plaintiff.

1.17   "FLSA" means the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

1.18   "FLSA Opt-In Deadline" means the date by which a Class Member may timely return the FLSA Consent Form to the Settlement Administrator, which will be the same as the Objections/Request for Exclusions Deadline.

1.19   "Individual Settlement Payment(s)" means the portion of the Net Settlement Amount that each Participating Class Member shall be entitled to receive pursuant to this Settlement.

1.20   "Maximum Settlement Amount" or "Gross Settlement Amount" means the maximum gross settlement sum of Two Million Dollars ($2,000,000) that Defendant shall be required to pay pursuant to this Settlement on a non-reversionary basis. The Maximum Settlement Amount includes: (1) all Individual Settlement Payments to Participating Class Members; (2) the Class Representative Service Award; (3) Class Counsel's Fees and Costs; (4) all Settlement Administration Costs; and (5) the PAGA Payment. The Maximum Settlement Amount does not include Defendant's share of all state and federal payroll taxes and withholdings such as FICA, FUTA, UI, ETT, and SDI ("Payroll Taxes") on the portion of Individual Settlement Payments allocated to wages made pursuant to this Stipulation, which will be paid separate and apart from the Maximum Settlement Amount.

1.21   "Net Settlement Amount" means the portion of the Maximum Settlement Amount available for distribution to Participating Class Members after deduction of the Court-approved attorney's fees and costs to Class Counsel, Settlement Administration Costs, the Class Representative Service Award, and the LWDA's portion of the PAGA payment.

1.22   "Non-Exempt Class" means all current and former non-exempt janitorial employees who worked for Defendant in California at any time from August 13, 2014 through the date of Preliminary Approval of the Settlement.

1.23   "Non-Participating Class Member" means a Class Member who submits a timely and valid Request for Exclusion.

1.24   "Objection/Request for Exclusion Deadline" means the date sixty (60) calendar days after the Settlement Administrator first mails the Class Notice to Class Members, by which date Class Members who wish to object to, or exclude themselves from, the Settlement must submit a timely and valid written objection or Request for Exclusion. The timeliness of a Class Member's Request for Exclusion or written objection shall be determined based on the postmarked date of mailing.

1.25   "PAGA Period" means August 13, 2017 through the date of Preliminary Approval of the Settlement.

1.26   "PAGA Payment" means the sum of Twenty Thousand Dollars ($20,000), which shall be allocated from the Maximum Settlement Amount to pay all applicable penalties under PAGA, seventy-five percent (75%) of which will be paid to the LWDA, with the remaining twenty-five (25%) to be included in the Net Settlement Amount and available for distribution to Participating Class Members and categorized as penalties.

1.27   "Participating Class Member" means a Class Member who does not submit a timely and valid Request for Exclusion and is entitled to receive his or her Individual Settlement Payment pursuant to the terms of the Settlement.

1.28   "Parties" means Plaintiff and Defendant.

1.29   "Parties' Counsel" means Class Counsel and Defendant's Counsel.

1.30   "Preliminary Approval" means the entry of an order by the Court preliminarily approving the Settlement.

1.31   "Qualified Settlement Fund" or "QSF" means the account set up by the Settlement Administrator and from which the Individual Settlement Payments to Participating Class Members shall be made. The QSF shall be an interest-bearing account within the meaning of Section 468B of the Internal Revenue Code of 1986, as amended, and Treas. Reg. Section 1.468B-1, *et seq.*, at a federally-insured bank that is mutually acceptable to the Parties and the Settlement Administrator. The Settlement Administrator shall serve as a Trustee of the QSF and shall act as a fiduciary with handling of all tax-related issues, reporting and payments. The Settlement Administrator shall act in a manner necessary to qualify and maintain the QSF as a Qualified Settlement Fund and the Parties shall cooperate to ensure such treatment and shall not take a position in any filing or before any tax authority inconsistent with such treatment. The Parties agree that the QSF shall be a non-reversionary fund and that under no circumstance will there be any reversion to Defendant of any of the funds from the QSF or the Maximum Settlement Amount.

1.32   "Qualifying Workweek" means any week in which a Participating Class Member actively worked at least one day of the week (i.e., was not on vacation or a leave of absence) as a Non-Exempt Class Member during the Class Period, according to Defendant's records. Workweeks of Non-Participating Class Members will not be included in the total number of workweeks for purposes of calculating and distributing the Individual Settlement Payments to Participating Class Members.

1.33   "Released Claims" means all claims alleged in the Second Amended Complaint, or which could have been alleged based on the asserted facts regardless of whether such claims arise under federal, state and/or local law, statute, ordinance, regulation, common law, or other source of law, which occurred during the Class Period, and a release from the State of California of all PAGA claims based on the Labor Code violations alleged in the Second Amended Complaint which occurred during the PAGA Period. Released Claims specifically includes all claims under the laws alleged in the Second Amended Complaint, as well as any and all claims, causes of action, damages, wages, premiums, penalties, attorneys' fees, costs, and any other form of relief or remedy in law, equity, of whatever kind or nature and for any relief whatsoever, including monetary, injunctive, or declaratory relief, whether direct or indirect, whether under federal law or the law of any state, whether suspected or unsuspected, whether known or unknown, which the Plaintiffs or any Class Member has against the Released Parties or any of them for any acts occurring during the Class Period that were pled or could have been pled in the Action based on the facts, subject matter, or the factual or legal allegations in the Action including claims that are based upon or arise out of the California Labor Code or any similar provision of federal, state or local law. .

1.34   "Released Parties" means Defendant Flagship Facility Services, Inc., and its present and former officers, directors, members, managers, shareholders, agents, parents, subsidiaries, affiliates, insurers, operators, partners, joint ventures, consultants, attorneys, successors, or assignees.

1.35   "Request for Exclusion" means a letter or written request to be excluded from the Settlement submitted by a Class Member to the Settlement Administrator and postmarked by the Objection/Request for Exclusion Deadline. In order to be valid, the Request for Exclusion must include the Class Member's name and signature, current address, telephone number, the last four digits of their Social Security Number, and contain a statement to the effect of: "I wish to be excluded from the Ceron De Orozco Settlement."

1.36   "Settlement" means the terms and conditions set forth in this Joint Stipulation of Class and Collective Action and PAGA Representative Action Settlement and release, including the disposition of the Released Claims, as defined herein.

1.37   "Settlement Administrator" means the third-party entity selected by the Parties to mail the Class Notice to Class Members and perform all duties relating to the administration of the Settlement

1.38   "Settlement Administration Costs" means the actual and direct fees and expenses reasonably incurred by the Settlement Administrator in administering the Settlement.

1.39    "Waiting Time Penalties Subclass" means all members of the Non-Exempt Class who separated from their employment with Defendant at any time from August 13, 2015 through the date of Preliminary Approval of the Settlement.

## 2.    PROCEDURAL HISTORY

2.1    Plaintiff Marta Ceron de Orozco is a former, non-exempt employee of Defendant Flagship Facility Services, Inc.

2.2    Plaintiff Marta Ceron de Orozco filed a Class Action Complaint in the California Superior Court for the County of San Diego on August 13, 2018. On September 5, 2018, Plaintiff Marta Ceron de Orozco filed a First Amended Complaint adding a representative action under the Private Attorneys General Act ("PAGA") Labor Code section 2698, *et seq.* On October 18, 2018, Defendant removed the case to the United States District Court in the Southern District of California. Plaintiff Marta Ceron de Orozco filed a Second Amended Complaint on January 9, 2019, adding Plaintiff Emma Barcenas.

2.3    The Parties conducted written discovery and depositions in advance of the full-day mediation, which included Requests for Production of Documents, Special Interrogatories, and depositions of Plaintiff Marta Ceron de Orozco, Plaintiff Emma Barcenas, and the Persons Most Knowledgeable at Defendant, as well as informal exchanges of information and documents relevant to the claims and defenses in this Action.

2.4    On August 6, 2019, the Parties participated in a full-day mediation before class action mediator Tripper Ortman. During mediation, the Parties engaged in good-faith, arm's length negotiations. At the conclusion of the mediation, the Parties resolved the Action, subject to the execution of this comprehensive Stipulation and entry of Final Approval by the Court.

## 3.    THE PARTIES' POSITION IN THE ACTION

3.1    Defendant denies any liability and wrongdoing of any kind associated with the claims alleged in the Action, and further denies that the Action is appropriate for class action or PAGA representative action treatment for any purpose other than this Settlement. Defendant in no way admits any violation of law or any liability whatsoever to Plaintiffs and/or the Class Members, or "aggrieved" employees, individually or collectively; all such liability being expressly denied. Defendant contends that it complied with all applicable California laws, including, but not limited to, the California Labor Code, the IWC Wage Orders and the California Business and Professions Code at all times.

3.2    This Stipulation shall not be admissible or used for any purpose in any other action or proceeding to establish or infer liability or wrongdoing on the part of Defendant. Whether or not the Effective Date occurs, neither this Stipulation nor any of its terms nor the Settlement itself will be: (a) construed as, offered, or admitted in evidence as, received as, or deemed to be evidence for any purpose adverse to Defendant or any other of the Released Parties, including but not limited to, evidence of a presumption, concession, indication, or admission by any of the Released Parties of any liability, fault, wrongdoing, omission, concession, joint employment, or damage; or (b) disclosed, referred to, or offered in evidence against any of the Released Parties in any further

---

proceeding in the Action, except for the purposes of effectuating the Settlement pursuant to this Stipulation or for Defendant to establish that a Class Member has resolved any of his/her claims released through this Stipulation.

3.3   Plaintiffs believe that the Action is meritorious and that class and collective action certification is appropriate.

3.4   Class Counsel engaged in substantial investigation and thoroughly researched the relevant law for each of the causes of action alleged, and the defenses thereto. Class Counsel interviewed Class Members, conducted a comprehensive investigation into the facts of the Action, and reviewed and analyzed all of Defendant's applicable policies and practices, as well as the voluminous sample of time and pay records and other documents produced by Defendant.

3.5   Class Counsel weighed the monetary benefit of the Settlement to the Class against the expense and length of continued proceedings in the trial court and potentially the appellate court that would be necessary to prosecute the Action fully against Defendant. Class Counsel also took into account the uncertain outcome and risk of any further litigation, especially in a complex action such as this case. Based on the data reviewed and Class Counsel's thorough investigation and evaluation of all known facts and circumstances underlying each cause of action, including the possible risk of significant delay and uncertainty associated with litigation, and the various defenses asserted by Defendant, Class Counsel believes that the Settlement is fair, reasonable, and adequate and is in the best interest of all Class Members.

3.6   Defendant and its counsel have similarly concluded that it is desirable that the Action be settled in the manner and upon the terms and conditions set forth in this Stipulation in order to avoid further expense, inconvenience and distraction of further legal proceedings, as well as the uncertainty of the outcome of the Action. Therefore, Defendant has determined that it is desirable and beneficial to put to rest the claims in the Action and Defendant agrees that the Settlement is fair, reasonable and adequate.

## 4.   SETTLEMENT COMPONENTS

4.1   The Settlement shall have five components: (1) the Individual Settlement Payments; (2) the award of attorney's fees and costs to Class Counsel; (3) the Class Representative Service Award; (4) the Settlement Administration Costs; and (5) the PAGA Payment. All of these components are included in and shall only be paid from the Maximum Settlement Amount.

(a)   Payroll Taxes: The Maximum Settlement Amount does not include the Payroll Taxes, which shall be paid by Defendant separate and apart from the Maximum Settlement Amount. The Payroll Taxes will be computed by the Settlement Administrator based on the amounts allocated to wages paid to the Participating Class Members. The Settlement Administrator shall be responsible for making all necessary payments and government filings in connection with such payments

4.2   It is estimated that there are approximately 400,000 Qualifying Workweeks during the Class Period. The Maximum Settlement Amount will increase proportionally with added

workweeks if the total number of Qualifying Workweeks is more than 10% higher than the 400,000 estimated workweeks..

    4.3    **Calculation of Individual Settlement Payments**. The Settlement Administrator shall have the authority and obligation to calculate the amounts of Individual Settlement Payments in accordance with the methodology set forth in this Stipulation and any Orders of the Court. After deducting: (i) the Court-approved Class Representative Service Award to Plaintiff; (ii) the Court-approved Attorney's Fees and Costs to Class Counsel; (iii) the Settlement Administration Costs; and (iv) the portion of the PAGA Payment to the LWDA, each of which is detailed further in sections 4.3 through 4.7 below, the amount remaining in the Maximum Settlement Amount shall constitute the Net Settlement Amount, which the Settlement Administrator will distribute among Participating Class Members as follows:

    (a)    The Parties agree that the Individual Settlement Payments will be calculated based on the respective number of Qualifying Workweeks each Participating Class Member worked during the Class Period.

    (b)    Calculating Qualifying Workweeks. It shall be the duty of the Settlement Administrator to calculate the respective number of Qualifying Workweeks for each Class Member worked during the Class Period. Defendant shall provide the Settlement Administrator all personnel records and documents necessary to perform this calculation.

    (c)    Distribution Formula. Participating Class Members shall be allocated a pro-rata portion of the Net Settlement Amount available for distribution based upon their respective number of Qualifying Workweeks and the value of their respective Qualifying Workweeks. In addition, each Participating Class Member who is also a member of the Waiting Time Penalty Subclass will receive an allotment of six (6) additional Qualifying Workweeks. The six (6) additional Qualifying Workweeks allotted to the Waiting Time Penalty Subclass will not be included in the total number of Qualifying Workweeks for the purposes of increasing the Maximum Settlement Amount pursuant to Section 4.2. The Settlement Administrator will add up all the Qualifying Workweeks and multiply each by their respective value to calculate the total Qualifying Workweeks for the Participating Class Members. Each Participating Class Member shall be entitled to a pro-rata share of the Net Settlement Amount based on the ratio of the total number of Qualifying Workweeks that he or she worked during the Class Period to the total number of Qualifying Workweeks that all Participating Class members worked during the Overtime Class Period. Thus, the Individual Settlement Payments shall be calculated using the following formula:

        (i)    Individual Settlement Payments = Net Settlement Amount x (Participating Class Member's Qualifying Workweeks/Total No. of Qualifying Workweeks for All Participating Class Members).

(d)     Each member of the Waiting Time Penalties Subclass will be entitled to receive an allotment of six (6) additional Qualifying Workweeks. The entire amount paid to the Waiting Time Penalty Subclass will be allocated as penalties.

(e)     The parties agree that Class Members will need to opt-in to the FLSA release by timely submitting their FLSA Consent Form (**Exhibit B**) to receive their portion of the Settlement payment allocated to the FLSA, which is 5% of the Net Settlement Fund. To the extent a Class Member fails to timely submit their FLSA Consent Form, he/she will receive 95% of his/her proportionate share of the Net Settlement Fund and his/her release will not include FLSA claims. Any unclaimed FLSA allocations shall be redistributed pro-rata among all Participating Class Members

(f)     The Parties agree that Class Members will not have to submit a claim form in order to receive their Individual Settlement Payment, other than their FLSA Consent Form. Each Participating Class Member will automatically be mailed a check for 95% of their Individual Settlement Payment. As is explained further in section 9 of this Stipulation, any checks that are uncashed after 180 calendar days will be distributed to a Legal Aid at Work, as a *cy pres* award.

(g)     Subject to approval by the Court, the settlement amounts distributed to participating Settlement Class members shall be allocated 20% to payment of wages, 40% to disputed penalties, and 40% disputed interest. The FLSA Settlement Share shall comprise 5% of each Class Member's settlement payment. The portion allocated to wages shall be reported on an IRS Form W-2, and the portion allocated to interest and/or statutory penalties shall be reported on an IRS Form 1099. The amount allocated to payment of wages shall not include the amounts to be deducted for the employer share of payroll taxes. Defendant's share of payroll taxes on the 20% amount allocated to payment of wages shall be paid separate and apart from the Gross Settlement Amount. The taxes ordinarily paid by employers relating to the portion of the Individual Settlement Payments allocated as wages will be paid by Defendant, separate from the Gross Settlement Amount.

(h)     A Settlement Administrator shall be selected by mutual agreement of the Parties. It shall be the responsibility of the Settlement Administrator to timely and properly withhold from Individual Settlement Payments payable to Participating Class Members all applicable payroll and employment taxes, including all federal, state, and local income taxes, and to prepare and deliver the necessary tax documentation and, thereafter, to cause the appropriate deposits of withholding taxes and informational and other tax return filing to occur.

4.4     **Class Counsel's Attorney's Fees and Costs.** Class Counsel will request a payment in an amount not to exceed 30% of the Maximum Settlement Amount, or Six Hundred Thousand, Dollars and ($600,000), to compensate Class Counsel for all of the work already performed in this Action and all work remaining to be performed, for which Plaintiff or Class Counsel could claim under any legal theory whatsoever, including without limitation, documenting the Settlement, providing any notices required as part of the Settlement, securing Court and/or appellate court approval of the Settlement, ensuring that the Settlement is fairly administered and implemented,

and obtaining Final Approval in accordance with the Settlement. The amount paid for Class Counsel's Fees and Costs shall constitute full satisfaction of any obligation to pay any amounts to any person, attorney or law firm for attorneys' fees, expenses or costs in the Action incurred by any attorney on behalf of Plaintiff and Class Members, and shall relieve Released Parties of all claims or liability to any attorney or law firm for any attorneys' fees, expenses and/or costs that may be claimed on behalf of Plaintiff and/or the Class Members. If the amount awarded to Class Counsel for attorney's fees is less than the amount sought, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members. Class Counsel will request reimbursement for actual reasonable litigation costs and expenses incurred in prosecuting the Action and implementing the terms of the Settlement, in an amount not to exceed Thirty-Five Thousand Dollars ($35,000), which shall be paid from the Maximum Settlement Amount. The Parties agree that Settlement of this Action is not conditioned upon the Court approving the amount of Class Counsel's Fees and Costs requested by Class Counsel and that if the amount awarded to Class Counsel for reimbursement of litigation costs is less than the amount sought, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members. Defendant agrees to not object to Class Counsel's request for fees and costs as long as the request is consistent with the terms of this Stipulation. The amount paid for Class Counsel's Fees and Costs will be reported by IRS Form 1099 and will be provided to Class Counsel and the pertinent taxing authorities, as required by law.

    4.5    **Class Representative Service Award and Release**. Subject to Court approval and the execution of a general release in favor of the Released Parties, Plaintiff Marta Ceron de Orozco will be paid a Class Representative Service Award in an amount not to exceed Ten Thousand Dollars ($10,000) and Plaintiff Emma Barcenas will be paid a Class Representative Service Award in an amount not to exceed Ten Thousand Dollars ($10,000) from the Maximum Settlement Amount, in addition to their Individual Settlement Payment. If the Court approves a Class Representative Service Award to Plaintiffs that is less than the amount sought, the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members.

    (a)    The Parties intend this payment to constitute a service payment in consideration for Plaintiffs' litigation efforts, and the work and time Plaintiffs put into this Action as Class Representatives.

    (b)    The Class Representative Service Award is also provided in consideration for Plaintiffs' willingness to provide a full and separate general release on their own behalf and on behalf of their heirs, spouses, executors, administrators, attorneys, agents and assigns of any and all claims against the Released Parties regardless of whether such claims have been alleged against Defendant, including any and all known or unknown claims, demands, rights, liabilities, causes of action, losses, debts, and expenses whether for wages, economic damages, non-economic damages, punitive damages, restitution, tort, contract, penalties, injunctive or declaratory relief, attorney's fees, costs, or other monies or remedies. This release by Plaintiffs includes all federal and state statutory claims, and federal and state common law claims (including but not limited to those for contract, tort, and equity), including, but not limited to, claims under the Americans with Disabilities Act, Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. §1981, 42 U.S.C. § 1983, the Fair Labor Standards

Act, the Employee Retirement Security Income Act of 1974, the California Constitution, the California Fair Employment and Housing Act, the California Unfair Competition Act (California Business and Professions Code section 17200, *et seq.*), the California Labor Code, the Fair Labor Standards Act, and claims for additional compensation relating to stock options.

(c)     Furthermore, through the general release, the Class Representatives themselves (and not on behalf of the Class or any other Class Members) shall release, acquit and discharge the Released Parties from any and all claims against the Released Parties of any kind whatsoever (upon any legal or equitable theory whether contractual, common law, constitutional, statutory, federal, state, local or otherwise), whether known or unknown, that arose, accrued or took place at any time on or prior to the date on which the full and general release is executed. Through the full and general release discussed in this Section, the Class Representatives will expressly waive the benefit of Section 1542 of the California Civil Code and acknowledges the language of Section 1542 of the California Civil Code, which provides:

(d)     **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.** Because the Class Representative Service Award represents a payment to the Class Representatives for services to the Class and not wages, taxes will not be withheld from the Class Representative Service Award. No Party has made any representation to Plaintiffs regarding the taxability of any Class Representative Service Award. The Settlement Administrator will report the Class Representative Service Award on a 1099 form, which it will provide to the Class Representative and the pertinent taxing authorities, as required by law.

(e)     The Class Representatives assume full responsibility for paying all federal and state taxes and penalties, if any, due as a result of their receipt of the Class Representative Service Award.

(f)     Plaintiffs acknowledge that they are waiving and releasing any rights under the Age Discrimination in Employment Act of 1967 ("ADEA") and that this waiver and release is knowing and voluntary. Plaintiffs and Defendant agree that this waiver and release does not apply to any rights or claims that may arise under the ADEA after the Effective Date of this Settlement Agreement. Plaintiffs acknowledge that the consideration given for this waiver and release Settlement Agreement is in addition to anything of value to which Plaintiffs were already entitled. Plaintiffs further acknowledge notice by this writing that:

(i)      Plaintiffs have consulted with an attorney prior to executing this Stipulation;

(ii)     Plaintiffs have up to twenty-one (21) calendar days within which to consider this Stipulation;

(iii)    Plaintiffs have seven (7) calendar days following Plaintiffs' execution of this Settlement Agreement to revoke the Agreement;

(iv)    the ADEA waiver in this Stipulation shall not be effective until the seven (7) day revocation period has expired; and

(v)    nothing in this Stipulation prevents or precludes Plaintiffs from challenging or seeking a determination in good faith of the validity of this waiver under the ADEA, nor does it impose any condition precedent, penalties or costs for doing so, unless specifically authorized by federal law; and

(vi)    in order to revoke this Stipulation, either Plaintiff must deliver to Emily A. Mertes' attention at the following address a written revocation before 12:00 a.m. (midnight) p.d.t. on the seventh calendar day following the date Plaintiffs sign the Stipulation:

Emily A. Mertes, Esq.
Littler Mendelson, PC
333 Bush Street, 34th Floor
San Francisco, CA 94104

Nothing in this Stipulation, including, but not limited to, the release of claims and confidentiality provisions, will prevent Plaintiffs from filing a charge or complaint with, reporting possible violations of any law or regulation, making disclosures to, and/or participating in any investigation or proceeding conducted by the United States Equal Employment Opportunity Commission, National Labor Relations Board, and/or any other federal, state or local agency charged with the enforcement of any laws, although by signing this Stipulation, Plaintiffs are waiving rights to individual relief based on claims asserted in such a charge or complaint, except where such a waiver of individual relief is prohibited.

(g)    The Class Representatives fully support the Settlement and believe the Settlement is fair, reasonable and adequate and in the best interest of the Class Members.

**4.6**    **Payment to the Labor and Workforce Development Agency.** Subject to Court approval, Twenty Thousand Dollars ($20,000) will be allocated to cover any and all claims for civil penalties associated with the Released Claims that were, or could have been, brought in the Action under PAGA, 75% of which, or Fifteen Thousand Dollars ($15,000), will be paid directly to the LWDA, and the remaining 25% of which, or Five Thousand Dollars ($5,000), will be retained in the Net Settlement Amount for distribution to Participating Class Members as penalties.

**4.7**    **Settlement Administration Cost**: The reasonable costs incurred by the Settlement Administrator in administering the settlement, as approved by the Court, shall be deducted from the Maximum Settlement Amount and are currently estimated not to exceed Thirty-Nine Thousand Dollars ($39,000) and shall be paid from the Maximum Settlement Amount ("Settlement Administration Cost Award").

(a)     This administration includes but is not limited to generation of Individual Settlement Payment checks and related tax reporting forms, checking addresses against the National Change of Address database, translating the Class Notice into Spanish, skip-tracing class members as necessary and as described herein, administration of uncashed checks, generation of checks to Class Counsel for attorneys' fees and costs and to Plaintiffs for their Class Representative Service Award, resolution of disputes concerning weeks worked, and such other duties as may be required for the administration of the Settlement. The Settlement Administrator shall expressly agree to all of the terms and conditions of this Stipulation. All costs associated with administering the Settlement by the Settlement Administrator shall be compensated by the Settlement Administration Cost Award.

## 5.     SETTLEMENT APPROVAL PROCEDURE

5.1     Solely for purposes of settling this Action, the Parties stipulate and agree that the prerequisites for establishing class certification with respect to the Class have been met.

5.2     The Parties hereby agree that the formula for allocating the Individual Settlement Payments to Class Members under the terms of this Settlement is reasonable and that the payments provided are designed to provide a fair settlement to Participating Class Members. Based on their own independent investigation and evaluation, and in light of all known facts and circumstances, the Parties and their respective counsel believe that the Settlement is fair, reasonable, and adequate.

5.3     The Parties and their counsel agree to the conditional certification of the Class for the sole purpose of effectuating this Settlement. Should, for whatever reason, the Settlement not become final, the fact that the Parties were willing to stipulate to class certification as part of the Settlement shall have no bearing on, and shall not be admissible in, this Action or any other legal proceeding in any jurisdiction. As is discussed elsewhere in this Stipulation, Defendant expressly reserves the right to oppose class certification in this Action should the Settlement not become final.

5.4     The Parties agree to fully cooperate with each other to accomplish the terms of this Stipulation, including but not limited to, execution of such documents and to take such other actions as may reasonably be necessary to implement the terms of this Stipulation.

5.5     Class Counsel shall seek Preliminary Approval of the Settlement on January 30, 2020. In conjunction with such hearing, Class Counsel shall submit this Stipulation, together with the exhibits attached hereto, and any other documents necessary to implement the Settlement.

5.6     Defendant agrees not to oppose Plaintiffs' Motion for Preliminary Approval unless the motion is inconsistent with the terms set forth in this Stipulation.

5.7     On the date set forth in the Preliminary Approval Order, a Final Fairness and Approval Hearing shall be held before the Court in order to (1) review this Stipulation and determine whether the Court should give it final approval, and (2) consider any timely objections made pursuant to Section 7.5 herein and all responses by the Parties to such objections. At the Final Fairness and Approval Hearing, the Parties shall ask the Court to give final approval to the

Settlement and shall submit to the Court a Proposed Final Order Approving Settlement of Class Action.

5.8    If, after a notice of appeal or a petition for a writ of *certiorari* or any other motion, petition, or application, the reviewing court vacates, reverses, or modifies the Final Order such that there is a material modification to the Settlement, and that court's decision is not completely reversed and the Final Order is not fully affirmed on review by a higher court, then Plaintiffs and Defendant will each have the right to void the Settlement, which the Parties must do by giving written notice to the other Parties, the reviewing court, and the Court not later than fourteen (14) days after the reviewing court's decision vacating, reversing, or materially modifying the Final Order becomes final. A vacation, reversal, or modification of the Court's award of a Class Representative Service Award or Class Counsel's fees or costs will not constitute a vacation, reversal, or material modification of the Final Order within the meaning of this paragraph, provided that Defendant's obligation to make payments remains limited as set forth in this Stipulation.

## 6.    NOTICE TO THE CLASS

6.1    Within ten (10) business days following the Court's entry of its Order Granting Preliminary Approval of Settlement Defendant shall provide the Settlement Administrator with a list containing the names, last known addresses, last known telephone numbers, social security numbers of all Class Members, the dates of employment of each Class Member who worked for Defendant in California during the Class Period, the last date of employment for each Class Member and all other information necessary for the Settlement Administrator to calculate the number of Qualifying Workweeks worked by each Class Member during the Class Period and to determine which Class Member is also a member of the Waiting Time Penalty Subclass (the "Class Data").

6.2    Defendant's Counsel shall consult with the Settlement Administrator prior to the production date to ensure that the format of the database will be acceptable to the Settlement Administrator. The Settlement Administrator shall not share the information in the Class Data, including the identity of Class Members with the Class Representatives or Class Counsel, except as otherwise provided herein.

6.3    Prior to mailing the Class Notice to Class Members, the Settlement Administrator shall perform a National Change of Address (NCOA) search and an Accurint (or substantially similar) in-depth skip trace in order to obtain the best possible address for Class Members.

6.4    Within fourteen (14) calendar days after receipt of the Class Data from Defendant, the Settlement Administrator shall mail the Class Court-Approved Notice to all Class Members by first-class U.S. mail.

6.5    The Class Notice will include an estimated calculation of the Class Member's estimated share of the Net Settlement Amount.

6.6    Attached to the Notice will be a FLSA Consent Form ("FLSA Consent Form"), in the form approved by the Court. The envelope containing the Class Notice shall bear the following

---

phrase in bold type, "**RETURN SERVICE REQUESTED**." The envelope shall also bear the following phrase in the bottom left hand corner: IMPORTANT— FLAGSHIP CLASS ACTION SETTLEMENT INFORMATION. PLEASE OPEN IMMEDIATELY. Included with the Class Notice shall be a pre-paid, pre-addressed envelope for the Class Member to return their FLSA Consent Form.

6.7    The Class Notice shall provide that Class Members who wish to exclude themselves from the Settlement must submit a Request for Exclusion to the Settlement Administrator postmarked by the Objection/Request for Exclusion Deadline – sixty (60) calendar days following the initial mailing of the Class Notice. Any Class Member who properly requests exclusion will not receive an Individual Settlement Payment and will not be bound by this Settlement or have any right to object, appeal, or comment thereon. Class Members who do not submit a valid and timely Request for Exclusion shall be bound by the terms of the Settlement and any judgment entered in the Action once the Settlement receives Final Approval. The Class Notice will provide this information to Class Members.

6.8    The Class Notice shall provide that Class Members who wish to object to the Settlement must file their written objection with the Court by the Objection/Request for Exclusion Deadline as well as mail a copy of their written objection to the Settlement Administrator postmarked no later than the Objection/Request for Exclusion Deadline. Class Members who fail to object in the manner specified in this Stipulation of Settlement will be deemed to have waived all objections to the Settlement and will be foreclosed from making any objections, whether by appeal or otherwise, to the Settlement.

6.9    The Class Notice shall provide that Class Members who wish to Opt In to receive their FLSA individual settlement allocation must complete, sign and postmark their FLSA Consent Form by the FLSA Opt-In deadline- sixty (60) calendar days following the initial mailing of the Class Notice.

6.10   If a Class Notice is returned as undeliverable with a forwarding address provided by the United States Postal Service on or by the Objection/Request for Exclusion Deadline, the Settlement Administrator will promptly resend the Class Notice to that forwarding address along with a brief letter stating that the recipient of the Class Notice has until the original deadline set forth on the Class Notice, or ten (10) calendar days after the date of re-mailing of the Class Notice (whichever is later) to object or submit a Request for Exclusion. If any Class Notice is returned from any mailing and/or re-mailed, the Settlement Administrator will note for its own records and notify the Parties' Counsel of the date of such re-mailings as part of a weekly status report provided to the Parties.

6.11   If a Class Notice is returned as undeliverable without a forwarding address from its first mailing, the Settlement Administrator shall undertake reasonable efforts to locate a current address, including performing an Experian (or substantially similar) in-depth skip trace or mass search on LexisNexis databases based on set criteria. If the Settlement Administrator obtains a more current address, the Settlement Administrator shall resend the Class Notice to that address along with a brief letter stating that the recipient of the Class Notice has until the original deadline set forth on the Class Notice or ten (10) calendar days after the date of re-mailing of the Class

Notice (whichever is later) to submit a Request for Exclusion.   No further action by the Settlement Administrator shall be required regarding undeliverable Class Notices.

6.12    If a FLSA Consent Form is submitted by a Class Member but has not been signed or is otherwise deficient, the Settlement Administrator will send a deficiency notice within three (3) business days of the date the Settlement Administrator becomes aware of such deficiency. The Settlement Administrator shall clearly state in the deficiency notice all the reasons why the FLSA Consent Form is deficient and inform the Class Member of the need to cure all these deficiencies and re-submit the FLSA Consent Form to be able to receive their FLSA individual allocation from the Settlement. Any deficient FLSA Consent Form that was originally submitted on or before the FLSA Opt In Deadline shall be accepted and paid if the deficiency is cured within three (3) calendar days prior to the date of the Final Approval Hearing.

6.13    The Settlement Administrator shall provide the Parties' Counsel with a weekly report showing: (1) the number of Class Notices mailed to Class Members; (2) the number of Class Notices returned as undeliverable; (3) the number of re-mailed Class Notices; (4) the number of Class Members who have submitted Requests for Exclusion; (5) the number of Class Members who have submitted objections; and (6) the number of Class Members who have disputed the number of Qualifying Workweeks  being credited to that Class Member. Additionally, the Settlement Administrator shall provide to the Parties' Counsel any updated reports regarding the administration of the Settlement as needed or requested.

6.14    At least twenty five (25) calendar days prior to the Final Approval Hearing, the Settlement Administrator will provide a declaration specifying the due diligence the Settlement Administrator has undertaken with regard to the mailing of the Class Notice, including any attempts to obtain valid mailing addresses for and re-mailing of any returned Class Notice; verifying its Settlement Administration Costs; and reporting on the number of objections and exclusions submitted by Class Members, as well as any disputes (and explain the status of the disputes).

7.    **RESPONSES TO NOTICE**

7.1    <u>Resolution of Dispute</u>. If a Class Member who receives the Class Notice wishes to dispute the number of his or her Qualifying Workweeks represented therein, the Class Member must notify the Settlement Administrator no later than the Objection/Request for Exclusion Deadline. The Class Member must produce any available supporting evidence to the Settlement Administrator regarding the correct number of Qualifying Workweeks that the Class Member contends he or she worked for Defendant during the Class Period, as explained in the Class Notice. The Settlement Administrator will notify the Parties' Counsel of any disputes via email. Defendant shall review its records and provide information to the Settlement Administrator in response to any such disputes. Defendant's records shall be presumed to be determinative, but the Settlement Administrator shall evaluate the evidence submitted by the Class Member and make the decision as to which dates should be applied. The determination by the Settlement Administrator shall be final and binding.

7.2    <u>Requests for Exclusion from Class</u>. In order for any Class Member to validly exclude himself or herself from the Class and this Settlement (*i.e.,* to validly opt out), the Class Member

or his or her authorized representative must send a Request for Exclusion to the Settlement Administrator, postmarked or faxed by no later than sixty (60) calendar days after the date the Settlement Administrator initially mails the Class Notice to the Class Members or ten (10) calendar days after the Settlement Administrator re-mails the Notice to the Class Member, whichever is later. The date of the initial mailing of the Class Notice was postmarked shall be conclusively determined according to the records of the Settlement Administrator. Any Class Member who timely and validly submits a Request for Exclusion will not be entitled to any Individual Settlement Payment, will not be bound by the terms and conditions of this Stipulation, and will not have any right to object to the Settlement or appeal the Court's Orders in this case.

7.3     Any Class Member who fails to timely submit a valid Request for Exclusion shall be deemed a Participating Class Member whose rights and claims with respect to the issues raised in the Action are determined by the Court's Final Order Approving Settlement of Class Action, and by the other rulings in the Action. Thus, said Participating Class Member's rights to pursue any claims released in this Stipulation will be extinguished.

7.4     The Settlement Administrator will provide the Parties with the number of valid and timely Request for Exclusion letters received within seven (7) calendar days after the Objection/Exclusion Deadline.

7.5     Objections to Settlement. In order for any Class Member to object to this Settlement, or any term of it, the objecting Class Member must not submit a Request for Exclusion (*i.e.*, must not opt out), and must file their objection with the Court by the Objection/Request for Exclusion Deadline as well as mail a copy of their written objection to the Settlement Administrator postmarked no later than the Objection/Request for Exclusion Deadline (or ten (10) days after the Settlement Administrator re-mails the Notice to the Class Member, whichever is later), a completed and signed objection, along with any supporting papers. The date of the initial mailing of the Class Notice Packet, and the date the signed Objection Form was postmarked or faxed, shall be conclusively determined according to the records of the Settlement Administrator. The Settlement Administrator shall send any objections it receives to Defense Counsel and Class Counsel within three (3) business days of receipt. The Court retains final authority with respect to the consideration and admissibility of any Class Member objections.

7.6     Encouragement of Class Members. The Parties to this Stipulation and the counsel representing such Parties shall not, directly or indirectly, through any person, encourage or solicit any Class Member to exclude himself or herself from this Settlement (opt out) or to object to it. However, Class Counsel, Defense Counsel, and Defendant may respond to inquiries from Class Members with truthful information and nothing that discourages participation.

## 8.     SETTLEMENT FUNDING AND DISTRIBUTION SCHEDULE

8.1     **Settlement Funding Date**: Defendant shall deposit the full amount of the Maximum Settlement Amount into the Qualified Settlement Fund set up by the Settlement Administrator no later than fourteen (14) calendar days after the Effective Date.

8.2     **Disbursement Date**: No later than seven (7) calendar days after Defendant funds the QSF, the Settlement Administrator shall disburse: (a) Individual Settlement Payments to

Participating Class Members; (b) the Class Representative Service Award; (c) the portion of the PAGA Payment to be made to the LWDA; (d) the Settlement Administrator's Costs; and (e) Class Counsel's Attorney's Fees and Costs, all as previously approved by the Court.

8.3    Within 250 calendar days of the Effective Date of the Settlement, the Settlement Administrator shall provide written certification of such completion to the Court, Class Counsel and Defendant's Counsel. Class Counsel shall file that written certification with the Court.

8.4    The following is a summary of the proposed timeline related to this Settlement:

| EVENT | DEADLINE |
|---|---|
| Preliminary Approval of the Settlement by the Court | TBD |
| Defendant to provide Settlement Administrator with the list of Class Members and all required Class Data | 10 business days after entry of the order granting Preliminary Approval |
| Settlement Administrator to mail Notice to Class Members | 14 calendar days after receiving the Class Data |
| Objections/Exclusion Deadline | 60 calendar days after mailing of Notice |
| FLSA Opt In Deadline | 60 calendar days after mailing of the Notice |
| Settlement Administrator to provide the parties notice of the valid request of exclusion letters and objections received | 7 calendar days after the Objection/Exclusion Deadline |
| Deadline for Defendant to exercise its option to cancel the settlement if 5% or more of the Class Members submit a timely and valid request for exclusion | 10 business days after Settlement Administrator notifies the Parties of the number of valid and timely requests for exclusion |
| Settlement Administrator to provide declaration of due diligence | 25 calendar days prior to Final Approval Hearing |
| Final Approval Hearing | TBD |
| Effective Date of the Settlement | Date the Court enters the Final Approval Order and Judgment, if no objections to the Settlement. |
| Funding Obligation Date | 14 calendar days after Effective Date of the Settlement |
| Settlement Administrator to mail Individual Settlement Payments | 7 calendar days after the Defendant makes all the necessary payments into the Qualified Settlement Fund |
| Uncashed Checks Become Void | 180 calendar days after mailing of the Individual Settlement Payment Checks |
| Settlement Administrator to Provide Certificate of Completion of Settlement | 250 calendar days After Effective Date of Settlement |

9.    **DISPOSITION OF RETURNED AND UNCASHED CHECKS**

9.1    This is a non-reversionary "all-in" settlement. No unclaimed amounts will revert to Defendant.

9.2    <u>Returned Checks</u>. If any Individual Settlement Payments are returned as undeliverable, the Settlement Administrator will take all steps necessary to locate an updated mailing address for the Class Member, including without limitation, using Experian (or substantially similar) in-depth skip-trace. In the event the Settlement Administrator is unable to locate an updated address or the Individual Settlement Payments are returned as undeliverable after a second mailing, the amount of any returned checks shall be distributed to Legal Aid at Work as a *cy pres* award.

9.3    <u>Uncashed Checks</u>. Any checks that are not returned but remain uncashed one hundred and eighty (180) calendar days after mailing or remailing (pursuant to paragraph 9.2) shall be distributed to Legal Aid at Work as a *cy pres* award. Participating Class Members who do not timely cash their Individual Settlement Payments shall be bound by all of the terms of the Settlement, including without limitation, the Released Claims set forth herein.

10.    **NO SPILLOVER OF RESIDUALS**

10.1    Any residual amount of the Net Settlement Amount remaining after all Participating Class Members' claims are paid resulting from any returned or uncashed checks shall be distributed by the Settlement Administrator, as a cy pres award to Legal Aid at Work, a nonprofit organization that will benefit the class or similarly situated persons.

11.    **TAXATION AND WITHHOLDING**

11.1    The Settlement Administrator will be responsible for issuing to the Class Representatives, Class Members, and Class Counsel any IRS Form W-2, IRS Form 1099, or any other tax forms as may be required by the Internal Revenue Code of 1986 (the "Code") and this Settlement for all amounts paid pursuant to this Settlement. The Settlement Administrator will also be responsible for forwarding all payroll taxes and other legally required withholdings to the appropriate government authorities to pay for the employer's share of payroll taxes as set forth below. If the Code, the regulations promulgated thereunder, or other applicable tax law, is changed after the date of this Stipulation, the processes set forth in this section may be modified in a manner to bring Defendant into compliance with any such changes.

11.2    The entire amount paid as a waiting time penalty to Participating Class Members who are members of the Waiting Time Penalties Subclass will be allocated as penalties. The portion of each Individual Settlement Payment paid to Participating Class Members who are members of the Non-Exempt Class will be allocated as: 20% wages, and 40% penalties, and 40% interest. The portion that is attributable to wages will be subject to normal tax withholding and shall be reported to the taxing authorities on an IRS Form W-2. The portion attributable to penalties and interest will not be subject to tax withholding and an IRS Form 1099 shall be issued if the payment is above the minimum threshold required for the issuance of a Form 1099.

11.3   Defendant's Counsel and Class Counsel make no warranty and have provided no advice regarding the tax treatment of Individual Settlement Payments to Participating Class Members pursuant to the terms of this Settlement. All taxes, other than the employer's share of payroll taxes, which are not a part of the Maximum Settlement Amount, are the sole responsibility of the Participating Class Member.

11.4   Circular 230 Disclaimer. Each party to this Stipulation (for purposes of this section, the "acknowledging party" and each party to this Stipulation other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Stipulation, and no written communication or disclosure between or among the parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Stipulation, (b) has not entered into this Stipulation based upon the recommendation of any other party or any attorney or advisor to any other party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party; and (3) no attorney or adviser to any other party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Stipulation.

11.5   Individual Settlement Payments paid to Participating Class Members shall not be deemed pensionable earnings and shall not have any effect on the eligibility for, or calculation of, any employee benefits (e.g., vacations, holiday pay, retirement plans, etc.). The Parties agree that Individual Settlement Payments to Participating Class Members do not represent any modification of Participating Class Members' previously credited hours of service or other eligibility criteria under any employee pension benefit plan or employee welfare benefit plan sponsored by the Released Parties. Any Individual Settlement Payments paid pursuant to this Settlement shall not be considered "compensation" in any year for purposes of determining eligibility for, or benefit accrual within, an employee pension benefit plan or employee welfare benefit plan sponsored by the Released Parties.

11.6   The Payroll Taxes and any other applicable employer withholdings or contributions will be computed by the Settlement Administrator based on the amounts allocated to wages to Participating Class Members. The Settlement Administrator shall be responsible for making all necessary payments and government filings in connection with such payments.

11.7   No person shall have any claim against Defendant, Defendant's Counsel, Plaintiffs, the Class, Class Counsel or the Settlement Administrator based on mailings, distributions and payments made in accordance with this Stipulation of Settlement.

## 12.   RELEASE BY THE CLASS

12.1   In exchange for the consideration recited in this Settlement, upon the Effective Date, Plaintiffs and all Class Members who do not timely submit a Request for Exclusion do hereby and

forever release, acquit, and discharge Defendant and its parent companies, subsidiaries, affiliates, shareholders, members, agents, officers, directors, employees, predecessors, successors, insurers, attorneys, and assigns ("the Released Parties") from any and all claims alleged in the Second Amended Complaint ("the Released Claims") during the Class Period, which includes claims for:

(a)     Failure to provide meal periods, or premium pay;

(b)     Failure to provide rest periods, or premium pay;

(c)     Failure to pay all minimum and regular wages;

(d)     Failure to pay all overtime wages;

(e)     Failure to pay accrued vacation wages;

(f)     Failure to indemnify necessary business expenses;

(g)     Failure to timely pay all wages due during, and upon separation of, employment;

(h)     Failure to provide accurate itemized wage statements;

(i)     Failure to maintain accurate records;

(j)     Violation of Cal. Business and Professions Code §§ 17200, *et seq.*, arising from the claims that are alleged in the Second Amended Complaint;

(k)     Penalties provided under Cal. Labor Code sections 226.7, 512, and 558, and the applicable IWC Wage Order for failure to provide meal and rest periods;

(l)     Penalties provided under Cal. Labor Code sections 1194 and 1197.1 and the applicable IWC Wage Order for failure to pay minimum wages;

(m)     Penalties provided under Cal. Labor Code sections 510, 558, and 1194, and the applicable IWC Wage Order for failure to pay overtime wages;

(n)     Liquidated damages provided under California Labor Code section 1194.2 for failure to pay minimum wages;

(o)     Penalties provided under Cal. Labor Code sections 201, 202, 203, 204, and 210 for failure to timely pay all wages owed;

(p)     Penalties under Cal. Labor Code section 226, made available under the Private Attorneys General Act;

(q)     Penalties under Cal. Labor Code section 1174 and the applicable IWC Wage Order, made available under the Private Attorneys General Act, for failure to maintain accurate records;

(r)     Penalties under Cal. Labor Code section 2698 *et seq.* predicated on alleged California Labor Code violations or penalties that were asserted based upon the facts alleged in the Action (which include Cal. Labor Code sections 201, 202, 203, 204, 210, 218.5, 218.6, 221, 223, 224, 225.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, and 2802); and

(s)     Related damages, restitution, disgorgement, interest, attorneys' fees, costs, or expenses relating to any such claims.

12.2    In addition, any Class Member who timely submits a FLSA Consent Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties.

## 13.    VOIDING THE AGREEMENT

13.1    Because the Parties have stipulated to the certification of the Class with respect to all causes of action alleged in the Action for settlement purposes only, this Stipulation requires preliminary and final approval by the Court. Accordingly, the Parties enter into this Stipulation on a conditional basis. This Stipulation is contingent upon the approval and certification by the Court.

13.2    If the Effective Date does not occur, the fact that the Parties were willing to stipulate for the purposes of this Stipulation to a Class shall have no bearing on, nor be admissible in connection with, the issue of certification of the Class with respect to all causes of action alleged in the Action. Defendant does not consent to certification of the Class for any purpose other than to effectuate settlement of the Action. If the Effective Date does not occur, or if Disposition of this Action is not effectuated, any certification of the Class will be vacated and Plaintiffs, Defendant, and the Class will be returned to their positions with respect to the Action as if the Stipulation had not been entered into.

13.3    In the event that the Effective Date does not occur:   (a) any Court orders preliminarily or finally approving certification of any class contemplated by this Stipulation shall be null, void, and vacated, and shall not be used or cited thereafter by any person or entity; and (b) the fact of the settlement reflected in this Stipulation, the fact that Defendant did not oppose the certification of a Class under this Stipulation, or that the Court preliminarily approved the certification of the Class, shall not be used or cited thereafter by any person or entity, including in any manner whatsoever, including without limitation any contested proceeding relating to the certification of any class.

13.4    If the Effective Date does not occur, this Stipulation and any of the related negotiations or proceedings shall be deemed null and void, shall be of no force or effect whatsoever, and shall not be referred to or used for any purpose whatsoever. All Parties to this Stipulation shall stand in the same position, without prejudice, as if the Stipulation had been neither

entered into nor filed with the Court. The fact that the Parties were willing to stipulate to class certification of all causes of action pled in the Action as part of the Settlement will have no bearing on, and will not be admissible in connection with, the issue of whether the Class should be certified by the Court in a non-settlement context in this Action or any other action.   Defendant expressly reserves the right to challenge the propriety of class certification in the Action for any purpose, if the Effective Date does not occur.

13.5    The Parties and their respective counsel shall take all steps that may be requested by the Court relating to the approval and implementation of this Stipulation and shall otherwise use their respective best efforts to obtain Court approval and implement this Stipulation. If the Court does not grant the Motion for Preliminary Approval and/or the Motion for Final Approval, the Parties agree to meet and confer to address the Court's concerns. If the Parties are unable to agree upon a resolution, the Parties agree to seek the assistance of mediator Tripper Ortman to resolve the dispute.

13.6    Defendant may void the Settlement in the event five percent (5%) or more of the Class Members submit a timely and valid Request for Exclusion. Defendant must exercise this right within ten (10) business days after the Settlement Administrator notifies the Parties of the number of valid and timely Request for Exclusion letters received, which the Settlement Administrator must do within seven (7) calendar days after the Objection/Exclusion Deadline. If Defendant chooses to withdraw it will be responsible for all costs incurred by the Settlement Administrator in administrating the settlement up through the date of withdrawal.

13.7    In the event a timely appeal is filed from the Final Approval Order and Judgment, the Final Order shall be stayed and the Gross Settlement Amount shall not be distributed pending the completion of the appeal.

13.8    Invalidation of any material portion of this Stipulation shall invalidate this Stipulation in its entirety unless the Parties shall subsequently agree in writing that the remaining provisions shall remain in full force and effect.

## 14.    MISCELLANEOUS PROVISIONS

14.1    Defendant's Costs: All of Defendant's own legal fees, costs, and expenses incurred in this Action shall be borne by Defendant.

14.2    The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the costs and expenses incurred in administration of the Settlement, noting that the cost of administering the Settlement shall be deducted from the Maximum Settlement Fund subject to approval by the Court.

14.3    Authority to Enter into Settlement: The signatories hereto represent that they are fully authorized to enter into this Settlement and bind the Parties to the terms and conditions herein.

14.4    Cooperation in Drafting:   The Parties have cooperated in the negotiation and preparation of this Stipulation. This Stipulation will not be construed against any Party on the basis

that the Party, or the Party's counsel, was the drafter or participated in the drafting of this Stipulation.

14.5   Mutual Full Cooperation: The Parties agree to fully cooperate with each other to accomplish the terms of the Settlement, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the Settlement. The Parties shall use their best efforts, including all efforts contemplated by the Settlement and any other efforts that may become necessary by order of the Court to effectuate the Settlement and the terms set forth herein. In the event the Parties are unable to reach a stipulation on the form or content of any document needed to implement the Settlement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of the Settlement, the Parties shall seek the assistance of the Court to resolve such disagreement.

14.6   No Admission: Nothing contained herein, nor the consummation of the Settlement, is to be construed or deemed an admission of liability, culpability, negligence, or wrongdoing on the part of Defendant or any of the other Released Parties. Each of the Parties hereto has entered into the Settlement with the intention of avoiding further disputes and litigation with the attendant risk, inconvenience and expenses. This Stipulation is a settlement document and shall, pursuant to California Evidence Code section 1152 and/or Federal Rule of Evidence 408 and/or any other similar law, be inadmissible as evidence in any proceeding, except an action or proceeding to approve the Settlement, and/or interpret or enforce the Settlement.

14.7   Construction: The Parties agree that the terms and conditions of the Settlement are the result of lengthy, intensive, arm's-length negotiations between the Parties and that this Settlement shall not be construed in favor of or against any of the Parties by reason of the extent to which any Party participated in drafting the Settlement.

14.8   Headings: The descriptive heading of any section or paragraph of this Stipulation is inserted for convenience of reference only and does not constitute a part of this Stipulation and shall not be considered in interpreting this Stipulation.

14.9   Representation by Counsel: The Parties acknowledge that they have been represented by counsel throughout all negotiations that preceded the execution of this Stipulation, and that this Stipulation has been executed with the consent and advice of counsel.

14.10   No Reliance on Representations:   The Parties have made such investigation of the facts and the law pertaining to the matters described herein and to this Stipulation as they deem necessary, and have not relied, and do not rely, on any statement, promise, or representation of fact or law, made by any of the other parties, or any of their agents, employees, attorneys, or representatives, with regard to any of their rights or asserted rights, or with regard to the advisability of making and executing this Stipulation, or with respect to any other matters. No representations, warranties, or inducements have been made to any party concerning this Stipulation.

14.11  Notice:  All notices, demands, or other communications given under this Stipulation must be in writing and addressed to Class Counsel and/or Defendant's Counsel using the contact information outlined under sections 1.4 and 1.15 of this Stipulation.

14.12   Jurisdiction of the Court: Except for those matters to be resolved by the Settlement Administrator as expressly stated, any dispute regarding the interpretation or validity of this Settlement, or relating to the Action or the Released Claims, shall be subject to the exclusive jurisdiction of the Court, and Plaintiffs, Class Members, and Defendant agree to submit to the personal and exclusive jurisdiction of the Court. The Disposition entered by the Court will not adjudicate the merits of the Action or the liability of the Parties resulting from the allegations of the Action. The Court shall retain jurisdiction solely with respect to the interpretation, implementation and enforcement of the terms of this Settlement and all orders, judgments entered in connection therewith, and post-judgment matters. After entry of the Final Judgment, the Court will have continuing jurisdiction over the Action and the Settlement solely for purposes of: (i) enforcing this Settlement, (ii) addressing any claims administration matters that may arise; and (iii) addressing such post-Judgment matters as may be appropriate under court rules or applicable law.

14.13   California Law Governs: All terms of this Settlement and exhibits hereto shall be governed by and interpreted according to the laws of the State of California, regardless of its conflict of laws.

14.14   Invalidity of Any Provision: The Parties request that before declaring any provision of this Stipulation of Settlement invalid, the Court shall first attempt to construe all provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions in this Stipulation of Settlement valid and enforceable.

14.15   Amendment or Modification: This Settlement may be amended or modified only by a written instrument signed the Parties or their successors-in-interest.

14.16   Interim Stay of Proceedings: The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

14.17   Counterparts and Fax/Electronic Signatures: This Settlement may be executed in counterparts by facsimile, or email which for purposes of this Agreement shall be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument. Any executed counterpart will be admissible in evidence to prove the existence and contents of this agreement. A fax scanned signature on this Stipulation shall be as valid as an original signature.

14.18   Entire Agreement: This Stipulation and exhibits hereto constitute the entirety of the Settlement terms. No other prior or contemporaneous written or oral agreements may be deemed binding on the Parties, and this Stipulation supersedes all prior agreements and understandings among the Parties hereto with respect to the settlement of the Action, including correspondence between Class Counsel and Defense Counsel and drafts of prior agreements or proposals. The Parties expressly recognize that California Civil Code Section 1625 and California Code of Civil Procedure Section 1856(a) provide that a written agreement is to be construed according to its terms and may not be varied or contradicted by extrinsic evidence, and agree that no such extrinsic oral or written representations will modify, vary or contradict the terms of the Settlement. In case of any conflict between text contained in Sections 1 through 14 of this Stipulation and text

contained in the Exhibits to this Stipulation, the former (*i.e.,* Sections 1 through 14) shall be controlling, unless the Exhibits are changed by or in response to a Court order. There are no restrictions, promises, representations, warranties, covenants, or undertakings governing the subject matter of this Stipulation other than those expressly set forth or referred to herein.

14.19 Waiver: Any failure of any Party, Defense Counsel, or Class Counsel hereto to comply with any obligation, covenant, agreement, or condition herein may be expressly waived in writing, to the extent permitted under applicable law, by the Party or Parties and their respective counsel hereto entitled to the benefit of such obligation, covenant, agreement, or condition. A failure to insist upon strict compliance with any representation, warranty, covenant, agreement, or condition shall not operate as a waiver of, or estoppel with respect to, any subsequent or other failure.

14.20 No Prior Assignments: The Parties and the Parties' Counsel represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer or encumber to any person or entity any portion of liability, claim, demand, action, cause of action or right released and discharged in this Stipulation of Settlement.

14.21 Assignment: None of the rights, commitments, or obligations recognized under this Stipulation may be assigned by any Party, Class Member, Class Counsel, or Defense Counsel without the express written consent of each other Party and their respective counsel. The representations, warranties, covenants, and agreements contained in this Stipulation are for the sole benefit of the Parties under this Stipulation, and shall not be construed to confer any right or to avail any remedy to any other person.

14.22 Binding on Successors and Assigns: This Settlement will be binding upon, and inure to the benefit of, the successors or assigns of the Parties to this Settlement.

14.23 Deadlines Falling on Weekends or Holidays: To the extent that any deadline set forth in this Stipulation falls on a Saturday, Sunday or legal holiday, that deadline shall be continued until the following business day.

**IT IS SO AGREED.**

Dated: _NOV. 18_ , 2019

**PLAINTIFF:**

_____
MARTA L. CERON DE OROZCO

Dated: _NOV - 18_ , 2019

**PLAINTIFF:**

_____
EMMA BARCENAS

Dated:  Nov. 21  , 2019

**DEFENDANT:**
FLAGSHIP FACILITY SERVICES, INC.

By: _____
      (Authorized Representative of Defendant)

APPROVED AS TO FORM AND CONTENT:

Dated:  Nov 19  , 2019

**CLASS COUNSEL:**
GRAHAMHOLLIS, APC

By: _____
      GRAHAM S.P. HOLLIS
      VILMARIE CORDERO
      DAVID LIN

Dated: November 21, 2019

**DEFENDANT'S COUNSEL:**
LITTLER MENDELSON, P.C.

By: _____
      MICHAEL F. MCCABE
      ARTHUR M. EIDELHOCH
      KRISTIN E. HUTCHINS
      EMILY A. MERTES

---

# EXHIBIT 1A

# If you were employed by Flagship Facility Services, Inc. in California in a janitorial position at any time from August 13, 2014, to [PA Date], you may be entitled to money from a class action settlement.

*The District Court authorized this notice.*
*This is not a lawsuit against you and you are **not** being sued.*
*This is not a solicitation from a lawyer.*

● The Parties in the action entitled *Ceron de Orozco, et al. v. Flagship Facility Services, Inc., et al.*, U.S. District Court for the Southern District of California, Case No. 3:18-CV-02397-JLS-JLB ("Action"),have reached a Settlement and it has been granted Preliminary Approval by the Court supervising the lawsuit.

● The proposed Settlement will resolve all claims in these lawsuits. The Court has ordered that this Notice be sent to you because you may be a member of the Settlement Class.

● The purpose of this Notice is to inform you of the Settlement of the class action and your legal rights and options under the Settlement:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| RECEIVE YOUR PAYMENT | You may be entitled to receive approximately <<enter amount>> under this Settlement.<br><br>**To receive your payment, you do not need to do anything – it will automatically be sent to you.** |
| REQUEST EXCLUSION | If you wish to exclude yourself from the Settlement and get no payment, you must submit a timely and valid Request for Exclusion, the process for which is described in Section 16 below.<br><br>**If you exclude yourself, you will not receive any payment from the Settlement**. |
| OBJECT TO THE SETTLEMENT | If you believe the terms of the Settlement are unfair or unreasonable, then you may notify the Settlement Administrator that you object or you may appear at the Final Approval Hearing to object, the process for which is described in Section 18 below. |

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

Notice of Class Action Settlement

> ## DEFENDANTS <u>CANNOT</u> RETALIATE AGAINST YOU IN ANY WAY FOR PARTICIPATING, EXCLUDING YOURSELF, OR OBJECTING TO THIS SETTLEMENT

**PLEASE READ THIS NOTICE CAREFULLY**

**YOUR LEGAL RIGHTS ARE AFFECTED WHETHER YOU ACT OR NOT**

| **1.** | **Why did I get this notice?** |
|---|---|

You received this notice because you were employed by Flagship Facility Services, Inc. ("Flagship") in California in a janitorial position in California at some point between August 13, 2014 and [PA date] ("Class Period")

The Court ordered that this notice be sent to you and all other Class Members in order to: (1) inform you of the settlement of this class action lawsuit; (2) inform you of your legal rights under the Settlement; and (3) explain how you may receive your Settlement Payment, exclude yourself, or object to the Settlement.

| **2.** | **What is this lawsuit about?** |
|---|---|

Plaintiffs' Second Amended Complaint ("Operative Complaint") alleges that Flagship failed to provide Class Members with legally compliant meal and rest periods; failed to pay them all minimum, regular, and overtime wages owed; failed to reimburse them for all business-related expenses; failed to provide them with accurate, itemized wage statements; failed to pay them all vacation wages; failed to produce employment records; and failed to pay them all wages that they were owed upon separation of their employment. Plaintiffs' complaints also allege that Flagship's practices violated California Business and Professions Code section 17200, *et seq.*, the Private Attorneys General Act ("PAGA"), California Labor Code section 2698, *et seq.*, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 203.

Flagship denies it did anything wrong and asserts that it has fully complied with all of its legal obligations, including that it timely and properly paid Class Members all wages owed; provided them compliant meal and rest periods; reimbursed them for all business-related expenses; properly issued them accurate, itemized wage statements ; paid them all vacation wages; timely paid wages; and maintained accurate records, all as required by law. Flagship also denies that it engaged in any unfair competition, violations of PAGA, or violations of the FLSA, and contend that none of the claims alleged by Plaintiffs will succeed in Court.

The Court did not decide in favor of Plaintiffs or Flagship. Instead, Plaintiffs, Flagship, and their respective attorneys have concluded that the Settlement is advantageous to all parties considering the risks and uncertainties of continued litigation and trial.

2

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

Notice of Class Action Settlement

| 3. | What is a class action? |
|---|---|

In a class action lawsuit, a person called a class representative sues on behalf of people who have similar claims. The people with similar claims are called class members and together they make up the class. In a class action, one court resolves the issues for all class members, except for those who choose to exclude themselves from the class. A class member is bound by the determination or judgment entered in the case whether the class wins or loses and the class member may not file a new lawsuit with the same claims that were decided in the class action, unless he or she excludes themselves from the class. Here, on [date of preliminary approval] Judge Janice L. Sammartino of the U.S. District Court for the Southern District of California, issued an order preliminarily approving the Settlement and appointing Plaintiffs Marta L. Ceron de Orozco and Emma Barcenas as the Class Representatives.

| 4. | Why is there a settlement? |
|---|---|

The Court did not hold a trial to decide in favor of Plaintiffs or Flagship. The Court has made no ruling on the merits of the Class Members claims and has determined that certification of the Settlement Class for settlement purposes only is appropriate under federal law. Instead, all parties agreed to the Settlement because they believe it is fair, reasonable, and adequate under the circumstances. Plaintiffs think their claims have merit and that they would have been successful at trial. On the other hand, Flagship denies all liability and believes that Plaintiffs would not have won anything at trial. In agreeing to settle this lawsuit, the parties avoided the risks and significant costs of a trial and potential appeals, and Class Members will be entitled to receive compensation without any determination of wrongdoing by Defendant.

## WHO IS INCLUDED IN THE SETTLEMENT?

To receive a portion of the Settlement, you must be a Class Member.

| 5. | How do I know if I am a Class Member? |
|---|---|

You are a Class Member and a member of the "Non-Exempt Class" if you were employed by Flagship in California as a non-exempt janitorial employee at any time between August 13, 2014 and [PA date].

You are also a member of the "Waiting Time Penalties Subclass" if you are a member of the Non-Exempt Class and your employment with Defendant ended at any time from and after August 13, 2015 and [PA date].

/ / /

/ / /

/ / /

3

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

## THE LAWYERS REPRESENTING THE PARTIES

| 6. | Do I have a lawyer in this case? |
|---|---|

The Court appointed Graham S.P. Hollis, Vilmarie Cordero, and David Lin of GrahamHollis APC to serve as Class Counsel and represent you and other Class Members. Class Counsel may be reached at:

GRAHAMHOLLIS, APC
3555 Fifth Avenue, Suite 200
San Diego, CA 92103
Telephone: (619) 619-1869
Facsimile: (619) 692-0822

***You will not be charged for their services***. Instead, Class Counsel will request to be compensated directly from the Maximum Settlement Amount, as discussed below. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 7. | How will Class Counsel be paid? |
|---|---|

Class Counsel undertook this case on a contingency basis, that is, without receiving any payment up front. Now, having resolved this Action on behalf of the Class, Class Counsel will ask the Court to approve a payment of up to $600,000 for attorney's fees to be taken out of the Maximum Settlement Amount.  Class Counsel will also ask the Court to approve payment of up to $35,000 in reasonable litigation costs to be taken out of the Maximum Settlement Amount. Flagship will not oppose this requested amount.

| 8. | Who are the lawyers representing Defendant? |
|---|---|

Michael F. McCabe and Emily A. Mertes of Littler Mendelson, P.C., 333 Bush Street 34th Floor, San Francisco, CA 94104, represent Flagship.

## WHAT ARE THE TERMS OF THE SETTLEMENT?

| 9. | What does the Settlement provide? |
|---|---|

Subject to Court approval, Flagship agreed to pay up to $2,000,000 (the "Maximum Settlement Amount") to settle this lawsuit. Before any payments will be made to Class Members, however, the following deductions will be made from the Maximum Settlement Amount:

- <u>Settlement Administration Costs</u>: For its work administering the Settlement, the Settlement Administrator will charge an amount currently estimated not to exceed $39,000.

4

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

<u>Notice of Class Action Settlement</u>

- <u>Class Representative Service Awards</u>: Class Counsel will petition the Court for service awards to be paid to the Class Representatives, Marta L. Ceron de Orozco and Emma Barcenas, to compensate them for their time and efforts spent serving the Class and actively participating in the Action. Class Counsel's application for service awards for Plaintiffs shall not exceed a total amount of $20,000.

- <u>Attorney's Fees and Costs</u>: Class Counsel will request a payment up to $600,000 for attorney's fees and reimbursement of reasonable litigation costs, not to exceed $35,000. ***Class Members are not personally responsible for paying Class Counsel's attorney's fees or costs***.

- <u>PAGA Payment</u>: $15,000 will be paid to the Labor and Workforce Development Agency ("LWDA") for civil penalties under PAGA.

| 10. | How will my payment be calculated? |
|-----|-------------------------------------|

After deducting the items listed in Section 9 from the Maximum Settlement Amount, the amount remaining will be the "Net Settlement Amount," the full amount of which will be allocated to Class Members who *do not* request exclusion from the Class. Your share of the Net Settlement Amount will depend upon your membership in the Class and/or Subclass and will be determined as follows:

**Participating Class Members**: Each Class Member who does not request exclusion will receive a pro rata portion of the Net Settlement Amount based upon the respective number of Workweeks that he or she worked during the Class Period as a compared to the total number of Workweeks that all other Participating Class Members worked during the Class Period. Workweeks include any weeks a Class Member worked at least one day of the week and was not on vacation or a leave of absence. Workweeks of Class Members who exclude themselves from the Settlement will not be included in the total number of Workweeks for purposes of the Settlement Administrator's calculation and distribution of Individual Settlement Payments to Participating Class Members.

**FLSA Settlement Share:** Five (5) percent of the Net Settlement Amount will be allocated to FLSA claims. If a Participating Class Member fails to timely submit an FLSA Consent Form, he/she will receive ninety-five (95) percent of his/her proportionate share of the Net Settlement Amount and their release will not include FLSA claims. Participating Class Members who timely submit a FLSA Collective Action Member Consent Form ("Opt In Form") (enclosed with this Notice for eligible Class Members) will receive the additional five (5) percent of his/her proportionate share of the Net Settlement Amount for releasing their claims under the FLSA.

**Waiting Time Penalties Subclass**: Each Participating Class Member who is a member of the Waiting Time Penalties Subclass will be allocated six (6) additional Workweeks as a waiting time penalty. The additional Workweeks allocated to a member of the Waiting Time Penalties Subclass for calculation of their Individual Settlement Payments purposes only will under no circumstance cause the total number of Workweeks to increase and thus, the Maximum Settlement Amount will not increase by the distribution of six (6) workweeks.

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

<u>Notice of Class Action Settlement</u>

| 11.    How much will I receive? |
|---|

Flagship's records show that you are a member of the Settlement Class and worked a total of [est. number] Workweeks as a janitorial staff member for Flagship during the Class Period. This means you will receive a settlement amount that is currently estimated to be: $[est. amount], less applicable taxes and payroll deductions. (You may have worked additional Workweeks for Defendant prior to the Class Period or in another position, but those Workweeks are not included for purposes of this Settlement).

To claim your FLSA Settlement Share, please complete and submit the enclosed Opt In Form for an additional amount currently estimated to be: $[est. amount]

<<INSERT FOR WTP SUBCLASS MEMBERS ONLY>> Flagship's records also show that you are a member of the Waiting Time Penalties Subclass, which means you are entitled to receive $[est. amount] as a waiting time penalty, in addition to any amounts referenced above.

**Please note**: The actual amount of your Individual Settlement Payment may increase or decrease based on several factors, including, but not limited to, the number of individuals who exclude themselves from the settlement.

The Settlement Administrator will calculate all Individual Settlement Payments to Participating Class Members. In the event there is a dispute regarding an Individual Settlement Payment calculation, counsel for the parties will agree to allow the Settlement Administrator to make the final decision regarding its resolution.

If you believe in good faith that your total number of Workweeks listed above is incorrect, you must contact the Settlement Administrator and provide documentation that you believe demonstrates that this number is incorrect and authorize the Settlement Administrator to review your records and related documents. A Class Member challenging the total number of Workweeks bears the burden of proof, i.e., a Class Member who fails to provide written documentation supporting a different number of Workweeks will have his or her challenge denied. The total number of your Workweeks listed above is presumed to be correct unless the documents you submit (such as wage statements and paystubs from Flagship) demonstrate otherwise.

If you intend to challenge the total number of Workweeks listed above, your dispute letter and supporting documents must be mailed to the Settlement Administrator postmarked no later than <<60 calendar days from mailing>> at the designated address for the Settlement Administrator – see Sections 16 and 18. The Settlement Administrator will review the pertinent records showing the total number of Workweeks that you worked during the Class Period, which Flagship has agreed to make available for this purpose, and make a determination. If you do not provide any documents or other evidence to support your challenge, the Settlement Administrator will reject it.

| 12.    How do I receive my payment? |
|---|

To receive your Individual Settlement Payment minus the FLSA Settlement Share,

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

<u>Notice of Class Action Settlement</u>

***you do not have to do anything***. Only if the Settlement receives final approval by the Court, the Settlement Administrator will automatically send you your Individual Settlement Payment check as long as you do not request to be excluded.

To receive the FLSA Settlement Share of your payment, please complete and submit the FLSA Opt In Form enclosed with this Notice by <<**60 days from mailing**>>.

| 13. | When do I get my payment? |
|-----|---------------------------|

If no objections to the Settlement are filed, Flagship will deposit the full Maximum Settlement Amount into the account set up by the Settlement Administrator no later than fourteen (14) calendar days after the Effective Date of Settlement, which is (1) the date the Final Approval is entered by the Court if no objections are filed to the settlement, or if any objections are withdrawn prior to Final Approval; (2) if objections are filed and overruled, and no appeal is taken of the final approval order, sixty-five (65) days after the Final Approval is entered by the Court; or (3) if an appeal is taken from the Court's overruling of objections to the settlement, ten (10) days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final.

No later than fourteen (14) calendar days after Flagship makes the payment described above, the Settlement Administrator will disburse: (a) the Individual Settlement Payments to Participating Class Members; (b) the Class Representative Service Awards; (c) the payment to the LWDA; (d) the Settlement Administrator's Costs; and (e) Class Counsel's Fees and Costs.

Once the Settlement Administrator mails you your Individual Settlement Payment check, you must cash your check within 180 calendar days from the date the check is mailed. Any checks that are returned as undeliverable or remain uncashed 180 calendar days after mailing or remailing will be cancelled and the funds will revert to the Net Settlement Amount and be redistributed to Class Members whose Individual Settlement Payments were not returned. However, if the Settlement Administrator is unable to locate updated addresses or payments are returned as undeliverable after a second mailing, the amount of any uncashed checks shall go to the non-profit organization Legal Aid at Work.

To check on the progress of the Settlement, you may call the Settlement Administrator at **[TPA Number]** or contact Class Counsel at (619) 618-1869.

| 14. | Are there taxes consequences if I receive my payment? |
|-----|-------------------------------------------------------|

Individual Settlement Payments to Participating Class Members, including FLSA payments, will be allocated as: 20% wages; 80% penalties and interest.

Individual Settlement Payments to Participating Class Members who are members of the Waiting Time Penalties Subclass will be allocated as 100% penalties.

Individual Settlement Payments to Participating Class Members that are attributable to wages will be subject to normal tax withholding and will be reported to the taxing authorities on an IRS Form W-2. Portions attributable to penalties and interest will not be subject to tax

7

<u>Notice of Class Action Settlement</u>

withholding and an IRS Form 1099 will be issued if the payment is above the minimum threshold required for the issuance of a Form 1099.

You are ***strongly encouraged*** to consult with a tax advisor concerning the tax consequences of the payments that you receive under the Settlement.

| 15. | What am I giving up to get a payment or stay in the Class? |
|---|---|

Unless you exclude yourself from the Class, you will remain a Class Member, which means you will not be able to sue or be part of any other lawsuit against Defendant about the legal issues in *this* case. It also means that you will agree to the "Release" set forth below:

<u>**RELEASE**</u>

In exchange for the consideration recited in this Settlement, upon the Effective Date, Plaintiffs and all Class Members who do not timely submit a Request for Exclusion do hereby and forever release, acquit, and discharge Defendant and its parent companies, subsidiaries, affiliates, shareholders, members, agents, officers, directors, employees, predecessors, successors, insurers, attorneys, and assigns ("the Released Parties") from any and all claims alleged in the Second Amended Complaint ("the Released Claims") during the Class Period, which includes claims for:

(a)     Failure to provide meal periods, or premium pay;

(b)     Failure to provide rest periods, or premium pay;

(c)     Failure to pay all minimum and regular wages;

(d)     Failure to pay all overtime wages;

(e)     Failure to pay accrued vacation wages;

(f)     Failure to indemnify necessary business expenses;

(g)     Failure to timely pay all wages due during, and upon separation of, employment;

(h)     Failure to provide accurate itemized wage statements;

(i)     Failure to maintain accurate records;

(j)     **Violation** of **Cal.** Business and Professions Code **§§ 17200**, *et seq*., **arising from the claims that are alleged in the Second Amended Complaint;**

(k)     Penalties provided under Cal. Labor Code sections 226.7, 512, and 558, and the applicable IWC Wage Order for failure to provide meal and rest periods;

(l)     Penalties provided under Cal. Labor Code sections 1194 and 1197.1 and the applicable IWC Wage Order for failure to pay minimum wages;

8

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

## Notice of Class Action Settlement

(m)   Penalties provided under Cal. Labor Code sections 510, 558, and 1194, and the applicable IWC Wage Order for failure to pay overtime wages;

(n)   Liquidated damages provided under California Labor Code section 1194.2 for failure to pay minimum wages;

(o)   Penalties provided under Cal. Labor Code sections 201, 202, 203, 204, and 210 for failure to timely pay all wages owed;

(p)   Penalties under Cal. Labor Code section 226, made available under the Private Attorneys General Act;

(q)   Penalties under Cal. Labor Code section 1174 and the applicable IWC Wage Order, made available under the Private Attorneys General Act, for failure to maintain accurate records;

(r)   Penalties under Cal. Labor Code section 2698 *et seq.* predicated on alleged California Labor Code violations or penalties that were asserted based upon the facts alleged in the Action (which include Cal. Labor Code sections 201, 202, 203, 204, 210, 218.5, 218.6, 221, 223, 224, 225.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, and 2802); and

(s)   Related damages, restitution, disgorgement, interest, attorneys' fees, costs, or expenses relating to any such claims.

You will be bound by this release whether or not you are fully aware of the nature or extent of these kinds of claims or aware of whether you even have such claims. Whether or not you cash your Individual Settlement Payment check, the Settlement will be binding. Even if you do not cash your check, you will be deemed to have waived irrevocably any right in or claim to your settlement share and will be bound by the terms of the settlement and the release:

In addition, any Class Member who timely submits a FLSA Consent Form will fully and forever release and discharge the Released Parties from any claims arising out of, or related to the actual claims asserted or factual allegations in the Action including all claims made under the Fair Labor Standards Act ("FLSA") and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you exclude yourself, you **will not get payment** from the Settlement and will not be bound by the Settlement. If you ask to be excluded, you cannot object to the Settlement.

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

## Notice of Class Action Settlement

| | |
|---|---|
| **16.** | **How do I get out of the Settlement?** |

To exclude yourself from the Settlement, you must send a letter by mail to the Settlement Administrator with the following sentence, or something similar, stating: "I wish to be excluded from the Settlement of the cases entitled: *Ceron de Orozco, et al. v. Flagship Facility Services, Inc., et al.*, Case No. 3:18-CV-02397-JLS-JLB. You must also include your full name (and former names, if any), current address, telephone number, the last four digits of your Social Security Number, and you must sign the written statement. You must mail your Request for Exclusion no later than <<60 calendar days from mailing>> to the Settlement Administrator at the following address:

***Ceron de Orozco, et al. v. Flagship Facility Services, Inc., et al.***
***Settlement Administrator***
c/o <<TPA>>
<<address>>

If you request to be excluded, **you will not receive any money** from the Settlement, you cannot object to the Settlement, and Class Counsel will not represent your interests in this lawsuit.

| | |
|---|---|
| **17.** | **If I exclude myself, can I get money from this Settlement?** |

No. If you exclude yourself, you will not receive any money from this Settlement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the Settlement or some part of it.

| | |
|---|---|
| **18.** | **How do I object to the Settlement?** |

If you are a Class Member and you wish to object to the Settlement, you may either submit a written objection to the Settlement Administrator no later than <<60 calendar days from mailing>> or object at the Final Approval Hearing. You may object at the Final Approval Hearing even if you do not submit a written objection. Your objection cannot ask the Court to order a larger Settlement; the Court can only approve or deny the Settlement. If the Court rejects your objection, you will still be bound by the terms of the Settlement. If you choose to object to the Settlement, you may enter an appearance at the Final Approval Hearing *in propria persona* (meaning you choose to represent yourself), or through an attorney that you hire and pay for yourself.

If submitting an objection, include your full name (and former names, if any), address, telephone number, your signature, the last four digits of your Social Security Number, and the factual basis for the objection with any supporting legal arguments, documents, or evidence to be submitted to the Court. You can mail or fax your objection to the Settlement Administrator

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

Notice of Class Action Settlement

no later than <<60 calendar days from mailing>>. The Settlement Administrator's address is:

***Ceron de Orozco, et al. v. Flagship Facility Services, Inc., et al.***
***Settlement Administrator***
c/o <<TPA>>
<<address>>

# THE FINAL APPROVAL HEARING

The Court will hold a Final Approval Hearing to decide whether to grant final approval of the Settlement. You may attend this hearing and you may ask to speak, but you do not have to. Class Counsel will appear at the hearing to advocate for the approval of the Settlement.

| 19. | When will the court decide whether to approve the Settlement? |
|---|---|

The Court will hold a Final Approval Hearing at <<time>> a.m./p.m. on <<date>> in Courtroom 4D, before Judge Janis L. Sammartino of the U.S. District Court for the Southern District of California, located at 221 W Broadway, San Diego, CA 92101. At this hearing, the Court will make a final decision as to whether the Settlement is fair, reasonable, and adequate. If you or other Class Members object to the Settlement, the Court will consider the objections. The Judge will listen to people who have asked to speak at the hearing. At or after the hearing, the Court will decide whether to grant final approval of the Settlement.

| 20. | Do I have to come to the Final Approval Hearing? |
|---|---|

No, you do not have to attend the Final Approval Hearing, but you are welcome to come at your own expense. If you file an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

11

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

Notice of Class Action Settlement

# GETTING MORE INFORMATION

| 21. | How can I get more details about this lawsuit or the Settlement? |
| --- | --- |

This Notice only summarizes the Settlement. You may view a complete copy of the Settlement Agreement and any of the papers filed in this lawsuit during regular business hours at:

Office of the Clerk
U.S. District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA 92101-8900

You may also access the case file online through the Court's e-filing website at: https://ecf.casd.uscourts.gov/cgibin/ShowIndex.pl

***PLEASE DO NOT TELEPHONE OR CONTACT THE COURT, THE JUDGE, OR THE OFFICE OF THE CLERK FOR INFORMATION REGARDING THIS SETTLEMENT.***

QUESTIONS? CALL [TPA NUMBER] TOLL FREE

4821-1434-5133.2 063836.1075

# EXHIBIT 1B

**FLSA COLLECTIVE ACTION MEMBER CONSENT TO JOIN ("OPT IN") FORM**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
*Ceron de Orozco v. Flagship Facility Services, Inc.*
Case No.: 3:18-CV-02397-JLS-JLB

Indicate Name/Address Changes, if any:

<<Name>>                    _____
<<Address>>                 _____
<<City, State, Zip Code>>   _____
<<Home Phone Number>>       _____

**INSTRUCTIONS**

ACCORDING TO FLAGSHIP FACILITY SERVICES, INC. ("FLAGSHIP")'S RECORDS, YOU ARE A CURRENT OR FORMER NON-EXEMPT JANITORIAL EMPLOYEE OF FLAGSHIP WHO WORKED IN CALIFORNIA BETWEEN AUGUST 13, 2014 THROUGH [INSERT PA DATE]. YOU ARE A CLASS MEMBER AND YOU WILL AUTOMATICALLY RECEIVE A SETTLEMENT PAYMENT AS PROVIDED IN THE ACCOMPANYING NOTICE OF PENDENCY OF SETTLEMENT OF CLASS AND COLLECTIVE ACTION ("NOTICE").

TO RECEIVE AN **ADDITIONAL** SETTLEMENT PAYMENT FROM THE FLSA SETTLEMENT FUND FOR THIS COLLECTIVE ACTION SETTLEMENT (FLSA PAYMENT) **THIS FORM MUST BE SIGNED AND POSTMARKED NO LATER THAN <<[60 days from Mailing]>>.** PLEASE COMPLETE THIS OPT IN FORM AND MAIL IT TO THE SETTLEMENT ADMINISTRATOR IN THE ENCLOSED PREPAID ENVELOPE.

IF YOU SUBMIT THIS OPT IN FORM, YOUR ESTIMATED INDIVIDUAL SETTLEMENT PAYMENT WILL INCREASE BY APPROXIMATELY: << **FLSA PAYMENT**>>

_____

**MAIL TO:**
<<Settlement
Administrator>>
[Insert Address]

_____

**RELEASE AND CONSENT TO JOIN**

By signing and submitting this Opt In Form, in accordance with the terms of the Joint Stipulation of Class Action and PAGA Representative Action Settlement and Release between Plaintiff and Flagship ("Settlement Agreement"), described in the Class Notice, and in order to receive my FLSA Payment, I hereby expressly agree and opt in to the Action, consent to be bound by the settlement of the Fair Labor Standards Act (FLSA) claims asserted in the Action as set forth in the Settlement Agreement and Notice, and submit to the jurisdiction of the United States District Court, Southern District of California, with respect to my claim as a FLSA Collective Action Member.

I acknowledge that by submitting this Opt In Form, I hereby consent in writing to become a plaintiff in the above action pursuant to Section 216(b) of the FLSA and authorize Class Counsel (as defined in the Settlement Agreement and Notice) to act on my behalf regarding the settlement of my FLSA claims.

Under penalty of perjury, my signature below certifies that I have read the Notice in the lawsuit entitled *Ceron de Orozco v. Flagship Facility Services, Inc.*, Case No. 3:18-CV-02397-JLS-JLB, and I understand that in addition to my release of claims as a Settlement Class Member <u>as specified in Section 15 of the Class Notice</u> and set forth in the Settlement Agreement on file with the Clerk of Court, I hereby and forever <u>release and discharge Flagship and its parent companies, subsidiaries, affiliates, shareholders, members, agents, officers, directors, employees, predecessors, successors, insurers, attorneys, and assigns ("the Released Parties")</u> of any and all claims under the FLSA and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action, whether premised on statute, regulation contract, tort or other theory of liability under federal law or regulation by any Class Member against the Released Parties.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the information I provided in this Opt In Form is true and correct.

Dated:_____          Signature:_____

Print of Type Name: _____

**IN ORDER TO RECEIVE YOUR FLSA PAYMENT YOU MUST SIGN AND RETURN THIS OPT IN FORM TO THE SETTLEMENT ADMINISTRATOR ON OR BEFORE <<60 days after Mailing AS ESTABLISHED BY THE POSTMARK OF YOUR OPT IN FORM.>>**

# EXHIBIT 2

**GrahamHollis, A.P.C.**
3555 Fifth Avenue, Suite 200, San Diego, CA  92103
(619) 692-0800
www.grahamhollis.com

**Appointed as Class Counsel[1] for the following wage and hour employment law cases:**

**United States District Court - Central District**:

- *Ellis v. Pacific Bell Telephone Co.* settled for $3.1 million on behalf of approximately 84 class members, and Judge Carney awarded 33.3% in fees.

- *Rodriguez v. Old Dominion Freight Line, Inc.* settled for $3.4 million on behalf of approximately 76 class members, and Judge Fischer awarded 27.5% in fees.

- *Corral v. Lifecare Solutions* settled for $3 million on behalf of approximately 270 class members, and Judge Olguin awarded 30% in fees.

- *Madera v. Universal Alloy Corporation* settled for $4.75 million on behalf of approximately 744 class members, and Judge Selna awarded 25% in fees.

- *Green v. Lawrence Service Co.* settled for $60,000 on behalf of approximately 295 class members, and Judge Kronstadt awarded $169,500 in fees.

- *Weaver v. Hallmark Marketing Corp.* settled for $5.625 million on behalf of approximately 3,846 class members, and Judge Fairbanks awarded 33% in fees.

- *Potter v. Big Tex Trailer Manufacturing, Inc.,* is an ongoing case and has been conditionally approved by Judge Gutierrez

**United States District Court – Eastern District**:

- *Milburn v. Petsmart, Inc.* settled for $1,350,000 on behalf of approximately 2,984 class members and Judge Drozd awarded 33.3% in fees.

**United States District Court – Northern District**:

- *Moore v. Petsmart, Inc.* settled for $10 million on behalf of approximately 19,701 class members, and Judge Davila awarded 27% in fees.

- *Delatorre v. Johnson Controls, Inc.* settled for $2.8 million on behalf of approximately 1,441 class members, and Judge Grewal awarded 25% in fees.

- *Fong v. Regis Corporation* settled for $5,750,000, on behalf of approximately 5,573 class members, and Judge Chhabria awarded 33% in fees.

---

[1] List includes cases filed by Graham Hollis, A.P.C., as well as its predecessor entities.  It also includes cases where other law firms were appointed as co-class counsel.

1

- *Jimenez v. Menzies Aviation* settled for $1,250,000 on behalf of 5,175 class members and Judge Orrick awarded 33% in fees.

- *Aston v. United Parcel Services, Inc.* settled for $490,000 on behalf of approximately 2,000 class members, and Judge White awarded 33.33% in fees.

**United States District Court – Southern District:**

- *Lopez v. GAT Airline Ground Support, Inc.* settled for $600,000 on behalf of approximately 1,394 class members, and Judge Battaglia awarded 25% in fees.

- *Birch v. Office Depot, Inc.* settled for $14 million on behalf of approximately 16,722 class members, and Judge Sabraw awarded 40% in fees.

- *Singer v. Becton Dickinson and Co.* settled for $1 million on behalf of approximately 266 class members, and Judge Gonzalez awarded 33.33% in fees.

- *Cook v. Tiffany and Company* settled for $4,148,270 on behalf of approximately 1,584 class members, and Judge Lorenz awarded 24.8% in fees.

- *Ferguson v. Winston Retail Solutions* settled for $750,000 on behalf of approximately 660 class members; and Judge Battaglia awarded 33.33% in fees.

**Superior Court for the County of Alameda:**

- *Hobdy v. Landmark Event Staffing Services, Inc.* settled for $245,100 on behalf of approximately 3,671 class members, and Judge Hernandez, Jr., awarded 33.33% in fees.

**Superior Court for the County of Contra Costa:**

- *Stevenson v. Falcon Critical Care Transport* settled for $233,853 on behalf of approximately 46 class members, and Judge Goode awarded 29% in fees.

**Superior Court for the County of Fresno:**

- *Parmelee v. Driveline Retail Merchandising, Inc.* settled for $1,000,000 on behalf of approximately 1,261 class members, and Judge Kapetan awarded 33.33% in fees.

- *Kenner v. Oak Harbor Freight Lines, Inc.* settled for $1,850,000 on behalf of approximately 216 class members, and Judge Snauffer awarded 27% in fees.

- *McGough v. Love's Travel Stops & Country Stores, Inc.,* settled for $3,000,000 on behalf of approximately 1,638 class members, and Judge Schuett awarded 33.33 in fees.

- *Drake v. Midvalley Disposal, LLC* before Judge Snauffer, is an ongoing case and conditionally approved by Judge McGuire

**Superior Court for the County of Los Angeles**:

- *Lucarini v. Dresser, Inc.* settled for $1.024 million on behalf of approximately 78 class members, and Judge Mohr awarded 39.55% in fees.

- *Magana-Mead v. LKQ Corporation,* was settled for $1,150,000 on behalf of 303 class members, and Judge Nelson awarded 33% in fees.

- *Mahoney v AT&T Corp.* settled for $13,894,098.62 on behalf of approximately 719 class members, and Judge Elias awarded 33.33% in fees.

- *Calhoun v. General Petroleum Corp.* settled for $950,000 on behalf of approximately 300 class members, and Judge Dunn awarded 40% in fees.

- *Frugard v. Unified Protective Services, Inc.* is an ongoing case which has been certified as a class action by Judge Johnson.

- *Garcia v. Menzies Aviation, Inc.* settled for $1,000,000 on behalf of approximately 1,800 class members, and Judge Rosenblatt awarded 33.33% in fees.

- *Wright v. Menzies Aviation, Inc.* was certified as a class action by Judge Weintrob and was consolidated with *Jimenez v. Menzies Aviation, Inc.* for settlement purposes.

- *Williams v. One Legacy* settled for $1.2 million on behalf of approximately 145 class members, and Judge Johnson awarded 33% in fees.

- *Solaberrieta v. Baker Hughes Oilfield Operations* settled for $3.5 million on behalf of approximately 295 class members, and Judge Wiley awarded 33.33% in fees.

- *Wright v. AMF Bowling Centers, Inc.* settled for $6.35 million on behalf of approximately 4,914 class members, and Judge Duffy-Lewis awarded 28% in fees.

- *Iskandaryan v. Casual Male Retail Group, Inc.* settled for $950,000 on behalf of approximately 716 class members, and Judge Stern awarded 33.33% in fees.

- *Agredano v. Southwest Water Company,* settled for $1,220,000 on behalf of approximately 125 class members, and Judge Nelson awarded 33.33% in fees.

- *Gordon v. Accountable Healthcare Staffing, Inc.,* has been conditionally approved by Judge Buckley

**Superior Court for the County of Orange**:

- *Duarte v. Rainbow Disposal Co., Inc.* settled for $1.6 million on behalf of approximately 110 class members, and Judge Andler awarded 40% in fees.

- *Payton v. Atlantic Aviation Investors, Inc.* settled for $1 million on behalf of approximately 162 class members, and Judge Stock awarded 40% in fees.

- *Flannery v. AGR Group California* settled for $1,324,937 on behalf of approximately 5,182 class members, and Judge Andler awarded 33% in fees.

3

- *Parnell v. Hart-Hanks Shoppers, Inc.* settled for $600,000, on behalf of approximately 169 class members, and Judge Andler awarded 33.33% in fees.

- *Jenkins v. The Mentor Network, Inc.* settled for $1,625,000 on behalf of approximately 1050 class members, and Judge Perkins awarded 33% in fees.

- *Collins v. The Stephouse Recovery, Inc.,* settled for $1,200,000 on behalf of approximately 150 class members, and Judge Claster awarded 35% in fees.

- *Valenzuela v. Enver Solar, Inc.,* settled for $575,000 on behalf of approximately 1,440 class members, and Judge Sanders awarded 35% in fees.

**Superior Court for the County of Riverside**:

- *Leonard v. ABTTC, Inc.* settled for $2.5 million on behalf of approximately 336 class members, and Judge Riemer awarded 33% in fees.

- *Vest v. Scher Tire, Inc.* settled for $3,363,396 on behalf of approximately 795 class members, and Judge Waters awarded 33.33% in fees.

- *Digiacomo v. Castelli's Ristorante* settled for $225,000 on behalf of approximately 35 class members, and Judge Waters awarded 33% in fees.

**Superior Court for the County of San Bernardino**:

- *Bracy v. Speedy Cash* settled for $237,320 on behalf of approximately 222 class members, and Judge Kayashima awarded 22.69% in fees.

- *Booher v. The Poma Companies* settled for $650,000 on behalf of approximately 75 class members, and Judge Plotkin awarded 44% in fees.

- *Jeffries v. Praxair Services, Inc.* settled for $373,000 on behalf of approximately 23 class members, and Judge Garza awarded 35% in fees.

- *Scaglione v. M.O. Dion & Sons, Inc.* settled for $585,000 on behalf of approximately 123 class members, and Judge Garza awarded 30% in fees.

- *Malone v. Praxair, Inc.* settled for $900,000 on behalf of approximately 57 class members, and Judge Davis awarded 40% in fees.

- *Alvarez v. Core States, Inc.* settled for $530,000 on behalf of approximately 45 class members, and Judge Garza awarded 40% in fees.

**Superior Court for the County of San Diego**:

- *Fennessey v. Round Table Pizza, Inc.* settled for $2,125,000 on behalf of approximately 16,333 class members, and Judge Lewis awarded 28% in fees.

- *Morales v. Sony Electronics, Inc.* settled for $450,100 on behalf of approximately 4,742 class members, and Judge Styn awarded $296,275 in fees.

4

- *Frayre v. United Parcel Services Supply Chain Services, Inc.* settled for $494,000 on behalf of approximately 55 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Julio v. L&M Tire Company, Inc.* settled for $1.85 million on behalf of approximately 1,087 class members, and Judge Barton awarded 33% in fees.

- *Irmen v. Raphael's Party Rentals* settled for $1 million on behalf of approximately 845 class members, and Judge Lewis awarded 40% in fees.

- *Well v. Hooters of America, Inc.* settled for $1.35 million on behalf of approximately 2,300 class members, and Judge Wohfeil awarded 35% in fees.

- *Clancy v. Scripps Health* settled for $6.4 million on behalf of approximately 124 class members, and Judge Meyer awarded 33% in fees.

- *De La Rosa v. Quten Research Institute, LLC* settled for $450,000 on behalf of approximately 402 class members, and Judge Meyer awarded 33.33% in fees.

- *Martinez v. San Diego Auto Scrubber, Inc.* settled for $500,000 on behalf of approximately 148 class members, and Judge Hayes awarded 33.33% in fees.

- *Chavez v. Real Time Staffing Services, Inc.* settled for $1.9 million on behalf of approximately 3,120 class members, and Judge Medel awarded 35% in fees.

- *Thompson v. LawInfo.com, Inc.* settled for $150,000 on behalf of approximately 115 class members, and Judge Enright awarded 33.33% in fees.

- *Escoto-Miranda v. Evans Tire & Service Centers, Inc.* settled for $800,000 on behalf of approximately 450 class members, and Judge Strauss awarded 33% in fees.

- *Loveless v ASM Affiliates* settled for $750,000 on behalf of approximately 276 class members, and Judge Styn awarded 33.33% in fees.

- *Falcon v. Flight Suits, Inc.* settled for $450,000 on behalf of approximately 101 class members, and Judge Denton awarded 33.33% in fees.

- *Solis v. Check Agencies of California, Inc.* settled for $475,000 on behalf of approximately 559 class members, and Judge Taylor awarded 35% in fees.

- *Demers v. Hotcakes No. 3, Inc.* settled for $150,000 on behalf of approximately 300 class members, and Judge Nevitt awarded 33% in fees.

- *Madriz v. North County Ford, Inc.* settled for $188,000 on behalf of approximately 45 class members, and Judge Wohfeil awarded 33.33% in fees.

- *Fay v Cement Cutting, Inc.,* settled for $720,000 on behalf of approximately 376 class members, and Judge Bacal awarded 33.33% in fees.

- *Costa v. Altman Specialty Plants, Inc.* settled for $2,400,000 on behalf of approximately 4,414 class members, and Judge Hayes awarded 33.33% in fees.

- *Huerta v. Venture Petroleum Company, Inc.*, settled for $300,000 on behalf of approximately 513 class members, and Judge Wohlfeil awarded 33.33% in fees.

- *Johnson v. The SoCo Group, Inc.*, settled for $895,000 on behalf of approximately 218 class members, and Judge Lewis awarded 33.33% in fees.

- *Geilenfeldt v. EDF Renewable Energy, Inc.* settled for $2,500,000 on behalf of approximately 144 class members, and Judge Sturgeon awarded 33.33% in fees.

- *Garcia v. Task Ventures, LLC*, settled for $822,856.50 on behalf of approximately 2,700 class members, and Judge Wohlfeil awarded 40% in fees.

- *Barron v Green Farms, Inc.*, settled for $650,000 on behalf of approximately 154 class members, and Judge Pollak awarded 33.33% in fees.

- *Arriaga v. International Coffee & Tea*, settled for $1,250,000 on behalf of 479 class members, and Judge Bacal awarded 33.33% in fees.

**Superior Court for the County of San Francisco**:

- *Casas v. Pacific Bell Telephone Co.* settled for $6 million on behalf of approximately 464 class members, and Judge Goldsmith awarded 23% in fees.

**Superior Court for the County of Santa Clara**:

- *Ledbetter v. Entrepreneurial Ventures, Inc.* settled for $1.8 million on behalf of approximately 754 class members, and Judge Overton awarded 33.33% in fees.

- *Subia v. National Securities Industries, Inc.* settled for $275,000 on behalf of approximately 187 class members, and Judge Lucas awarded 30% in fees.

- *Letuligasenoa v. International Paper Company* for $4,500,000 on behalf of approximately 3,786, and Judge Errand awarded 33.33% in fees with a 1.47 multiplier.

- *Suarez v. First Alarm Security & Patrol, Inc.*, is an ongoing case and has been conditionally approved by Judge Walsh.

**Superior Court for the County of Solano**:

- *Turnage v. Park Management Corporation* settled for $400,000 on behalf of approximately 214 class members, and Judge Daniels awarded 33.33% in fees.

- *Saechao v. Pla-Fit Franchise d.b.a. Planet Fitness* settled for $325,000 on behalf of approximately 149 class members, and Judge Mattice awarded 25% in fees.

- *Stafford v. Dollar Tree Stores Inc.* settled for $4,600,000 on behalf of approximately 7,737 class members, and Judge Beeman awarded 33.33% in fees.

**Superior Court for the County of Tulare**

- *Lopez v. Ruiz Food Products, Inc.*, is an ongoing case and has been conditionally approved by Judge Hillman

**Superior Court for the County of Ventura**:

- *Jackson v. Vulcan Materials Co.* settled for $800,000 on behalf of approximately 103 class members, and Judge Bysshe awarded 37.5% in fees.

- *Laux v. Van Nuys Skyways, Inc.* settled for $800,000 on behalf of approximately 70 class members, and Judge Riley awarded 35% in fees.

**Serving as Plaintiffs' Counsel in the following wage and hour employment law class/representative action cases:**

**United States District Court – Central District:**

- *Valentine v. Rehabilitation Center of Santa Monica Holding Company GP*, before Judge Wu
- *Summa v. LF Sportswear, Inc.*, before Judge Wilson

**United States District Court – Eastern District:**

- *Stoddart v. Express Services, Inc.* before Judge Mueller

- *Osegueda v. Northern California Inalliance,* before Judge Shubb

- *Rough v. Costco Wholesale Corporation,* before Judge England

**United States District Court – Southern District:**

- *Ceron de Orozco v. Flagship Facility Services, Inc.* before Judge Burkhardt

- *Pool v. Ameripark, LLC,* before Judge Burns

- *Stewart v. Quest Diagnostics Clinical Laboratories, Inc.,* before Judge Crawford

**Superior Court for the County of Alameda**:

- *Roberson v. Center for the Elders' Independence*, before Judge Seligman

- *Lee v. Sutter Bay Medical Foundation*, before Judge Petrou

- *Soderlund v. Jon K. Takata Corporation dba Restoration Management Company*, before Judge Markman

**Superior Court for the County of Los Angeles**:

- *Silva v LK&M Wall Corp.,* before Judge Berle

- *Taylor v. Cross Country Support Services,* before Judge Nelson

- *Lopez v. Kazi Foods, Inc.*, before Judge Hogue

- *Jackson v. Sourcecorp BPS, Inc.,* before Judge Nelson

- *Ralda v. Smart & Final Stores, LLC*, before Judge Kuhl

- *Quinones v. Atria Management Company, LLC*, before Judge Buckley

**Superior Court for the County of Orange**:

- *Blackwood v. Solid Landings Behavioral Health, Inc.* before Judge Sherman

- *Dilorenzo v. Healthy Healing Holistic Options dba Showgrow.,* before Judge Sherman

- *Chima v. Beckman Coulter, Inc.*, before Judge Wilson

- *Lawson v. Executive Maintenance, Inc.,* before Judge Wilson

**Superior Court for the County of Riverside**:

- *Steppe v. Responsible Medical Solutions Corp*, before Judge Riemer

**Superior Court for the County of Sacramento**:

- *Muniz v. Sutter Valley Hospitals*, before Judge Perkins

- *Mendez v. SSP America SMF LLC*, before Judge Perkins

**Superior Court for the County of San Bernardino**:

- *Christensen v. Heartland Express, Inc.* before Judge Cohn

- *Sala v. Personnel Staffing Group, LLC,* before Judge Cohn

- *Salazar v. Pods Enterprises, LLC,* before Judge Cohn

**Superior Court for the County of San Diego**

- *Rivera v. WNT, Inc.,* before Judge Sturgeon

- *Broadbent v. GHC of National City I, LLC*, before Judge Pollack

- *Sanchez v. Evans Tire and Service Centers, Inc.,* before Judge Sturgeon

- *Fosse v. Heartland Express, Inc. of Iowa,* before Judge Wohlfeil

- *Bergman v. BJS&T Enterprises Inc.*, before Judge Frazier

- *Moreno v. Providence Group Inc.* before Judge Frazier

- *Maasrani v. International Hotel Associates No. 11 LLC*, before Judge Sturgeon

- *Moreno v. Home Plate a Cafe Company*, before Judge Frazier

- *Nathan v. OS Restaurant Services, LLC,* before Judge Styn

- *Ramirez v. Automobile Club of Southern California*, before Judge Trapp

- *Zamorano v. Piperin Corporation*, before Judge Medel

- *Parvizi v. Classic Residence Management LP dba VI*, before Judge Wohlfell

- *Pina v. Paradise Wings Enterprise*, before Judge Taylor

- *Camarena v. PAL General Engineering, Inc.*, before Judge Whitney

- *Headley v. Professional Maintenance Systems, Inc.*, before Judge Frazier

- *Broadnax v. Amazing Courier Express Services, LLC, et al.*, before Judge Strauss

- *Spriggs v. Ortiz Corporation*, before Judge Styn

- *Andrew v. Coronado Brewing Company, Inc.*, before Judge Trapp

**Superior Court for the County of San Francisco:**

- *Simpkins v. GPS Consumer Direct, Inc.*, before Judge Wiss

- *Aubrey v. Lugg, Inc.,* before Judge Massullo

- *Alawamleh v. Ian Motos dba Baiano Pizzeria Hayes Valley*, before Judge Massullo

**Superior Court for the County of Santa Barbara:**

- *Ramirez v Baker Hughes Oilfield Operations (Baker Hughes Wage and Hour Cases),* before Judge Anderle

**Superior Court for the County of Santa Clara:**

- *Allison v. Super Zen, Inc.*, before Judge Kuhnle

- *Jordan v. Arriaga & Associates, Inc.,* before Judge Kuhnle

- *Furlough v. Capstone Logistics, LLC,* before Judge Kuhnle

**Superior Court for the County of Solano**

- *Maria v. Gourmet Demonstration Services, Inc.*, before Judge Getty

# EXHIBIT 3

1   MICHAEL F. MCCABE, Bar No. 111151
    mmccabe@littler.com
2   KRISTIN E. HUTCHINS, Bar No. 184429
    khutchins@littler.com
3   JULIE A. STOCKTON, Bar No. 286944
    jstockton@littler.com
4   EMILY A. MERTES, Bar No. 296743
    emertes@littler.com
5   LITTLER MENDELSON, P.C.
    333 Bush Street
6   34th Floor
    San Francisco, CA 94104
7   Telephone: 415.433.1940
    Facsimile:  415.399.8490
8
    Attorneys for Defendant
9   FLAGSHIP FACILITY SERVICES, INC.

10                  UNITED STATES DISTRICT COURT

11                SOUTHERN DISTRICT OF CALIFORNIA

12

13   MARTA L CERON DE OROZCO,              Case No. 18CV2397-JLS-JLB
14   individually and on behalf of all
     similarly situated employees of       ASSIGNED FOR ALL PURPOSES TO:
15   Defendants in the State of California, HON. JANICE L. SAMMARTINO

16              Plaintiff,                  **DEFENDANT FLAGSHIP FACILITY
                                            SERVICES, INC.'S RESPONSE AND
17        v.                                OBJECTIONS TO PLAINTIFF'S
                                            SPECIAL INTERROGATORIES, SET
18   FLAGSHIP FACILITY SERVICES,            ONE**
     INC.; and DOES 1 through 50,
19   inclusive,
                                            Complaint Filed: August, 13, 2018
20              Defendants.
                                            First Amended Complaint Filed:
21                                          September 5, 2018

22                                          Second Amended Complaint Filed:
23                                          January 9, 2019

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA 94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES, SET ONE                    CASE NO. 18CV2397-JLS-JLB

1  TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

2  Defendant FLAGSHIP FACILITY SERVICES, INC. ("Defendant")

3  hereby answers, objects, and otherwise responds to Plaintiff's Special Interrogatories

4  Set One as follows:

5  **DEFENDANT'S OBJECTIONS AND RESPONSES TO**

6  **PLAINTIFF'S SPECIAL INTERROGATORIES**

7  SPECIAL INTERROGATORY NO. 1:

8  State the number of current and former non-exempt janitorial employees

9  of DEFENDANT who were employed in California at any time from August 13,

10  2014, to the date DEFENDANT responds to these interrogatories.

11  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 1:

12  Defendant objects to this Interrogatory on the grounds that the term "non-

13  exempt janitorial employees" is overbroad, and that this Interrogatory seeks

14  information that is neither relevant to the resolution of any claim in this litigation nor

15  reasonably calculated to lead to the discovery of admissible evidence, at this stage of

16  the litigation. Defendant objects to this Interrogatory to the extent it seeks a legal

17  conclusion with regard to the term, "non-exempt." Defendant further objects that to

18  the extent this Interrogatory seeks merits-based information pertaining to liability and

19  damages prior to class certification, it is overbroad, burdensome, and premature.

20  Subject to and without in any way waiving the foregoing objections, and

21  to the extent it understands this Interrogatory, Defendant responds as follows: 6,150.

22  SPECIAL INTERROGATORY NO. 2:

23  IDENTIFY all current and former non-exempt janitorial employees of

24  DEFENDANT in California from August 13, 2014, to the date DEFENDANT

25  responds to these interrogatories.

26  For purposes of this interrogatory "IDENTIFY" means state the person's

27  name, job title with DEFENDANT, location worked while employed with Defendants

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA 94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES, SET ONE

2.

CASE NO. 18CV2397-JLS-JLB

1  from and after August 13, 2014, home address, last known telephone number, last

2  known cellphone number, and email address.

3  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 2:

4        Defendant objects to this Interrogatory on the grounds that the term "non-

5  exempt janitorial employees" is overbroad, and that this Interrogatory seeks

6  information that is neither relevant to the resolution of any claim in this litigation nor

7  reasonably calculated to lead to the discovery of admissible evidence, at this stage of

8  the litigation.  Defendant objects to this Interrogatory to the extent it seeks a legal

9  conclusion with regard to the term, "non-exempt."  Defendant further objects to this

10  Interrogatory to the extent it seeks information protected by the attorney-client

11  privilege and/or attorney work product doctrine.  Defendant further objects to this

12  Interrogatory to the extent that it seeks information pertaining to individuals, the

13  disclosure of which would constitute an unwarranted invasion of the affected

14  individuals' constitutional, statutory and/or common law rights to personal privacy

15  and confidentiality.  Defendant further objects that to the extent this Interrogatory

16  seeks merits-based information pertaining to liability and damages prior to class

17  certification, it is overbroad, burdensome, and premature.

18  SPECIAL INTERROGATORY NO. 3:

19        State the total number of PAGA EMPLOYEES.

20        For purposes of this interrogatory "PAGA EMPLOYEES" means all of

21  DEFENDANT's current and former non-exempt employees who were employed at

22  any of DEFENDANT's locations in California at any time from June 9, 2017 to the

23  date DEFENDANT responds to these interrogatories.

24  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 3:

25        Defendant objects to this Interrogatory on the grounds that the phrases

26  "non-exempt janitorial employees" and "DEFENDANT's locations" are overbroad,

27  and that this Interrogatory seeks information that is neither relevant to the resolution

28  of any claim in this litigation nor reasonably calculated to lead to the discovery of

1   admissible evidence, at this stage of the litigation.  Defendant objects to this

2   Interrogatory to the extent it seeks a legal conclusion with regard to the term, "non-

3   exempt."  Defendant further objects that to the extent this Interrogatory seeks merits-

4   based information pertaining to liability and damages prior to class certification, it is

5   overbroad, burdensome, and premature.

6           Subject to and without in any way waiving the foregoing objections, and

7   to the extent it understands this Interrogatory, Defendant responds as follows:  6,140.

8   SPECIAL INTERROGATORY NO. 4:

9           IDENTIFY all PAGA EMPLOYEES.

10          For purposes of this interrogatory "IDENTIFY" means state the person's

11  name, job title with DEFENDANT, the location(s) worked while employed with

12  Defendants from and after June 9, 2017, home address, last known telephone number,

13  last known cellphone number, and email address)

14          For purposes of this interrogatory "PAGA EMPLOYEES" means all of

15  DEFENDANT's current and former non-exempt employees who were employed at

16  any of DEFENDANT's locations in California at any time from June 9, 2017 to the

17  date DEFENDANT responds to these interrogatories.

18  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 4:

19          Defendant objects to this Interrogatory on the grounds that the terms

20  "non-exempt janitorial employees" and "DEFENDANT's locations" are overbroad,

21  and that this Interrogatory seeks information that is neither relevant to the resolution

22  of any claim in this litigation nor reasonably calculated to lead to the discovery of

23  admissible evidence, at this stage of the litigation.  Defendant objects to this

24  Interrogatory to the extent it seeks a legal conclusion with regard to the term, "non-

25  exempt."  Defendant further objects to this Interrogatory to the extent that it seeks

26  information pertaining to individuals, the disclosure of which would constitute an

27  unwarranted invasion of the affected individuals' constitutional, statutory and/or

28  common law rights to personal privacy and confidentiality.  Defendant further objects

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE

4.

CASE NO. 18CV2397-JLS-JLB

1  that to the extent this Interrogatory seeks merits-based information pertaining to

2  liability and damages prior to class certification, it is overbroad, burdensome, and

3  premature.

4  SPECIAL INTERROGATORY NO. 5:

5        Explain any and all of DEFENDANT's policies related to the recording

6  of the MEAL PERIODS for current and former non-exempt janitorial employees of

7  DEFENDANT in California from August 13, 2014, to the date DEFENDANT

8  responds to these interrogatories, including the time period when each of them was in

9  effect.

10        For purposes of this interrogatory "MEAL PERIODS" shall refer to the

11  30-minute, off-duty, uninterrupted meal period before the end of the fifth hour of

12  work and before the tenth hour of work required under the California Labor Code.

13  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 5:

14        Defendant objects to this Interrogatory on the grounds that the term

15  "Explain" is vague and ambiguous.  Defendant objects to this Interrogatory on the

16  grounds that the term "non-exempt janitorial employees" is overbroad, and that this

17  Interrogatory seeks information that is neither relevant to the resolution of any claim

18  in this litigation nor reasonably calculated to lead to the discovery of admissible

19  evidence, at this stage of the litigation.  Defendant objects to this Interrogatory to the

20  extent it seeks a legal conclusion with regard to the term, "non-exempt."  Defendant

21  further objects that to the extent this Interrogatory seeks merits-based information

22  pertaining to liability and damages prior to class certification, it is overbroad,

23  burdensome, and premature.  Defendant further objects that this interrogatory requires

24  the examining, auditing, compiling, abstracting, and/or summarizing of Defendant's

25  records, and the burden of doing so is substantially the same for Plaintiffs and

26  Defendant.

27        Subject to and without waiving the foregoing objections and based upon

28  Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE

5.

CASE NO. 18CV2397-JLS-JLB

1    previously produced Main Employee Handbook (Bates No. FLGSHP 000142 -

2    000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001), the new hire

3    packet (Bates No. FLGSHP 000190 - 000291), the Timekeeping, Meal and Rest

4    Breaks: Employee Acknowledgment (English and Spanish) (Bates No. FLGSHP

5    000141), and Flagship Standards of Conduct (FLGSHP 000188 – 000189) as well as

6    Flagship's California Meal Period Waiver Agreement(s).

7    SPECIAL INTERROGATORY NO. 6:

8            Explain any and all of DEFENDANT's policies related to the taking of

9    MEAL PERIODS applicable to current and former non-exempt janitorial employees

10   of DEFENDANT in California from August 13, 2014, to the date DEFENDANT

11   responds to these interrogatories, including the time period when each of them was in

12   effect.

13           For purposes of this interrogatory "MEAL PERIODS" shall refer to the

14   30-minute, off-duty, uninterrupted meal period before the end of the fifth hour of

15   work required under the California Labor Code.

16   OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 6:

17           Defendant objects to this Interrogatory on the grounds that the term

18   "Explain" is vague and ambiguous.  Defendant further objects that the term "non-

19   exempt janitorial employees" is overbroad, and that this Interrogatory seeks

20   information that is neither relevant to the resolution of any claim in this litigation nor

21   reasonably calculated to lead to the discovery of admissible evidence, at this stage of

22   the litigation.  Defendant objects to this Interrogatory to the extent it seeks a legal

23   conclusion with regard to the term, "non-exempt."  Defendant further objects that to

24   the extent this Interrogatory seeks merits-based information pertaining to liability and

25   damages prior to class certification, it is overbroad, burdensome, and premature.

26   Defendant further objects that this interrogatory requires the examining, auditing,

27   compiling, abstracting, and/or summarizing of Defendant's records and the burden of

28   doing so is substantially the same for Plaintiffs and Defendant.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES, SET ONE

6.

CASE NO. 18CV2397-JLS-JLB

1    Subject to and without waiving the foregoing objections and based upon

2    Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's

3    previously produced Flagship's Main Employee Handbook (Bates No. FLGSHP

4    000142 - 000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001),

5    the new hire packet (Bates No. FLGSHP 000190 - 000291), the Timekeeping, Meal

6    and Rest Breaks: Employee Acknowledgment (English and Spanish) (Bates No.

7    FLGSHP 000141), and Flagship Standards of Conduct (FLGSHP 000188 - 000189),

8    as well as Flagship's California Meal Period Waiver Agreement(s).

9    SPECIAL INTERROGATORY NO. 7:

10    Explain any and all of DEFENDANT's policies related to the taking of

11    REST PERIODS applicable to current and former non-exempt janitorial employees of

12    DEFENDANT in California from August 13, 2014, to the date DEFENDANT

13    responds to these interrogatories, including the time period when each of them was in

14    effect.

15    For purposes of this interrogatory "REST PERIODS" shall refer to the

16    10-minute, off-duty, uninterrupted, rest period for every four hours, or major fraction

17    thereof required under the California Labor Code.

18    OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 7:

19    Defendant objects to this Interrogatory on the grounds that the term

20    "Explain" is vague and ambiguous.  Defendant further objects that the term "non-

21    exempt janitorial employees" is overbroad, and that this Interrogatory seeks

22    information that is neither relevant to the resolution of any claim in this litigation nor

23    reasonably calculated to lead to the discovery of admissible evidence, at this stage of

24    the litigation.  Defendant objects to this Interrogatory to the extent it seeks a legal

25    conclusion with regard to the term, "non-exempt."  Defendant further objects that to

26    the extent this Interrogatory seeks merits-based information pertaining to liability and

27    damages prior to class certification, it is overbroad, burdensome, and premature.

28    Defendant further objects that this interrogatory requires the examining, auditing,

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA   94104
415.433.1940

**DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE**

7.

CASE NO. 18CV2397-JLS-JLB

1  compiling, abstracting, and/or summarizing of Defendant's records and the burden of

2  doing so is substantially the same for Plaintiffs and Defendant.

3          Subject to and without waiving the foregoing objections and based upon

4  Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's

5  previously produced Flagship's Main Employee Handbook (Bates No. FLGSHP

6  000142 - 000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001),

7  the new hire packet (Bates No. FLGSHP 000190 - 000291), the Timekeeping, Meal

8  and Rest Breaks: Employee Acknowledgment (English and Spanish) (Bates No.

9  FLGSHP 000141), and Flagship Standards of Conduct (FLGSHP 000188 - 000189).

10  SPECIAL INTERROGATORY NO. 8:

11          Explain any and all of DEFENDANT's policies for paying overtime

12  wages due to current and former non-exempt janitorial employees of DEFENDANT

13  in California from August 13, 2014, to the date DEFENDANT responds to these

14  interrogatories, including the time period when each of them was in effect.

15  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 8:

16          Defendant objects to this Interrogatory on the grounds that the term

17  "Explain" is vague and ambiguous.  Defendant further objects that this Interrogatory

18  assumes facts not in evidence, in assuming that employees worked overtime hours.

19  Defendant further objects that the term "non-exempt janitorial employees" is

20  overbroad, and that this Interrogatory seeks information that is neither relevant to the

21  resolution of any claim in this litigation nor reasonably calculated to lead to the

22  discovery of admissible evidence, at this stage of the litigation.  Defendant objects to

23  this Interrogatory to the extent it seeks a legal conclusion with regard to the term,

24  "non-exempt."  Defendant further objects that to the extent this Interrogatory seeks

25  merits-based information pertaining to liability and damages prior to class

26  certification, it is overbroad, burdensome, and premature.  Defendant further objects

27  that this interrogatory requires the examining, auditing, compiling, abstracting, and/or

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE

8.

CASE NO. 18CV2397-JLS-JLB

1  summarizing of Defendant's records and the burden of doing so is substantially the

2  same for Plaintiffs and Defendant.

3           Subject to and without waiving the foregoing objections and based upon

4  Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's

5  previously produced Main Employee Handbook (Bates No. FLGSHP 000142 -

6  000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001), the new hire

7  packet (Bates No. FLGSHP 000190 - 000291), and Flagship Standards of Conduct

8  (FLGSHP 000188 – 000189).

9  SPECIAL INTERROGATORY NO. 9:

10           Explain any and all of DEFENDANT's policies related to renewal of

11  airport identification and/or security badges applicable to current and former non-

12  exempt janitorial employees of DEFENDANT in California from August 13, 2014, to

13  the date DEFENDANT responds to these interrogatories, including the time period

14  when each of them was in effect.

15  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 9:

16           Defendant objects to this Interrogatory on the grounds that the terms

17  "Explain" and "renewal of airport identification and/or security badges" are vague and

18  ambiguous.  Defendant further objects that the term "non-exempt janitorial

19  employees" is overbroad, and that this Interrogatory seeks information that is neither

20  relevant to the resolution of any claim in this litigation nor reasonably calculated to

21  lead to the discovery of admissible evidence, at this stage of the litigation.  Defendant

22  objects to this Interrogatory to the extent it seeks a legal conclusion with regard to the

23  term, "non-exempt."  Defendant further objects that to the extent this Interrogatory

24  seeks merits-based information pertaining to liability and damages prior to class

25  certification, it is overbroad, burdensome, and premature.  Subject to and without in

26  any way waiving the foregoing objections, and to the extent it understands this

27  Interrogatory, Defendant responds as follows:  All Flagship janitors who work in

28  secure areas of the San Diego Airport must have an airport identification badge, which

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA 94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE

9.

CASE NO. 18CV2397-JLS-JLB

1    they can receive upon passing a job history and background check, as well as

2    presenting appropriate identification.  Defendant pays all costs related to its janitors

3    obtaining security badges.  Badges must be renewed annually.  Badges for janitorial

4    employees working at San Diego Airport can be renewed at the San Diego Airport

5    office that processes badges.

6    SPECIAL INTERROGATORY NO. 10:

7            Explain DEFENDANT's policies related to monitoring personal and/or

8    company cell phones at all times during a scheduled shift applicable to current and

9    former non-exempt janitorial employees of DEFENDANT in California from August

10   13, 2014, to the date DEFENDANT responds to these interrogatories.

11   OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 10:

12           Defendant objects to this Interrogatory on the grounds that the terms

13   "Explain" and "monitoring personal and/or company cell phones at all times" are

14   vague and ambiguous.  Defendant further objects that the term "non-exempt janitorial

15   employees" is overbroad, and that this Interrogatory seeks information that is neither

16   relevant to the resolution of any claim in this litigation nor reasonably calculated to

17   lead to the discovery of admissible evidence, at this stage of the litigation.  Defendant

18   objects to this Interrogatory to the extent it seeks a legal conclusion with regard to the

19   term, "non-exempt."  Defendant further objects that to the extent this Interrogatory

20   seeks merits-based information pertaining to liability and damages prior to class

21   certification, it is overbroad, burdensome, and premature.

22           Subject to and without waiving the foregoing objections and based upon

23   Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's

24   previously produced Main Employee Handbook (Bates No. FLGSHP 000142 -

25   000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001), the new hire

26   packet (Bates No. FLGSHP 000190 - 000291), that contain policies relating to the

27   reimbursement of business expenses, as well as Flagship's Mobile Phone Policy

28   (English and Spanish).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE

10.

CASE NO. 18CV2397-JLS-JLB

SPECIAL INTERROGATORY NO. 11:

Explain any and all of DEFENDANT's policies related to providing company cell phones to current and former non-exempt janitorial employees of DEFENDANT in California from August 13, 2014, to the date DEFENDANT responds to these interrogatories, including the time period when each of them was in effect.

OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 11:

Defendant objects to this Interrogatory on the grounds that the terms "Explain" and "providing company cell phones" are vague and ambiguous. Defendant further objects that the term "non-exempt janitorial employees" is overbroad, and that this Interrogatory seeks information that is neither relevant to the resolution of any claim in this litigation nor reasonably calculated to lead to the discovery of admissible evidence, at this stage of the litigation. Defendant objects to this Interrogatory to the extent it seeks a legal conclusion with regard to the term, "non-exempt." Defendant further objects that to the extent this Interrogatory seeks merits-based information pertaining to liability and damages prior to class certification, it is overbroad, burdensome, and premature. Subject to and without waiving the foregoing objections and based upon Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's previously produced Main Employee Handbook (Bates No. FLGSHP 000142 - 000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001), the new hire packet (Bates No. FLGSHP 000190 - 000291), that contain policies relating to the reimbursement of business expenses, as well as Flagship's Mobile Phone Policy (English and Spanish).

SPECIAL INTERROGATORY NO. 12:

Explain DEFENDANT's policies relating to vacation benefits and for paying vacation wages applicable to current and former non-exempt janitorial employees of DEFENDANT in California from August 13, 2014, to the date DEFENDANT responds to these interrogatories.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES, SET ONE

11.

CASE NO. 18CV2397-JLS-JLB

OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 12:

Defendant objects to this Interrogatory on the grounds that the terms "Explain" and "vacation benefits and for paying vacation wages" are vague and ambiguous. Defendant further objects that this Interrogatory is compound as it relates to policies relating to vacation benefits and the payment of vacation wages. Defendant further objects that the term "non-exempt janitorial employees" is overbroad, and that this Interrogatory seeks information that is neither relevant to the resolution of any claim in this litigation nor reasonably calculated to lead to the discovery of admissible evidence, at this stage of the litigation. Defendant objects to this Interrogatory to the extent it seeks a legal conclusion with regard to the term, "non-exempt." Defendant further objects that to the extent this Interrogatory seeks merits-based information pertaining to liability and damages prior to class certification, it is overbroad, burdensome, and premature.

Subject to and without waiving the foregoing objections and based upon Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's previously produced Main Employee Handbook (Bates No. FLGSHP 000142 - 000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001).

SPECIAL INTERROGATORY NO. 13:

Explain DEFENDANT's policies related to the reimbursement of business expenses, including the use of personal cell phones for business purposes, applicable to current and former non-exempt janitorial employees of DEFENDANT in California from August 13, 2014, to the date DEFENDANT responds to these interrogatories.

OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 13:

Defendant objects to this Interrogatory on the grounds that the terms "Explain" and "reimbursement of business expenses" are vague and ambiguous. Defendant further objects that the term "non-exempt janitorial employees" is overbroad, and that this Interrogatory seeks information that is neither relevant to the

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES. SET ONE

12.

CASE NO. 18CV2397-JLS-JLB

1  resolution of any claim in this litigation nor reasonably calculated to lead to the

2  discovery of admissible evidence, at this stage of the litigation.  Defendant objects to

3  this Interrogatory to the extent it seeks a legal conclusion with regard to the term,

4  "non-exempt."  Defendant further objects that to the extent this Interrogatory seeks

5  merits-based information pertaining to liability and damages prior to class

6  certification, it is overbroad, burdensome, and premature.

7  Subject to and without waiving the foregoing objections and based upon

8  Defendant's understanding of the Request, Defendant refers Plaintiff to Defendant's

9  previously produced Main Employee Handbook (Bates No. FLGSHP 000142 -

10  000186) as well as the New Hire Checklist (Bates No. FLGSHP 000001), the new hire

11  packet (Bates No. FLGSHP 000190 - 000291), that contain policies relating to the

12  reimbursement of business expenses, as well as Flagship's Mobile Phone Policy

13  (English and Spanish).

14  SPECIAL INTERROGATORY NO. 14:

15  IDENTIFY any and all supervisors of Plaintiff from August 13, 2014, to

16  the date DEFENDANT responds to these interrogatories.

17  OBJECTIONS AND RESPONSE TO SPECIAL INTERROGATORY NO. 14:

18  Defendant objects to this Interrogatory on the grounds that the term

19  "supervisors" is vague and ambiguous.  Defendant further objects that to the extent

20  this Interrogatory seeks merits-based information pertaining to liability and damages

21  prior to class certification, it is overbroad, burdensome, and premature.

22  Subject to and without in any way waiving the foregoing objections, and

23  to the extent it understands this Interrogatory, Defendant responds as follows: Arturo

24  Ruiz (who may be contacted through Defendant's counsel); Carmen Cardenas (contact

25  information unavailable); Olga Orduna (contact information unavailable); Christopher

26  Ochoa (contact information unavailable); Diana Campuzano (619-395-4013); Carlos

27  Espinoza (619-773-3578); Maria Del Carmen Gonzalez (619-382-5900); Victor Ibarra

28  (contact information unavailable).

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES, SET ONE

13.

CASE NO. 18CV2397-JLS-JLB

1

2     Dated:  February 5, 2019

3

4                                              By

5                                                   MICHAEL F. MCCABE
                                                   KRISTIN E. HUTCHINS
6                                                  JULIE A. STOCKTON
                                                   EMILY A. MERTES
7                                                  Attorneys for Defendant
                                                   FLAGSHIP FACILITY SERVICES,
8                                                  INC.

9     FIRMWIDE:161734143.1 063836.1075

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Diego, CA  94104
415.433.1940

**DEFENDANT'S RESPONSE AND
OBJECTIONS TO PLAINTIFF'S SPECIAL
INTERROGATORIES, SET ONE**                    14.                    CASE NO. 18CV2397-JLS-JLB

<u>VERIFICATION</u>

I, Jaelyn Young, declare:

I am Vice President, Human Resources Field Operations at Flagship Facility Services, Inc., a corporation organized and existing under the laws of California, which is the **DEFENDANT** in the above-entitled action, and I have been authorized to make this verification on its behalf.

I have read the foregoing **DEFENDANT FLAGSHIP FACILITY SERVICES, INC.'S RESPONSE AND OBJECTIONS TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE** on file herein and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed at San Francisco, California on this 5th day of February, 2019.

_____
Jaelyn Young

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

FIRMWIDE:162241827.1 063836.1075
DRAFT 2/4/19 2:06 PM

VERIFICATION

# PROOF OF SERVICE BY U.S. MAIL

I am employed in San Francisco County, California.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 333 Bush Street, 34th Floor, San Francisco, California  94104.  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  On February 5, 2019, I placed with this firm at the above address for deposit with the United States Postal Service a true and correct copy of the within document(s):

**DEFENDANT FLAGSHIP FACILITY SERVICES, INC.'S RESPONSE AND OBJECTIONS TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE**

in a sealed envelope, postage fully paid, addressed as follows:

Graham S.P. Hollis
Vilmarie Cordero
Laura M. Supanich
GrahamHollis APC
3555 Fifth Avenue, Suite 200
San Diego, CA  92103

Following ordinary business practices, the envelope was sealed and placed for collection and mailing on this date, and would, in the ordinary course of business, be deposited with the United States Postal Service on this date.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 5, 2019, at San Francisco, California.

_____
Cathy Grandison

FIRMWIDE:162258467.1 063836.1075

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

PROOF OF SERVICE                                        Case No. 3:18-cv-02397-JLS-JLB

# EXHIBIT 4



# WORK HOURS, TIMEKEEPING, & PAYROLL

## WORK SCHEDULES

The normal work schedule for all employees is based on business needs. However, Supervisors will advise each employee of his or her particular schedule. Staffing needs and operational demands may necessitate variations in starting and ending times, as well as variations in the total hours that may be scheduled each day and week.

## UNPAID MEAL PERIODS AND REST BREAKS

If an employee works in a state with meal and/or rest break requirements, the Company will comply with applicable law in providing or making break time available to employees.  For all other employees, the Company will allow reasonable break times where business needs permit.  Non-exempt employees must sign out on their time sheet for all break periods lasting 20 minutes or more and sign back in following their return from such a period.

Employees are relieved of all duties during their meal and break periods.  Employees may leave Company premises during break times that last 20 minutes or more if they wish to do so.

## OVERTIME

When operating requirements or other needs cannot be met during regular working hours, employees may be scheduled to work overtime hours. Overtime assignments will be distributed as equitably as practical to all employees qualified to perform the required work.

Overtime compensation is paid to all non-exempt employees in accordance with federal and state wage and hour requirements.

Overtime pay is based on actual hours worked. For the purpose of calculating non-exempt overtime pay, Flagship defines the workday as a twenty-four hour period beginning at 12:00 a.m. and ending at 11:59 p.m. The workweek begins on Sunday 12:00 a.m. and ends at 11:59 p.m. Saturday.

Failure or refusal to work overtime at the request of management may result in discipline up to and including termination. Working overtime without the advance approval of management may also result in discipline up to and including termination.  However, regardless of whether overtime is approved or unapproved, the Company will pay for all hours worked in accordance with applicable law.

For employees whose employment is covered by a collective bargaining agreement, any corrective or disciplinary action issued will be in compliance with the terms of the applicable CBA.

Exempt employees may be required to work additional hours outside their regular schedule but are not compensated for additional time.

## LACTATION ACCOMMODATION

In recognition of the well documented health advantages of breastfeeding for children and mothers, the Company provides a supportive environment to enable nursing mothers to express breast milk during the work day.

*2016_HRForm_Employee Handbook*
*Eff: 2016.07.01*

FLGSHP 000489



The Company will provide a reasonable amount of break time to accommodate an employee desiring to express breast milk for the employee's child during the first year or as otherwise required by applicable law.  The lactation break time should be taken during scheduled breaks and meal periods already provided to the employee.  Employees should work with their supervisor or Human Resources regarding scheduling and reporting the extra break time that falls outside of the rest and meal periods.  The Company will otherwise treat lactation as a pregnancy-related medical condition and address lactation-related needs in the same manner that it addresses other medical conditions, including requested time off for medical appointments, requested changes in schedules and other requested accommodations.

The Company will provide employees with the use of a room or a private area, other than a bathroom.

Employees should contact Human Resources or another appropriate manager during the employee's pregnancy or before she returns to work to identify her need for a lactation area or to make any other arrangements necessary under this policy.

 Employees should discuss with the Human Resources Department the location for storage of expressed milk. Employees may also provide their own portable small storage unit or cooler for keeping expressed breast milk cold.

Please be sure to contact the Human Resources Department during your pregnancy or before you return to work to identify your need for a lactation area.  The Company will comply with applicable law for employees who work in a state with greater or different lactation benefits.

## ATTENDANCE AND PUNCTUALITY

Flagship expects employees to be reliable and to be punctual in reporting for scheduled work. Absenteeism and tardiness place a burden on other employees and on Flagship.  When employees cannot avoid being late to work or are unable to work as scheduled, they should notify their Supervisor as soon as possible in advance of the anticipated tardiness or absence.

Poor attendance and excessive tardiness are disruptive. Absences or tardiness that is unexcused and not otherwise protected under applicable local, state or federal law may lead to disciplinary action, up to and including termination of employment.

For employees whose employment is covered by a collective bargaining agreement, any corrective or disciplinary action issued will be in compliance with the terms of the applicable CBA.

## TIMEKEEPING

Accurately recording time worked is the responsibility of every non-exempt employee. Federal and state laws require Flagship to keep an accurate record of time worked in order to calculate employee pay and benefits. Time worked is all the time actually spent on the job performing assigned duties.

Non-exempt employees should accurately record, utilizing the time-keeping device authorized for their particular area, the time they begin and end their work, and if required by law, the beginning and ending of any meal period. They should also record the beginning and ending time of any split shift or departure from work for other than company business.

FLGSHP 000490



Altering, falsifying, tampering with time records, or recording time on another employee's time record may result in disciplinary action, up to and including termination of employment.

Although hourly Flagship employees are expected to utilize an electronic timekeeping device to record their hours worked, there may be occasions when they must use a paper time sheet due to technological difficulties. If recording time worked on a paper time sheet, employees may not use pencil or otherwise erase or alter information on a time sheet. If a mistake is made, the employee should notify his or her Supervisor, who will initial any appropriate changes along with the employee. The need for alteration approval or the existence of a mistake on a time sheet should be brought to the attention of the affected employee's Supervisor within three (3) business days of the error. Generally, time sheets must be signed by the employee and turned into the employee's Supervisor by noon on the next day following the period ending date.

Additionally, nonexempt employees are prohibited from working "off the clock" (i.e., without reporting the time worked). When you receive your paycheck, please verify immediately that your working time was recorded accurately and that you were paid correctly for all hours worked.

When you work, you must report all the time you work. Nonexempt employees should not work any time that is not authorized by their supervisors. Do not start work early, finish work late, work during a meal break or rest break, or perform any other extra or overtime work unless you are directed to do so. If you have any questions about when or how many hours you are expected to work, contact your supervisor or any member of management.   However, regardless of whether time worked is authorized or unauthorized, it should all be recorded, and the Company will pay for all hours worked in accordance with applicable law.

It is a violation of our policy for anyone to instruct or encourage another employee to work "off the clock," to incorrectly report hours worked, or to alter another employee's time records. If anyone directs or encourages you to incorrectly report your hours worked, or to alter another employee's time records, you should report the incident immediately to your supervisor.

### Reporting Errors and Obtaining More Information

If you have questions about deductions from your pay, if you believe you have been subject to any improper deductions, or if your pay does not accurately reflect your hours worked, please contact your supervisor or any member of management.

Every report will be fully investigated. We will make every effort to ensure that you receive the pay to which you are entitled. We will not allow any form of retaliation against individuals who make good faith reports of alleged violations of this policy, or who cooperate in an investigation by the Company, even if the reports do not reveal any errors or wrongdoing.

## EXEMPT EMPLOYEES

In general, an exempt employee will receive his or her salary for any week in which the employee performs any work. However, an exempt employee's salary may be reduced in certain situations.  For example, an exempt employee's salary may be reduced for complete days of absence due to unpaid vacations, holiday or personal business, before sick leave benefits accrue or after they are exhausted, and incomplete initial and final weeks of work.  An exempt employee's salary will not be reduced due to partial weeks of work due to service as a juror, witness or in the military, or for lack of work.

FLGSHP 000491



It is Company policy to comply with the salary basis requirements of the Fair Labor Standards Act (FLSA) and applicable state law. Therefore, the Company prohibits any Company manager from making improper deductions from the salaries of exempt employees, except as permitted by law. The Company wants employees to be aware of this policy and understand that the Company does not allow deductions that violate the FLSA or any applicable state law.

### What To Do When An Improper Deduction Occurs

If an employee believes that an improper deduction has been made to his or her salary, the employee should immediately report this information to Human Resources, a supervisor, or any other member of management. Reports of improper deductions will be promptly investigated. If it is determined that an improper deduction has occurred, the employee will be promptly reimbursed for any improper deduction made.

### Reporting Errors And Obtaining More Information

If any employee, exempt or nonexempt, has questions about deductions from his or her pay, believes he or she has been subjected to improper deductions, or believes that the amount paid does not accurately reflect the employee's total hours worked or salary, the employee may provide a verbal or written report to Human Resources, a supervisor or any other member of management.

Every report will be fully investigated. The Company will provide the employee with any compensation to which the employee is entitled in a timely fashion. The Company complies with all applicable laws, including the Fair Labor Standards Act. The Company will not allow any form of retaliation against individuals who make good faith reports of alleged violations of this policy, or who cooperate in an investigation by the Company, even if the reports do not reveal any errors or wrongdoing.

## PAYDAYS

Employees are generally paid semi-monthly, on the 10th and 25th of each month, except as required by applicable law or the terms of the applicable Collective Bargaining Agreement. Each paycheck will include earnings for all work performed through the end of the previous payroll period, which ends on the 15th and the last day of each month.  Amounts payable to employees are subject to deductions required by law, including tax-related deductions or withholdings and court-ordered garnishments.

In the event that a regularly scheduled payday falls on a day off such as a holiday, employees will receive pay on the last day of work before the regularly scheduled payday.

Employees may have pay directly deposited into their bank accounts if they provide the necessary documentation and authorization to allow for such deposits. There may be some delay between submission of authorization and commencement of direct deposits. It is the employee's responsibility to notify the company of any changes the employee wishes to make to the direct deposit program (i.e. change of account information or terminating from the program). Employees will receive a voided paycheck stub with an itemized statement of wages when Flagship makes direct deposits. Employees should check with their bank to confirm the deposit was correctly made, especially if the employee recently applied for direct deposit or made any changes. Problems in direct deposit should be reported immediately to your designated HR Representative.

FLGSHP 000492



## ADMINISTRATIVE PAY CORRECTIONS

Flagship takes all reasonable steps to ensure that employees receive the correct amount of pay in each paycheck and that employees are paid promptly on the scheduled payday.

In the unlikely event that there is an error in the amount of pay, employees should promptly bring the discrepancy to the attention of their Supervisor so that corrections can be made as quickly as possible. All errors will be corrected as soon as possible in compliance with applicable law.

## BUSINESS EXPENSES

It is the Company's policy to reimburse employees for all reasonable and necessary business expenses incurred on behalf of the Company. If you are expected to incur expenses on behalf of the company, you will be provided with the Company's comprehensive "Business Expense Policy." Please refer to this document for further information regarding business expenses and reimbursement. If you have not been provided with the Business Expense Policy, it is because you are not expected to incur business expenses due to the nature of your position. If you have not received the Business Expense Policy and have incurred a business expense, please contact your supervisor for assistance with your request for reimbursement.

Please refer to the "Flagship Mobile Phone Policy" for further information about company phones and reimbursement for use of your mobile phone for business purposes, if applicable.

FLGSHP 000493

## FLAGSHIP MOBILE PHONE POLICY

### IF FLAGSHIP PROVIDES YOU WITH A COMPANY-OWNED PHONE

Some employees who use a mobile phone frequently for business purposes will be provided a Company phone.  The Company determines in its sole discretion which employees are provided Company phones.

If you are provided with a Company phone, you are expected to use it for all of your work-related calls, texts and data usage. You should not use your personal phone for Company business.  Because you are provided with a Company owned phone, Flagship will generally not reimburse you for business use of a personal phone.  If you face unusual circumstances and believe you needed to use your own phone for Company business, you should contact the Human Resources Department to obtain the necessary documents and information to submit an expense reimbursement request.

### EMPLOYEES WHO USE THEIR OWN PHONES FOR COMPANY BUSINESS MAY RECEIVE A FLAT RATE STIPEND

Some employees who are not provided with a Company phone may also need to use their personal mobile phone for business purposes.  These employees will be reimbursed a flat rate per month for the use (or possible use) of their personal phones at a rate according to their estimated level of use for business purposes, if any.

The Company believes these rates of reimbursement are sufficient to reimburse employees for use of their personal mobile phones for business purposes.  If you believe that this rate does not fully reimburse you for the business use of your personal mobile phone, please contact the Human Resources Department.  You will be asked to provide documentation to support a greater reimbursement amount.  In the event that your business use of your personal mobile phone exceeds your rate of reimbursement, the Company will reimburse you for the additional cost.

### EMPLOYEES WHO ARE NOT REQUIRED TO USE THEIR OWN PHONES FOR BUSINESS PURPOSES

If you have not been provided with a company cell phone or a cell phone reimbursement stipend, then it has been determined that your job classification with Flagship does not require you to use a cell phone for work-related purposes.  Employees who do not have company-issued cell phones or receive a stipend should not use their personal phones for clocking in, clocking out, or for other business purposes.  If you do not receive a reimbursement stipend but are required to use your personal phone for business purposes, please contact the Human Resources Department.  You will be asked to provide documentation to receive reimbursement.

### Your monthly reimbursement stipend is (     $1.87   ).

Your signature below indicates that you understand and agree to abide by the aforementioned policy. Failure to abide by this policy may lead to disciplinary action, up to and including, termination of employment.

| Printed Name | Employee ID Number |
|---|---|

| Signature | Date |
|---|---|

| | Supervisor |
|---|---|

Rev. Feb 2016



FLGSHP 000558

# EXHIBIT 5

| | |
|---|---|
| **From:** | FormAssembly on behalf of DIR PAGA Unit |
| **To:** | Amy Bevan |
| **Subject:** | Thank you for your Proposed Settlement Submission |
| **Date:** | Friday, November 22, 2019 10:51:48 AM |

11/22/2019 10:51:41 AM

Thank you for your submission to the Labor and Workforce Development Agency.

Item submitted: Proposed Settlement
If you have questions or concerns regarding this submission or your case, please send an email to pagainfo@dir.ca.gov.

DIR PAGA Unit on behalf of
Labor and Workforce Development Agency

Website: http://labor.ca.gov/Private_Attorneys_General_Act.htm

# EXHIBIT 6



**Settlement Administration Estimate**
**Ceron v Flagship**
**November 20, 2019**

Prepared by:
**Eric Bishop**
**SVP, Client Services**
**612-359-2988**
ebishop@rustconsulting.com

## EXPERIENCE
With experience on approximately 3,000 labor and employment cases, we are the nation's largest labor and employment settlement administrator. We have managed employment settlements with class sizes ranging from dozens to multi-million class members. In fact, we've been trusted to administer many of the nation's largest settlements, including the nation's top wage-and-hour cases in recent years.

## DATA SECURITY
Our internal data security practices meet or exceed today's exacting industry standards. Our enterprise-class data security measures are founded on standard business processes including a vigorous employee screening program, ongoing employee security training and a hardened production data center hosted at a Tier 1 network carrier, all designed for ensuring data integrity and security.

## DEDICATED SPECIALISTS
Our labor and employment case team is strictly dedicated to managing settlement administration for cases involving matters such as wage-and-hour, FLSA, discrimination and ERISA. They're specialists, not generalists, with an industry reputation for responsiveness and expertise in relevant areas such as the applicable banking and tax regulations. We are confident that Rust is the best choice for the administration of your settlement.

### Project Summary

| | | | |
|---|---|---|---|
| Estimated Class Size | 6,400 | | |
| | | | |
| Project Cost | | | |
| Mailed Notice | $ | 12,011 | |
| Telephone Support | $ | 2,407 | |
| Processing and Administration | $ | 165 | |
| Website | $ | - | |
| Fund Distribution & Tax Reporting | $ | 9,620 | |
| Project Management | $ | 8,800 | |
| Other Out-of-pocket Expenses | $ | 700 | |
| Total Project Cost | $ | 33,703 | |
| Discount | $ | (2,000) | |
| Total Project Cost w/ Discount | $ | 31,703 | |

**Key Assumptions**
**No Trace Prior to Mailing**
**Spanish Translation Included**
**No Claims Process**
**Telephone Support Included**
**Static Website Not Included**
**Uncashed Pmts Escheat**

**Thank you for considering Rust Consulting, Inc. as your administrator -- we appreciate the opportunity to submit this estimate.**



**Settlement Administration Estimate**
**Ceron v Flagship**
**November 20, 2019**

Prepared by:
**Eric Bishop**
**SVP, Client Services**
**612-359-2988**
**ebishop@rustconsulting.com**

### Key Assumptions Used to Prepare this Estimate

| Class Size | 6,400 | |
|---|---|---|
| | | |
| Initial Mailed Notice: | | |
| Mailed Notice | 6,400 | 100.0% |
| Forwarded Notices | 160 | 2.5% |
| Undeliverable Notices | 960 | 15.0% |
| Re-Mailed Notices after Trace | 768 | 80.0% |
| | | |
| Telephone Support: | | |
| Number of Telephone Contacts | 640 | 10.0% |
| Connect Minutes per Call - CSRs | 4.0 | |
| | | |
| Claimant Communications: | | |
| Exclusions Received | 64 | 1.0% |
| Payments | 6,336 | 100.0% |

| Standard Hourly Rates* | |
|---|---|
| SVP | $175-$275 |
| Program Manager | $160-$180 |
| Project Manager | $100-$140 |
| Technical Consultant | $110-$180 |
| Call Center Manager | $125 |
| CSR | $ 43-$ 50 |
| Processor | $ 43-$ 50 |
| Other | $ 43-$125 |

*Subject to change*

Additional Administration Assumptions Used to Prepare this Estimate:

Database Development: Receive and Process Database assumes that the data provided is complete with respect to the data components needed to mail and calculate settlement payments. Data that includes multiple records for individuals or work history that needs to be accumulated and totaled by individual generally requires additional efforts to bring to a point where it is final settlement data. These additional efforts can take a significant amount of time and should be considered when setting key settlement dates, especially the mailed notice deadline. Data must be provided in a complete, consistent, standardized electronic format. Rust's standard format is ASCII fixed width complete with field layout. Other formats may be accepted at Rust's discretion. Resources used to enhance or further develop non-standardized data will be billed on a time and materials basis according to Rust's Current Standard Hourly Rates.

CASS/NCOA/LACS: CASS - Coding Accuracy Support System; NCOA - National Change of Address; LACS - Locatable Address Conversion System.

Notice Package: Print and Mail per unit price is estimated. Actual prices will be provided after form is finalized prior to mailing. Notice package includes notice and exclusion form.

Telephone Support included.

Processing & Administration: Receipt and Process Forms includes open, date stamp, label and data capture a 1-page form with up to five fields.

Project Management: Project Management fees are estimated and will be billed on actual time expended based on the rates found in the Current Standard Hourly Rates section above. The rates included in the estimate are a blended estimate of the rates listed above.

Out of Pocket Expenses: Includes post office box rental, overnight shipments, postage, labels, travel, long distance and other miscellaneous charges and expenses.

**Pricing good for 90 days.**



**Settlement Administration Estimate**
**Ceron v Flagship**
**November 20, 2019**

Prepared by:
**Eric Bishop**
**SVP, Client Services**
**612-359-2988**
**ebishop@rustconsulting.com**

| Administrative Task | Estimated Quantity | | Per Unit | Task Amount | | Total |
|---|---|---|---|---|---|---|
| **Database Development** | | | | | | |
| Receive and Process Database | 1 | Hours @ | $ 185 | $ | 185 | |
| Address Trace | 6,400 | Traces @ | $ 0.40 | $ | 2,560 | |
| Additional Efforts to Finalize Settlement Data | | | | *As Incurred* | | $ 2,745 |
| **Initial Mailed Notice** | | | | | | |
| CASS / NCOA / LACS Processing | | | | $ | 300 | |
| Translation | | | | $ | 750 | |
| Print and Mail Notice Package - English Only | 6,400 | Notices @ | $ 0.50 | $ | 3,200 | |
| Postage - 1 Ounce First Class | 6,400 | Notices @ | $ 0.43 | $ | 2,752 | $ 7,002 |
| **Follow-up to Initial Notice** | | | | | | |
| Receive Undeliverable Notices and Update Database | 960 | Notices @ | $ 0.40 | $ | 384 | |
| Address Trace | 960 | Traces @ | $ 0.75 | $ | 720 | |
| Remail Notice Package | 928 | Notices @ | $ 0.70 | $ | 650 | |
| Remail Postage - 1 Ounce First Class | 928 | Notices @ | $ 0.55 | $ | 510 | $ 2,264 |
| **Telephone Support** | | | | | | |
| Telephone Support | 7 | Months @ | $ 300 | $ | 2,100 | |
| 800# Charges | 2,560 | Minutes @ | $ 0.12 | $ | 307 | $ 2,407 |
| - a minimum of $300 per month will be charged for telephone support | | | | | | |
| **Processing and Administration** | | | | | | |
| Receive, Process, and Validate Forms | 3 | Hours @ | $ 55.00 | $ | 165 | $ 165 |
| *Additional Administrative Services Requested by Client* | | | | | | *As Incurred* |
| **Fund Distribution** | | | | | | |
| Print and Mail Payments | 6,336 | Payments @ | $ 0.45 | $ | 2,851 | |
| Postage - 1 Ounce First Class | 6,336 | Payments @ | $ 0.43 | $ | 2,724 | |
| Check Processing | 6,336 | Payments @ | $ 0.22 | $ | 1,394 | |
| Monthly Bank Account Fee | 6 | Months @ | $ 150 | $ | 900 | $ 7,870 |
| **Tax Reporting** | | | | | | |
| Annual Fee -Qualified Settlement Fund | 1 | Year @ | $ 1,000 | $ | 1,000 | |
| Individual Income Tax Reporting (W2 & 1099) | 1 | Year @ | $ 750 | $ | 750 | $ 1,750 |
| **Project Management** | | | | | | |
| Senior Vice President | 2 | Hours @ | $ 225 | *waived* | | |
| Project Management | 40 | Hours @ | $ 175 | $ | 7,000 | |
| Technical Consulting | 10 | Hours @ | $ 180 | $ | 1,800 | $ 8,800 |
| **Other Charges and Out-of-pocket Costs** | | | | | | |
| | | | | $ | | 700 |
| **Total Settlement Administration Estimate** | | | | | | **$ 33,703** |



**Settlement Administration Estimate**
**Ceron v Flagship**
**November 20, 2019**

Prepared by:
**Eric Bishop**
**SVP, Client Services**
**612-359-2988**
ebishop@rustconsulting.com

## Terms and Conditions

All claims administration services to be provided by Rust Consulting to Customer shall be subject to the following terms and conditions:

1. Services.  Subject to the terms hereof, Rust Consulting agrees to provide the Customer with claims administration services (hereinafter, "Claims Services") as specified in the Proposal provided to Customer to which these Terms and Conditions are attached.

2. Term.  The terms of this agreement will remain in effect until completion of the Claims Services, unless earlier terminated in accordance with Section 10 hereof.

3. .  Charges for Services.  Charges to the Customer for Claims Services shall be on a time and materials basis at our prevailing rates, as the same may change from time to time.  Any fee estimates set forth in the proposal are estimates only, based on information provided by Customer to Rust Consulting.  Actual fees charged by Rust Consulting to Customer may be greater or less than such estimate, and Customer shall be responsible for the payment of all such charges and expenses in accordance with Section 4 hereof.  Furthermore, Customer will be responsible for payment of all state and local sales and use taxes, if any, levied upon the charges payable by the Customer hereunder.  Charges incurred related to resolving post distribution withholdings and related corrective files due to voids and re-issues of payments and related correspondence with state and federal taxing authorities will not be charged to the Customer to the extent that funds are received from the taxing authorities offset these charges.  Rust Consulting may derive financial benefits from financial institutions in connection with the deposit and investment of settlement funds with such institutions, including without limitation, discounts on eligible banking services and fees, and loans at favorable rates.

4. Payment of Charges.  Payment by Customer of Rust Consulting's monthly invoices shall be due upon receipt thereof.  Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law.  Decisions of the court and actions of the parties, including disapproval or withdrawal of a settlement, do not affect the Customer's liability to Rust Consulting for payment of Claims Services.   Claims Services are not provided on a contingency fee basis.

5. Confidentiality.  Rust Consulting agrees to implement and maintain reasonable and appropriate security measures and safeguards to protect the security and confidentiality of Customer data provided to Rust Consulting by Customer in connection herewith.  Should Rust Consulting ever be notified of any judicial order or other proceedings in which a third party seeks to obtain access to the confidential data created by or for the Customer, Rust Consulting will promptly notify the Customer, unless prohibited by applicable law.  The Customer shall have the option to (1) provide legal representation at the Customer's expense to avoid such access or (2) promptly reimburse Rust Consulting for any of its costs, including attorneys' fees, reasonably incurred in avoiding, attempting to avoid or providing such access and not paid by the entity seeking the data.  If Rust Consulting is required, pursuant to a court order, to produce documents, disclose data, or otherwise act in contravention of the obligations imposed by this Agreement, or otherwise, with respect to maintaining the confidentiality, proprietary nature and secrecy of the produced documents or disclosed data, Rust Consulting will not be liable for breach of said obligation.

6. Standard Banking Procedures.  In accordance with Rust Consulting's standard banking procedures, Rust Consulting will establish a demand deposit checking account (i.e. non-interest bearing) for funds received related to a distribution, unless directed otherwise in writing by the parties or unless the settlement agreement stipulates otherwise.  When directed to invest funds in an interest bearing or investment accounts, Rust Consulting intends to invest all funds in U.S. government backed securities, unless directed by the parties in writing or the settlement agreement or distribution plan to invest in other types of securities; however, even in cases where funds are temporarily placed in interest bearing or investment accounts, funds will eventually be migrated to a demand deposit checking account prior to a fund distribution.

7. Rights in Data.  Rust Consulting does not convey nor does the Customer obtain any right in the programs, system data, or materials utilized or provided by Rust Consulting in the ordinary course of business in the performance of this Agreement.

8. Document Retention.  Unless directed otherwise in writing by Customer, Rust Consulting will destroy undeliverable notice mail on the effective date of the settlement or the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Rust will maintain claim forms and other correspondence for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Rust Consulting will retain all bank and tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

9. Limitation of Liability: Disclaimer of Warranty.  Rust Consulting warrants that our services will be performed with reasonable care in a diligent and competent matter.  Our sole obligation will be to correct any non-conformance with this warranty.  Rust Consulting shall not be liable, whether under theories of contract, negligence or other tort, statutory duty or other theories of liability in an amount exceeding the total charges to the Customer for the specific work affected by the error or omission.  Rust Consulting will not be liable for any incidental, special, indirect, consequential or exemplary damages of any kind; or for any lost profits, lost opportunities, business interruption or for any liability incurred by the Customer or others to any third party. THE WARRANTIES SET FORTH HEREIN ARE EXCLUSIVE AND ARE IN LIEU OF ALL OTHER WARRANTIES, EXPRESSED, IMPLIED, OR STATUTORY, INCLUDING BUT NOT LIMITED TO, ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR USE FOR PARTICULAR PURPOSE.

10. Termination.  The Claims Services to be provided under this Agreement may be terminated, at will by the Customer upon at least 30 calendar days' prior written notice to Rust Consulting.  The Customer's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout that 30 day period.  Rust Consulting may terminate this Agreement (i) with 10 calendar days' prior written notice, if the Customer is not current in payment of charges or (ii) in any event, upon at least 3 months' prior written notice to the Customer.

11. Notice.  Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier service to the responsible officer or principal of Rust Consulting or the Customer, as applicable, and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service.

12. Force Majeure.  To the extent performance by Rust Consulting of any of its obligations hereunder is substantially prevented by reason of any act of God or by reason of any other matter beyond Rust Consulting's reasonable control, then such performance shall be excused and this Agreement, at Rust Consulting's option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

13. Nonwaiver of Rights.  No failure or delay on the part of a party in exercising any right hereunder will operate as a waiver of, or impair, any such right.  No single or partial exercise of any such right will preclude any other or further exercise thereof or the exercise of any other right.  No waiver of any such right will be effective unless given in a signed writing.

14. Jurisdiction.  The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicable case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement.  The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in the Court.

15. Survival.  All accrued payment obligations hereunder, any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 7 (Rights in Data); Section 5 (Confidentiality), Section 9 (Limitation of Liability; Disclaimer of Warranty), and Section 14 (Jurisdiction).

16. Entire Agreement.  These Terms and Conditions and the proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein.  No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized representative.