GRAHAMHOLLIS APC
Graham S.P. Hollis (SBN 120577)
ghollis@grahamhollis.com
Vilmarie Cordero (SBN 268860)
vcordero@grahamhollis.com
David Lin (SBN 312350)
dlin@grahamhollis.com
3555 Fifth Avenue, Suite 200
San Diego, California 92103
Telephone: (619) 692-0800
Facsimile: (619) 692-0822

Attorneys for Plaintiff MARTA L CERON DE OROZCO and EMMA BARCENAS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA L CERON DE OROZCO and EMMA BARCENAS, individually and on behalf of all similarly situated employees of Defendants in the State of California,<br><br>Plaintiff,<br><br>v.<br><br>FLAGSHIP FACILITY SERVICES, INC.; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No.: 3:18-CV-02397-JLS-JLB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date:  December 17, 2020<br>Time: 1:30 p.m.<br>Dept.: 4D<br>Judge: Hon. Janis L. Sammartino<br><br>[IMAGED FILE] |

**Table of Contents**

I. INTRODUCTION ..................................................................................................1

II. RULE 23 CERTIFICATION ...............................................................................1

    a. The Court Should Affirm Its Certification of the Settlement Class .........1

III. ADEQUACY OF THE NOTICE ........................................................................3

IV. RULE 23 FAIRNESS FACTORS .......................................................................4

    a. The Fairness Factors Are Satisfied ...............................................................5

        i. The Strength of Plaintiff's Case, and the Risk, Exposure, Complexity, and Likely Duration of Further Litigation .................5

        ii. The Risk of Maintaining Class Action Status Throughout Trial ........................................................................................................7

        iii. Amount Offered in Settlement ..........................................................8

        iv. Extent of Discovery Completed and Stage of Proceedings .............9

        v. Experience and Views of Counsel ...................................................10

        vi. Presence of a Governmental Participant ........................................10

        vii. Reaction of the Class Members to the Proposed Settlement ........11

    b. There Is No Evidence of Collusion ............................................................12

V. THE FLSA SETTLEMENT SHOULD RECEIVE FINAL APPROVAL .......13

VI. THE PAGA ALLOCATION SHOULD RECEIVE FINAL APPROVAL ......14

VII. CONCLUSION ...................................................................................................15

GrahamHollis APC
3555 Fifth Avenue Suite 200
San Diego, California 92103

# TABLE OF AUTHORITIES

**Page(s)**

**Supreme Court Cases**

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997).................................................................................................1

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)..............................................................................3, 5

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).................................................................................................7

**Appellate Court Cases**

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)...............................................................................5, 12

*Officers for Justice v. Civil Serv. Com.*,
   688 F.2d 615 (9th Cir. 1982)............................................................................5, 6, 8

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)...................................................................................10

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)...................................................................................6

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008).................................................................................5

**Federal Cases**

*Acosta v. Frito-Lay, Inc.*,
   2018 U.S. Dist. LEXIS 75998 (N.D. Cal. May 4, 2018)........................................5

*Camilo v. Ozuna*,
   2019 U.S. Dist. LEXIS 83794 (N.D. Cal. May 16, 2019)....................................13

*Chu v. Wells Fargo Investments, LLC*,
   2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011)....................................15

*Garner v. State Farm Mut. Auto Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22,
    2010) ..................................................................................................... 5, 11

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................... 8

*Smith v. Am. Greetings Corp.*,
    2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016) ......................... 14

*Willner v. Manpower Inc.*,
    2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) ......................... 14

**Statutes**

28 U.S.C. 1715 ............................................................................................... 11

California's Unfair Competition Law ............................................................... 6

Fair Labor Standards Act ("FLSA") ........................................................ *passim*

Labor Management Relations Act .................................................................... 6

Private Attorney General Act of 2004 ("PAGA"), Cal. Labor Code § 2698 et
    seq. ..................................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) ......................................................................................... 2

Fed. R. Civ. P. 23(b) ......................................................................................... 2

Fed. R. Civ. P. 23(e) ...................................................................................... 3, 4

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................... 3

## I. INTRODUCTION

On July 22, 2020, this Court granted preliminary approval of a $2,000,000 non-reversionary class, collective, and Private Attorney General Act of 2004, Cal. Labor Code § 2698 et seq. ("PAGA") settlement between Plaintiffs Marta L. Ceron De Orozco and Emma Barcenas ("Plaintiffs") and Defendant Flagship Facility Services, Inc. ("Defendant"). Plaintiffs entered into the Settlement on behalf of themselves and other similarly situated individuals and/or aggrieved janitorial employees who worked for Defendant in California from August 13, 2014 through January 30, 2020 (the "Class Period"). The notice procedures ordered by the Court were properly carried out and the results of those procedures indicate that there have been no oppositions to or requests for exclusion from the Settlement. Now, consistent with the Court's Preliminary Approval Order (ECF No. 44) (1) Granting Preliminary Approval of Class Action Settlement, (2) Provisionally Certifying Settlement Class, (3) Approving Notice and Notice Plan, (4) Appointing Class Counsel and Class Representative, (5) Appointing Settlement Administrator, and (6) Setting Schedule for Final Approval Process ("Preliminary Approval Order")), and the Court's Order Granting the Parties' Joint Ex Parte Motion to Modify the Preliminary Approval Order (ECF No. 46), and because the Settlement has received no objections from the Class, Plaintiffs request that the Court grant final approval of the Settlement.

## II. RULE 23 CERTIFICATION

### a. The Court Should Affirm Its Certification of the Settlement Class

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). In the present case, the Court previously certified the settlement class for purposes of settlement only. (Prelim. Approval Order, at 5-11.) No additional facts have come to light to disturb the logic of that Order.

To achieve certification, a proposed class must meet the following requirements:
(1) the class is so numerous that joinder of all members is

1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL**

> impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

(Fed. R. Civ. P. 23(a).) Additionally, a class action must meet one of the conditions outlined in Rule 23(b), such as the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Fed. R. Civ. P. 23(b)(3).)

In its Preliminary Approval Order, this Court determined that the numerosity requirement was satisfied, as there are now 6,922 Class Members who have been identified, and joinder of all members would be impractical. (Declaration of Graham S.P. Hollis in Support of Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement ("Hollis Decl."), at ¶ 32; Prelim Approval Order, at p. 6.) This Court also indicated that the commonality requirement was satisfied, because the workplace policies at issue in this case apply to all Class Members. (*Id.* at p. 6-7.) The Court further indicated that the Plaintiffs' claims were typical of all putative Class Members, because their claims arise out of the same underlying policies and practices as the claims pertaining to the entire Settlement Class, and because the Parties had not identified any defenses unique to the Class Representatives. (*Id.*, at p. 7-8.) Finally, the Court indicated that the adequacy requirement was met because there is no conflict of interest amongst the Class Representatives, Class Members, or Class Counsel, and because there is no reason to believe that the Class Representatives or Class Counsel have failed to vigorously investigate or litigate the case. (*Id.*, at p. 7-8.)

There have been no subsequent developments that would cast doubt on the Court's prior determinations in regard to each of these factors. Plaintiffs therefore request that the Court affirm its certification of the Settlement Class for purposes of settlement only.

///

### III. ADEQUACY OF THE NOTICE

The Court must also determine that the Class received adequate notice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), overruled on other grounds by *WalMart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)."

Rule 23(c)(2)(B) requires that the Parties use "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The Court found the Parties' proposed notice procedures to be in compliance with Rule 23, and approved the Parties' Proposed Notice and notice plan. (ECF No. 44, at p. 17-18; ECF No. 46) The Parties, with assistance from Rust, followed the notice procedure laid out in the Court's Orders and provided the Class with the best notice practicable.

The Parties worked closely with Rust to carry out the Court-approved notice program and to locate the best possible mailing address for each Class Member. (Hollis Decl., at ¶ 18.) In accordance with the Settlement terms, Defendant transmitted the Class List to Rust on August 5, 2020, and Rust performed both the NCOA and Accurint address searches prior to the initial mailing of the Class Notice. (Hollis Decl., at ¶ 22; Declaration of Chris Pikus for Rust Consulting, Inc. ("Pikus Decl."), at ¶¶ 7-8.) On August 27, 2020, Rust mailed the Class Notice to the 6,922 Class Members identified by Defendant to each Class Member's updated mailing address, if one was identified, via First Class U.S. Mail. (Hollis Decl., at ¶ 23; Pikus Decl., at ¶ 9.) Included with the Class Notice was also the FLSA Consent Form, providing Class Members the opportunity to opt in to the FLSA release in order to obtain their pro rata share of the 5% portion of the Net Settlement Amount set aside for the FLSA claims. (Hollis Decl., at ¶ 23; Pikus Decl., at ¶ 9.)

By October 26, 2020, Rust had performed 653 address traces on Class Notices which were returned as undeliverable for a first time. (Hollis Decl., at ¶ 26; Pikus Decl., at ¶ 11.) The address trace utilizes the Class Member's name, previous address, and Social Security number to locate a current address. (Hollis Decl., at ¶ 26; Pikus Decl., at ¶ 11.) Of the 653

3
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL**

initial address traces performed, 549 updated addresses were obtained, and the Class Notices were promptly re-mailed to those Class Members via First Class mail. (Hollis Decl., at ¶ 26; Pikus Decl., at ¶ 11.) Of the 549 Class Notices which were re-mailed, 98 were returned as undeliverable a second time. (Hollis Decl., at ¶ 26; Pikus Decl., at ¶ 11.) As of October 26, 2020, here were also 196 Class Notices returned which included a forwarding address. (Hollis Decl., at ¶ 26; Pikus Decl., at ¶ 12.) These Class Notices were promptly re-mailed to the forwarding address. (Hollis Decl., at ¶ 26; Pikus Decl., at ¶ 12.) As of the date of filing the instant motion, only 202 out of 6,922 Class Notices remain undeliverable. (Hollis Decl., at ¶ 27; Pikus Decl., at ¶ 11.)

Ultimately, the Class Notice was successfully delivered to 6,720 of the 6,922 Class Members, a successful delivery rate of approximately 97%. (Hollis Decl., at ¶ 37; Pikus Decl., at ¶¶ 11, 14-15.) The Class Notices were mailed via First Class U.S. Mail, and explicitly disclosed the Maximum Settlement Amount as well as the amounts requested for settlement administration costs, Class Representative service awards, attorney's fees and costs, and the PAGA payment to the LWDA. (Hollis Decl., at ¶ 28; Pikus Decl., at ¶ 9.) The Class Notice explicitly indicated that Class Counsel would seek 30% of the Maximum Settlement Amount, or $600,000.00 in attorney's fees, which was to be deducted from the Maximum Settlement Amount. (Hollis Decl., at ¶ 29.) The Class Notice also explained the claims that would be released by the Class upon final approval of the Settlement and specifically highlighted the estimated Individual Settlement Payment that the particular Class Member would receive. (Hollis Decl., at ¶ 30.) Tellingly, not a single Class Member submitted an objection or requested exclusion from the Settlement. (Hollis Decl., at ¶ 41; Pikus Decl., at ¶¶ 14-15.)

## IV. RULE 23 FAIRNESS FACTORS

A settlement may be approved if it is "fair, reasonable and adequate." (Fed. R. Civ. P. 23(e)(2).) Courts generally evaluate the following factors to determine whether a settlement is fair, reasonable, and adequate:

///

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).) *See also Hanlon*, 150 F.3d at 1026. This determination is committed to the sound discretion of the trial judge. *Id.* "Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, *13 (N.D. Cal. Apr. 22, 2010) (quoting *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *5 (N.D. Cal. Feb. 17, 2016)). "Additionally, there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

### a. The Fairness Factors Are Satisfied

This Court considered the first seven factors listed above in its Preliminary Approval Order and found that each of them weighed in favor of approving the Settlement. (ECF No. 44, at 12-14.) The eighth factor, the reaction of the class members to the proposed settlement, also weighs in favor of approving the Settlement.

#### i. The Strength of Plaintiff's Case, and the Risk, Exposure, Complexity, and Likely Duration of Further Litigation

While the court is to consider the strength of a plaintiff's case on the merits balanced against the amount offered in settlement, the court need not reach an ultimate conclusion about the merits of the dispute. *Acosta v. Frito-Lay, Inc.*, 2018 U.S. Dist. LEXIS 75998 *21 (N.D. Cal. May 4, 2018). Rather the court's evaluation is "nothing more than an

5
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL**

amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982) (citing *Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). The reality is that "parties, counsel, mediators, and district judges naturally arrive at a reasonable range of settlement by considering the likelihood of a plaintiff's or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

This Action alleges that Defendant failed to provide meal and rest periods; failed to pay minimum, regular, and overtime wages; failed to pay accrued vacation wages; failed to indemnify necessary business expenses; failed to provide accurate itemized wage statements; failed to timely pay all wages due upon separation of employment; failed to produce employment records; violated California's Unfair Competition Law; violated California's PAGA statute; and violated the Fair Labor Standards Act. (Hollis Decl., at ¶ 31.) Plaintiffs believe each claim is meritorious, while Defendant denies any liability and wrongdoing, and believes that its defenses have merit. (Hollis Decl., at ¶ 55). As such, Plaintiffs recognize that further litigation of this class action would involve significant risk. (Hollis Decl., at ¶ 56.) For example, Defendant argues that it provided Plaintiffs and Class Members with compliant meal and rest breaks, that it provided work phones so that employees did not need to use their personal cell phones, that it properly reimbursed Class Members for any work-related use of their personal cell phones, that the time Class Members spent obtaining and renewing security badges is non-compensable, that it strictly prohibits any off-the-clock work, and that Plaintiffs' claim regarding vacation pay is preempted by the Labor Management Relations Act ("LMRA"). (Hollis Decl., at ¶ 56.) In short, Defendant maintains that it did not engage in and cannot be liable for any Labor Code, Wage Order, or FLSA violations alleged by Plaintiffs and Class Members. (Hollis Decl., at ¶ 56.)

If Defendant received a favorable ruling on any of its contentions, Class Members could recover substantially less than the Maximum Settlement Amount and possibly not

6

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL**

receive any recovery at all, particularly pursuant to PAGA under which recovery is discretionary. (Hollis Decl., at ¶ 58.) Even if Plaintiffs succeeded at trial, Defendant may appeal any adverse judgment, and has indicated that it would actively oppose class certification. (Hollis Decl., at ¶ 58.) The time, expenses, and resources needed to continue litigating this Action, including any future appeals, would potentially outweigh any benefits offered to the Class Members. (Hollis Decl., at ¶ 58.) Given the challenges Plaintiffs would continue to face in this Action compared with the finality and speed of recovery under the Settlement, approval of the Settlement is favorable to continued litigation. (Hollis Decl., at ¶ 59.) The Parties have acknowledged the risks involved in Plaintiffs' case, and have reached a settlement that will afford all Class Members significant recovery.

In its Preliminary Approval Order, the Court found these factors to weigh in favor of the Settlement being fair, reasonable, and adequate, and there have been no subsequent developments that would cast doubt on the Court's prior determination in regard to these factors. (Preliminary Approval Order, p. 12.)

### ii. The Risk of Maintaining Class Action Status Throughout Trial

As this Court stated in its Preliminary Approval Order, Defendant has disputed whether the Class can be validly certified in the absence of the Settlement, and has implicitly indicated the likelihood of initial challenges to class certification and the potential for decertification motions even if class certification were granted. (Preliminary Approval Order, p. 12.) The class certification area is one that is particularly fraught at this time due to the Supreme Court's recent decisions, including *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), and lower courts' often-conflicting interpretations of the expansiveness of the same. If certification is granted, Plaintiffs will likely have to expend the time and resources to combat a motion to decertify and/or motion for summary judgment. (Hollis Decl., at ¶ 60.) Additionally, Plaintiffs will have to demonstrate through trial that the case is in fact manageable. (Hollis Decl., at ¶ 60.) Based on the foregoing, there is no doubt that achieving and maintaining class certification throughout trial would

be difficult and would require significant time and financial resources. (Hollis Decl., at ¶ 60.) Therefore, settlement is favorable to continued litigation. The settlement here obviates the need for highly contested class certification and decertification motions or further litigation on appeal.

In its Preliminary Approval Order, the Court found this factor to weigh in favor of the Settlement being fair, reasonable, and adequate, and there have been no subsequent developments that would cast doubt on the Court's prior determination in regard to this factor. (Preliminary Approval Order, p. 12.)

### iii. Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, a court should look at the settlement as a whole. *Officers for Justice*, 688 F.2d at 628. Additionally, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery available at trial. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

In this case, the Parties have agreed to a non-reversionary Maximum Settlement Amount of $2,000,000.00. (Hollis Decl., at ¶ 50; SA, at § 1.20.) Based on Class Counsel's evaluation of the case, Defendant's maximum potential exposure to damages was estimated to be $147,559,515.26. However, this estimate is based on an inflated "everything goes right" scenario where class certification is granted and maintained throughout litigation, and that Plaintiffs prevail on all claims at trial and recover the full amount of the estimated damages, including all potential civil penalties. (Hollis Decl., at ¶ 52.) Thus, while the Settlement represents a discount on the potential financial exposure to Defendant if Plaintiffs established liability on all claims and recovered the full estimate of damages, this compromise is reasonable given the substantial cost and uncertainty of continued litigation. (*Id.*, at ¶ 52.)

The Settlement commits Defendant to create a Maximum Settlement Amount, from which Class Members will derive a significant financial recovery for their alleged damages and extinguish the risks of continued litigation and any appeals that would likely be filed

following a judgment in Plaintiffs' favor. (Hollis Decl., at ¶ 53.) Such developments would likely result in a delay of several years before this case would be resolved, with no guarantee of recovery. (Hollis Decl., at ¶ 53.)

The Settlement does not require Class Members to submit a claim. Each Class Member who has not submitted a Request for Exclusion will be mailed a check representing their Individual Settlement Payment, which shall be calculated based on the number of workweeks worked during the Class Period. (SA, at § 4.3.) The Settlement Administrator has calculated that there are 417,924.66 total Qualified Workweeks for the Class. (Pikus Decl., ¶ 8.) With the Net Settlement Amount currently estimated to be $1,291,000.00, this equates to approximately $3.09 per Qualified Workweek, with the average Class Member estimated to receive approximately $186.50. (Hollis Decl., at ¶ 54.)

This Court preliminarily approved the Settlement, ruling that in light of the risks of continued litigation, the amount offered in the proposed Settlement is fair and reasonable, and that this factor therefore weighs in favor of approval of the Settlement. (ECF No. 44, p. 13.) Although the number of Class Members is higher than estimated in the Motion for Preliminary Approval, the total number of Qualifying Workweeks within the Class Period has not exceeded the Parties' initial estimate of 400,000 by more than 10%. (Hollis Decl., at ¶ 32.) As such, Class Counsel does not believe the change in the number of Class Members to be a substantial change which would cast doubt on the Court's prior determination in regard to this factor. (Hollis Decl., at ¶ 32.)

### iv. Extent of Discovery Completed and Stage of Proceedings

Both before and after filing the complaint in this matter, Class Counsel thoroughly investigated and researched the claims in controversy, the potential defenses, and the developing body of law related to the claims asserted. (Hollis Decl., at ¶ 42.) The Parties exchanged extensive written discovery and took multiple depositions. (Hollis Decl., at ¶¶ 83-84.) On August 6, 2019 the Parties participated in a day-long mediation with Mr. Tripper Ortman, a well-respected neutral third-party mediator who specializes in resolving employment class action matters including wage and hour violations. (Hollis Decl., at ¶

44.) Throughout this litigation, counsel for both Parties performed a significant amount of work to fully evaluate the strength of the claims asserted. (Hollis Decl., at ¶ 43.) Based on the information gathered during their investigation, Class Counsel prepared a comprehensive damages analysis, which contained a detailed review of the records and outlined the factual and legal issues presented by this litigation. (Hollis Decl., at ¶¶ 48, 52.) The Settlement is illustrative of the Parties' considerable efforts to reach a mutually agreeable compromise after contentious arm's-length negotiations. (Hollis Decl., at ¶ 48.)

In its Preliminary Approval Order, this Court determined that both Parties entered into the proposed Settlement with a strong working knowledge of the relevant facts, law, and strengths and weaknesses of their claims and defenses, and that this factor therefore weighs in favor of the Settlement as being fair, reasonable, and adequate. (ECF No. 44 p. 13.) There have been no subsequent developments that would cast doubt on the Court's prior determination in regard to this factor.

### v. Experience and Views of Counsel

Competent counsel is generally better positioned than the courts to create a settlement that fairly reflects each party's expected outcome in litigation. (*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).)

Here, Class Counsel has significant wage and hour class action experience, and is well positioned to give a reasonable and intelligent assessment of the Settlement, an assessment which is entitled to due consideration. (Hollis Decl., at ¶¶ 10-14.) Class Counsel strongly supports granting final approval. (Hollis Decl., at ¶ 14.) In its Preliminary Approval Order, this Court determined that the presumption of reasonableness is warranted due to Class Counsel's extensive experience in complex California wage and hour litigation. (Preliminary Approval Order, p. 14.) There have been no subsequent developments that would cast doubt on the Court's prior determination in regard to this factor.

### vi. Presence of a Governmental Participant

While there is no affirmative duty for a government entity to take action in response

to a settlement, there is a presumption that the government entity will raise any concerns it may have during the normal course of the settlement procedures once it is put on notice. *Garner v. State Farm Mutl. Auto. Ins. Co.*, 2010 WL 1687832 *37. Here, the appropriate governmental entities were provided with proper notice of the Settlement. Defendant complied with its obligation to notify the United States Attorney General and the California Attorney General of the proposed Settlement under 28 U.S.C. 1715. (Declaration of Emily Mertes in Support of Motion for Final Approval, at ¶ 3). Plaintiffs originally provided a fully executed copy of the proposed Settlement to the LWDA on November 22, 2019. (Hollis Decl., at ¶ 4.) On October 6, 2020, after the Court granted the Parties' *ex parte* motion to modify the Preliminary Approval Order, thereby modifying the definition of the Class Period, Plaintiffs provided an updated copy of the proposed Settlement Agreement to the LWDA. (Hollis Decl., at ¶ 9.) To date, no government entity has raised any objection or concern regarding the settlement. (Hollis Decl., at ¶ 5.) Further, in its Preliminary Approval Order, this Court found that the lack of any governmental objection weighs in favor of approval, and there have been no subsequent developments that would cast doubt on the Court's prior determination in regard to this factor. (ECF No. 44, p. 14.)

### vii. Reaction of the Class Members to the Proposed Settlement

The Settlement was extremely well received by the Class, as evidenced by the fact that no Class Members objected to or requested exclusion from the Settlement. (Hollis Decl., at ¶ 37; Pikus Decl., at ¶¶ 14-15.) Class Counsel attributes the Class's favorable opinion of the Settlement to the fact that the Class Notice made it easy for Class Members to understand the terms of the Settlement and ask questions if need be. (Hollis Decl., at ¶ 39.) In addition, Class Counsel negotiated for the Class Notice to clearly indicate the estimated Individual Settlement Payment that each Class Member was eligible to recover. (Hollis Decl., at ¶ 35.) While this took more time and effort prior to mailing, providing the estimated Individual Settlement Payment in the Class Notice allowed Class Members to understand how much they may receive under the Settlement and make an informed decision about whether to object or request exclusion. (Hollis Decl., at ¶ 35.) Thus, the lack

11

of any objections underscores the Class's overwhelming support for the Settlement and this factor also weighs in favor of approving the Settlement.

### b. There Is No Evidence of Collusion

When a settlement is negotiated prior to class certification, courts must scrutinize the fairness factors by probing whether the settlement is the result of collusion, and whether class counsel has put their own self-interests or the interests of certain class members before the class as a whole. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 946-947. The court, therefore, should consider three warning signs of potential collusion:

> (1) When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) When the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from the class funds without objection by defendant; and (3) When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.*

Since this Settlement was reached prior to class certification, the Court must scrutinize the Settlement for evidence of collusion. *Id.* At 946.

As discussed in Plaintiffs' Motion for Preliminary Approval and in the Declaration of Graham S.P. Hollis filed concurrently herewith, Class Counsel thoroughly investigated the facts and law at issue in this case, and did not engage in substantive settlement negotiations until they had completed extensive discovery and possessed sufficient information to make an informed decision. (Hollis Decl., at ¶ 42.) The Settlement was negotiated with the assistance of a well-respected neutral third-party mediator, Mr. Tripper Ortman, and at all times negotiations were adversarial, non-collusive, and at arm's-length. (Hollis Decl., at ¶ 48.)

The Settlement provides that Class Counsel may seek an award of attorney's fees not to exceed 30%, of $600,000.00, of the Maximum Settlement Amount. (SA, at § 4.4.) The terms of the Settlement Agreement create a Net Settlement Amount of approximately

$1,291,000.00, which will be paid out to Participating Class Members. (SA, at § 1.21.) The amount of attorney's fees permitted by the Settlement Agreement is therefore significantly less than the estimated total pay out to Participating Class Members. Further, the amount of attorney's fees requested is less than Class Counsel's lodestar calculated to date, demonstrating that in no way are the terms of the Settlement collusive or meant to unjustly enrich Class Counsel. (Hollis Decl., at ¶¶ 74-75.)

While the Settlement Agreement does state that "Defendant agrees to not object to Class Counsel's request for fees and costs as long as the request is consistent with the terms of this Stipulation," this statement is far from the type of "clear sailing" provision of which the Court may be critical. (SA, at § 4.4.) For example, here the Settlement is not conditioned upon the Court approving the full amount of Class Counsel's requested fees and costs, and if the amount awarded to Class Counsel is less than the amount sought the remainder will be retained in the Net Settlement Amount for distribution to Participating Class Members. (SA, at § 4.4.)

Moreover, any unpaid funds do not revert back to Defendant but will be distributed to an appropriate *cy pres* recipient. (SA, at § 9).

It is therefore evident from the terms of the Settlement and the Parties' engagement in private mediation with a neutral third-party mediator that the negotiations were adversarial, informed, and non-collusive. For the reasons stated herein, this Court should confirm its approval the Settlement.

## V. THE FLSA SETTLEMENT SHOULD RECEIVE FINAL APPROVAL

When examining the settlement of a collective action under the FLSA, the court assesses whether the settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Camilo v. Ozuna*, 2019 U.S. Dist. LEXIS 83794 *30 (N.D. Cal. May 16, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). If the settlement is a reasonable compromise of issues in dispute, the court "may approve the settlement in order to promote the policy of encouraging settlement of litigation." (*Id.*)

1    Here, the FLSA settlement represents a great benefit to Class Members. Five percent (5%) of the Net Settlement Amount, or approximately $64,550.00, will be allocated to Class Members who opted in to the FLSA release by timely submitting their FLSA Consent Form. (SA, at § 4.3€) Class Members who did not timely submit his or her FLSA Consent Form will receive 95% of his or her proportionate share of the Net Settlement Amount, and that Class Member's FLSA claims will not be released. (SA, at § 4.3€) Any unclaimed FLSA allocations shall be redistributed pro-rata among all Participating Class Members. (SA, at § 4.3€) No claim form needed to be submitted to receive an Individual Settlement Payment not tied to the FLSA release.

Due to the similarities between the class claims and the FLSA claims and the risks associated with litigating complex actions, such as preserving manageability, the FLSA Settlement is also fair, reasonable, and adequate. This Court preliminarily approved the form and substance of the FLSA Collective Action Member Consent To Join Form which was sent to Class Members. To date 902 valid and executed FLSA Consent Forms have been submitted. (Hollis Decl., at ¶ 38; Pikus Decl., at ¶ 13.)  This Court should confirm its previous ruling that the FLSA Settlement is fair, reasonable and adequate.

## VI.   THE PAGA ALLOCATION SHOULD RECEIVE FINAL APPROVAL

The Settlement Agreement allocates $20,000.00 for civil penalties pursuant to PAGA, with $15,000.00 (75%) being paid directly to the LWDA, and the remaining $5,000.00 (25%) being retained in the Net Settlement Amount for distribution to Participating Class Members. (SA, at § 4.6.) While Class Counsel estimated that Defendant could be liable for up to $74,988,927.00 in civil penalties under PAGA, the proposed allocation of $20,000.00 is an exceptional outcome in light of all known facts and circumstances, as well as the fact that civil penalties under PAGA are discretionary. (Hollis Decl., at ¶ 118.) Courts have consistently ruled that no part of a settlement must necessarily be allocated and distributed to the LWDA. *See*, *e.g.*, *Smith v. Am. Greetings Corp.*, 2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016) (granting final approval of class action settlement allocating $37,500 of $4 million settlement to PAGA); *Willner v. Manpower*

14
**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL**

*Inc.*, 2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) (granting final approval of a class settlement allocating $65,655 of $8.75 million settlement to PAGA); *Chu v. Wells Fargo Investments, LLC*, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) (approving $10,000 PAGA allocation in $6.9 million settlement).

If a higher amount is allocated to the PAGA, the burden to pay civil penalties would be shifted to the members of the Settlement Class because the higher allocation would reduce the amount that the members of the Settlement Class would receive under the Settlement. Although burden shifting may achieve the enforcement objective of the statute, it would do so at the expense of the employees that the statute was designed to protect. The proposed allocation of $20,000 to the PAGA, strikes a balance between the interest of all the parties, including the LWDA and the general public, by penalizing the employer and providing relief to Participating Class Members. (Hollis Decl., at ¶ 119.) The Court should confirm its previous ruling that the PAGA allocation is fair, adequate, and reasonable.

## VII. CONCLUSION

For the reasons set forth herein, Plaintiffs request that this Court (1) finally approve the settlement in this Action; (2) finally certify the Settlement Class for Settlement purposes only; (3) approve the payment to the LWDA for PAGA penalties; and (4) enter final judgment in this Action.

Dated: November 23, 2020                    GRAHAMHOLLIS APC

By: */s/David Lin*
GRAHAM S.P. HOLLIS
VILMARIE CORDERO
DAVID LIN
Attorneys for Plaintiffs MARTA L CERON DE OROZCO and EMMA BARCENAS