UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTA L. CERON DE OROZCO and EMMA BARCENAS, individually and on behalf of all similarly situated employees of Defendants in the State of California,<br><br>Plaintiffs,<br><br>v.<br><br>FLAGSHIP FACILITY SERVICES, INC.; and DOES 1 THROUGH 50, inclusive,<br><br>Defendants. | Case No.: 18-CV-2397 JLS (JLB)<br><br>**ORDER (1) GRANTING PLAINTIFFS' MOTIONS FOR (a) FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT AND (b) ATTORNEY'S FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS; AND (2) ENTERING JUDGMENT**<br><br>(ECF Nos. 47, 48) |

Presently before the Court are Plaintiffs Marta L. Ceron de Orozco and Emma Barcenas' Motions (1) in Support of Final Approval of Class and Collective Action Settlement ("Final Approval Mot.," ECF No. 47), and (2) for Award of Attorney's Fees, Costs and Class Representative Service Awards ("Fee Mot.," ECF No. 48). Also before the Court are Defendant Flagship Facility Services, Inc.'s ("Defendant" or "Flagship") Notice of Non-Opposition to Plaintiffs' Motion for Final Approval of Class and Collective Action Settlement (ECF No. 49) and the Supplemental Declaration of Chris Pikus for Rust Consulting, Inc. Regarding Plaintiff's Motion for Final Approval of Class and Collective

Action Settlement ("Supp. Pikus Decl," ECF No. 52). The Court held a hearing on December 17, 2020. *See* ECF No. 53. Because the Settlement is fundamentally fair, reasonable, and adequate, the Court **GRANTS** Plaintiffs' unopposed Final Approval Motion. Further, because the requested attorneys' fees, costs, settlement administration expenses, and service awards are reasonable, the Court **GRANTS** Plaintiffs' Fee Motion.

## BACKGROUND

This case began on August 13, 2018, when Ms. Ceron de Orozco filed a putative class action against Flagship in the Superior Court of California for the County of San Diego. Declaration of Graham S. P. Hollis ("Hollis Decl.," ECF No. 47-2) Ex. 1 ¶ 13. On October 18, 2018, Flagship removed Ms. Ceron de Orozco's First Amended Complaint to the United States District Court for the Southern District of California. *See* ECF No. 1. On January 9, 2019, Ms. Ceron de Orozco filed the operative Second Amended Complaint ("SAC"), adding Ms. Barcenas as a named Plaintiff. *See* ECF No. 23.

Mses. Ceron de Orozco and Barcenas are both former non-exempt employees of Defendant. *See* SAC ¶¶ 9, 12. Ms. Ceron de Orozco worked for Defendant as a janitor at the San Diego International Airport from January 1999 to October 2017. *Id.* ¶ 30. Ms. Barcenas worked for Defendant as a janitor at the San Diego International Airport from June 20, 2001 to December 20, 2016. *Id.* ¶ 32. Plaintiffs allege that Defendant (1) failed to provide off-duty meal and rest breaks, (2) failed to pay for all wages for off-the-clock work, (3) failed to reimburse for necessary business expenses, and (4) incurred waiting time and Private Attorneys General Act ("PAGA") penalties. *See generally id.*

Following mediation, the parties entered into a Joint Stipulation of Class Action and PAGA Representative Action Settlement and Release (the "Settlement"). *See* Hollis Decl. Ex. 1 at Ex. 1 ("Proposed Settlement"). On July 22, 2020, the Court preliminarily approved the Settlement, provisionally certified the class, approved the proposed class notice and notice plan, and appointed class counsel, class representatives, and the settlement administrator. *See* ECF No. 44 ("Prelim. Approval Order"). On August 20, 2020, the Court granted the Parties' joint *ex parte* motion to modify the Preliminary Approval Order,

approving an amendment to the Settlement modifying the definition of the Class Period,[1] approving a proposed Amended Class Notice, and modifying the schedule for final approval. *See* ECF No. 46. On November 23, 2020, Plaintiffs filed the present Motions. *See* ECF Nos. 47, 48.

## SETTLEMENT TERMS

### I. Proposed Settlement Class and Subclass

Originally, the Proposed Settlement Class (the "Non-Exempt Class") included "all current and former non-exempt janitorial employees who worked for Defendant in California at any time from August 13, 2014 through the date of Preliminary Approval of the Settlement." Proposed Settlement ¶ 1.22. On August 20, 2020, the Court approved an amendment to the definition of "Class Period," providing for an end date of January 30, 2020. *See* ECF No. 46; *see also* Lin Decl. Ex. 1.

Originally, the Proposed Settlement Subclass (the "Waiting Time Penalties Subclass") included "all members of the Non-Exempt Class who separated from their employment with Defendant at any time from August 13, 2015 through the date of the Preliminary Approval of the Settlement." Proposed Settlement ¶ 1.39. Again, the end date was subsequently modified to January 30, 2020. *See* ECF No. 46; *see also* Lin Decl. Ex. 1.

In total, the Parties identified 6,922 potential Class Members. *See* Decl. of Chris Pikus for Rust Consulting, Inc. ("Pikus Decl.," ECF No. 47-6) ¶ 7.

### II. Proposed Monetary Relief

The Settlement provides for a $2,000,000 Maximum Settlement Amount, Proposed Settlement ¶ 1.20, allocating up to $600,000 to pay Class Counsel's fees, *id.* ¶ 4.4, up to $35,000 to pay Class Counsel's costs, *id.*, $20,000 for the Class Representative Service Awards, *id.* ¶ 4.5, up to $39,000 to pay Settlement Administration Costs, *id.* ¶ 4.7, and

---

[1] The Amendment to the Settlement was submitted to the Court as Exhibit 1 to the Declaration of David X. Lin. *See generally* ECF No. 45-1 ("Lin Decl.") Ex. 1.

1  $15,000 for the California Labor and Workforce Development Agency's ("LWDA") portion of the PAGA Payment, *id.* ¶ 4.6, with the remaining Net Settlement to be "distributed to the Class Members," *id.*

Each Class Member will receive a portion of the Net Settlement "calculated based on the respective number of Qualifying Workweeks . . . worked during the Class Period." *Id.* ¶ 4.3(a). First, the Settlement Administrator will determine the number of Qualifying Workweeks the Class Member worked during the Class Period. *Id.* ¶ 4.3(b). Then, if the Class Member also is a member of the Waiting Time Penalties Subclass, he or she will be allocated an additional six Qualifying Workweeks. *Id.* ¶ 4.3(c). Finally, each Class Member's individual payment will be allocated based on his or her percentage of Qualifying Workweeks over the total number of Qualifying Workweeks for all Class Members. *Id.* Consequently, although payments will vary, "with the Net Settlement Amount currently estimated to be $1,291,000.00, this equates to approximately $3.09 per Qualified Workweek, with the average Class Member estimated to receive approximately $186.50." ECF No. 47-1 ("Final Approv. Mot. Mem.") at 9.

The Parties also have set aside 5% of the Net Settlement for the settlement of Class Members' FLSA claims. *Id.* ¶ 4.3(e). Class Members need to submit an opt-in form in a timely manner to be eligible for their FLSA Settlement Payment. *Id.* Once a Class Member timely submits his or her FLSA Consent Form, thereby opting in, he or she is "entitled to a pro-rata share of the FLSA Settlement Fund based on the ratio of the [individual's] total number of Qualifying Workweeks. . . to the total number of Qualifying Workweeks that all participating Class Members worked during the Class Period." *See* ECF No. 40-1 ("Mot. for Prelim. Approv. Mem.") at 8.

In exchange, the Class Members will release "any and all claims alleged in the Second Amended Complaint," which includes claims for

> (a) Failure to provide meal periods, or premium pay; (b) Failure to provide rest periods, or premium pay; (c) Failure to pay all minimum and regular wages; (d) Failure to pay all overtime wages; (e) Failure to pay accrued vacation wages; (f) Failure to

|  |  |
|---|---|
| 1 | indemnify necessary business expenses; (g) Failure to timely pay all wages due during, and upon separation of, employment; (h) Failure to provide accurate itemized wage statements; (i) Failure to maintain accurate records; (j) Violation of Cal. Business and Professions Code §§ 17200, *et seq.*, arising from the claims that are alleged in the Second Amended Complaint; (k) Penalties provided under Cal. Labor Code sections 226.7, 512, and 558, and the applicable IWC Wage Order for failure to provide meal and rest periods; (l) Penalties provided under Cal. Labor Code sections 1194 and 1197.1 and the applicable IWC Wage Order for failure to pay minimum wages; (m) Penalties provided under Cal. Labor Code sections 510, 558, and 1194, and the applicable IWC Wage Order for failure to pay overtime wages; (n) Liquidated damages provided under California Labor Code section 1194.2 for failure to pay minimum wages; (o) Penalties provided under Cal. Labor Code sections 201, 202, 203, 204, and 210 for failure to timely pay all wages owed; (p) Penalties under Cal. Labor Code section 226, made available under the Private Attorneys General Act; (q) Penalties under Cal. Labor Code section 1174 and the applicable IWC Wage Order, made available under the Private Attorneys General Act, for failure to maintain accurate records; (r) Penalties under Cal. Labor Code section 2698 *et seq.* predicated on alleged California Labor Code violations or penalties that were asserted based upon the facts alleged in the Action (which include Cal. Labor Code sections 201, 202, 203, 204, 210, 218.5, 218.6, 221, 223, 224, 225.5, 226, 226.3, 226.7, 510, 512, 558, 1194, 1194.2, 1197, 1197.1, 1198, 1198.5, and 2802); and (s) Related damages, restitution, disgorgement, interest, attorneys' fees, costs, or expenses relating to any such claims. |

Proposed Settlement ¶ 12.1. Further, any Class Member who opts in to the FLSA Fund "will fully and forever release and discharge the Released Parties from . . . all claims made under the [FLSA] and any alleged federal wage and hour violations/allegations that were made or could have been made based on the actual claims asserted or factual allegations in the Action." *Id.* ¶ 12.2.

/ / /

/ / /

None of the Maximum Settlement Amount will revert to Defendant. *Id.* ¶ 9.1. To the extent that any funds remain after distribution to the Class Members, that amount "shall be distributed to Legal Aid at Work as a *cy pres* award." *Id.* ¶¶ 9.2, 9.3.

## MOTION FOR FINAL APPROVAL OF SETTLEMENT

### I. Class Action Settlement

#### A. *Class Certification*

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). In the present case, the Court already has certified the Settlement Class and Subclass. *See* Prelim. Approv. Order at 5–11, 18–19. The Court subsequently approved an amended definition for "Class Period" applicable to the Settlement Class and Subclass. *See* ECF No. 46; *see also* Lin Decl. Ex. 1.

#### B. *Adequacy of Notice*

The Court must also determine that the Class received adequate notice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.* In its Preliminary Approval Order, the Court preliminarily approved the Parties' proposed Notice and Notice Plan. *See* Prelim. Approv. Order at 17–18. Subsequently, the Court approved an Amended Notice reflecting the revised Class Period. *See* ECF No. 46.

In support of their Final Approval Motion, Plaintiffs have filed the Declaration of Chris Pikus for Rust Consulting, Inc., who is "a Senior Project Manager for Rust Consulting, Inc. ('Rust')," the Settlement Administrator. *See generally* Pikus Decl.; *see also id.* ¶ 1. In his declaration, Mr. Pikus details the actions taken by Rust to provide notice in accordance with the Amended Notice Plan. *See generally id.* Having reviewed Mr.

///

Pikus's declaration, the Court finds that the Settlement Class and Subclass received adequate notice of the Settlement.

### C. *Fairness of the Settlement*

The Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(1)(C). Factors relevant to this determination include:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. This determination is committed to the sound discretion of the trial judge. *Id.*

In its Preliminary Approval Order, the Court addressed each of the *Hanlon* factors in turn and found that the pertinent factors weighed in favor of approving the Settlement. *See* Prelim. Approv. Order at 11–16. The Court subsequently approved a minor amendment to the Settlement revising the end date for the Class Period, *see* ECF No. 46, which the Court does not believe materially alters this analysis. Since then, no member of the Settlement Class has filed an objection, *see* Pikus Decl. ¶ 15; Supp. Pikus Decl. ¶ 5, and Defendant has filed a Notice of Non-Opposition to the Final Approval Motion, *see* ECF No. 49. Because no pertinent facts have changed, the Court reaffirms and incorporates by reference its analysis of the Rule 23(e) requirements as set forth in its Preliminary Approval Order. *See* Prelim. Approv. Order at 11–16. Accordingly, the Court finds the Settlement to be "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e).

## II. FLSA Settlement

Before approving the settlement of a collective action under the FLSA, the Court must assess whether the settlement "is a fair and reasonable resolution of a bona fide

dispute over FLSA provisions." *Camilo v. Ozuna*, Case No. 18-cv-02842-VKD, 2019 WL 2141970, at *10 (N.D. Cal. May 16, 2019) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)). "If the settlement is a reasonable compromise of issues in dispute, the court 'may approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1354).

The Court previously preliminarily approved the FLSA Collective Action Member Consent to Join Form. *See* Prelim. Approv. Order at 19. Class Counsel argues that, "[d]ue to the similarities between the class claims and the FLSA claims and the risks associated with litigating complex actions, such as preserving manageability, the FLSA Settlement is also fair, reasonable, and adequate." *Id.* Class Counsel asserts that "the FLSA settlement represents a great benefit to Class Members," as "[f]ive percent (5%) of the Net Settlement Amount, or approximately $64,550.00, will be allocated to Class Members who opted in to the FLSA release." Final Approv. Mot. Mem. at 14. Class Members who did not opt in will receive ninety-five of their proportionate share of the Net Settlement Amount, and their FLSA claims will not be released. *Id.* Any unclaimed FLSA allocations will be redistributed pro rata among the participating Class Members. *Id.*

It appears Rust, the Settlement Administrator, performed admirably with regard to the FLSA Consent Forms, attempting outreach to the Class Members who submitted incomplete Consent Forms, *see* Pikus Decl. ¶ 13, and accepting late Consent Forms, *see* Supp. Pikus Decl. ¶ 3, and thus the Court concludes, based on the circumstances of this case, that the FLSA Settlement appears fair, reasonable, and adequate.

### III.   PAGA Allocation

Finally, the Settlement allocates $20,000 for PAGA penalties, with $15,000, or seventy-five percent, paid to LWDA and the remaining $5,000, or twenty-five percent, remaining in the Net Settlement Amount for distribution to the Class Members. Final Approv. Mot. Mem. at 14. Class Counsel contends that, "[i]f a higher amount is allocated to the PAGA, the burden to pay civil penalties would be shifted to the members of the Settlement Class because the higher allocation would reduce the amount that the members

of the Settlement Class would receive," *id.* at 15, and, at any rate, "[c]ourts have consistently ruled that no part of a settlement must necessarily be allocated and distributed to the LWDA," *id.* at 14–15 (citations omitted).

No objections have been made to the requested PAGA allocation, which the Court finds reasonable. The Court therefore approves the requested PAGA allocation in the amount of $20,000, which the Court finds to be "'fair and adequate in view of the purposes and policies of [PAGA].'" *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F. Supp. 3d 1074, 1077 (C.D. Cal. 2017) (quoting *O'Connor v. Uber Techs.*, 201 F. Supp. 3d 1110, 1135 (N.D. Cal. 2016)).

## IV. Conclusion

Because all the pertinent factors here weigh in favor of approving the Settlement, the Court **GRANTS** Plaintiffs' Final Approval Motion.

## MOTION FOR ATTORNEY'S FEES, COSTS, AND SERVICE AWARDS

Class Counsel seek attorneys' fees in the amount of $600,000—i.e., thirty percent of the Gross Settlement Fund—and reimbursement of litigation costs in the amount of $26,861.68. Fee Mot. at 2. Class Counsel also request Settlement administration expenses to Rust in the amount of $39,000 and Class Representative Service Awards of $10,000 each to named Plaintiffs Marta L. Ceron de Orozco and Emma Barcenas, for a total of $20,000. *Id.* The Court addresses each of Class Counsel's requests in turn.

## I. Attorneys' Fees

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorneys' fees "authorized by law or by the parties' agreement." The Court has discretion to award attorneys' fees based on "the percentage-of-the-fund method or the lodestar/multiplier approach." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994). The Ninth Circuit has routinely applied the percentage-of-the-fund approach, treating twenty-five percent as the "benchmark." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1994). Despite this benchmark, district courts have discretion to

///

"[a]djust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *Id.* at 379.

Here, Class Counsel seek thirty percent of the $2,000,000 Gross Settlement Fund, totaling $600,000, *see* ECF No. 48-1 ("Fee Mot. Mem.") at 2, which exceeds the Ninth Circuit's twenty-five percent benchmark. In its Preliminary Approval Order, the Court indicated that, "[a]t th[at] point, without Class Counsel's Briefing, the Court f[ou]nd[] no reason to award fees that exceed the Ninth Circuit's 25% benchmark," and that "Class Counsel w[ould] need to show what special circumstances exist warranting a higher percentage in their motion for attorney's fees." Prelim. Approv. Order at 15.

In their Fee Motion, Class Counsel contend that the requested fees of $600,000 are reasonable under either the percentage-of-the-fund or lodestar approach to calculating a reasonable fee. *See* Fee Mot. Mem. at 2–7. Specifically, Class Counsel contend that a departure from the twenty-five percent benchmark under the percentage-of-the-fund approach is warranted given the "favorable" results for Class Members, *see id.* at 4; the "favorable amount" payable to the LWDA as PAGA penalties, *see id.*; the fact that "U.S. District Courts in California typically award attorney's fees in the range of 30-40% in wage and hour class actions that result in the recovery of a common fund under $10 million," *see id.* at 3, 4 (citations omitted); the "significant risks" posed by the litigation, *id.* at 4; the contingent nature of the case, *see id.* at 4–5; and the non-opposition of any Class Members, *see id.* at 5. As for the lodestar method, Class Counsel have worked 1,566.7 hours on this matter, *see id.* at 5, resulting in a lodestar calculation of $702,998.00, *see id.* (citing Hollis Decl. ¶ 75). "While courts will often apply a multiplier of three or four times to adjust a lodestar figure upward or downward in complex class action litigation such as this, no such multiplier is necessary in this case because Class Counsel's lodestar amount is already higher than the $600,000.00 amount requested." *Id.* at 6.

Having reviewed the Fee Motion, the Declaration of Graham S. P. Hollis in Support of Plaintiffs' Fee Motion with its supporting exhibits, Class Counsel's arguments, and the applicable law, and given the lack of objection from Defendant or the Settlement Class, the

Court agrees that the fee request in the amount of $600,000, or thirty percent of the Gross Settlement Fund, is reasonable under the circumstances, particularly in light of the favorable results achieved by Class Counsel, the risk Class Counsel assumed by taking this case on contingency, and the award being in line with fee awards in similar actions. Accordingly, the Court finds that an award of thirty percent of the Gross Settlement Fund, or $600,000, is reasonable under the circumstances of this case.

## II. Costs

The Settlement authorizes Class Counsel to apply for reimbursement of up to $35,000 in costs, *see* Proposed Settlement ¶ 4.4, and Class Counsel seek reimbursement for $26,861.68, *see* Fee Mot. Mem. at 7. According to Class Counsel, "[e]ach of the expenses incurred is of the type that would normally be billed to and paid for by a client, including filing fees, copying, postage, computerized factual and legal research charges, telephone charges, and mediation fees," *id.* (citing Hollis Decl. ¶ 95), and "[a]ll expenses were reasonably and necessarily incurred as a result of Class Counsel's prosecutorial efforts," *id.* (citing Hollis Decl. ¶ 96). No objections have been made to these costs, and the Court finds that Class Counsel's litigation expenses are typical and reasonable. The Court therefore approves the requested costs reimbursement in the amount of $26,861.68.

## III. Settlement Administration Expenses

The Settlement further authorizes the deduction of up to $39,000 from the Gross Settlement Fund for the administration costs incurred by the Settlement Administrator. Proposed Settlement ¶ 4.7. Class Counsel seek approval of settlement administration expenses in the amount of $39,000 to the Settlement Administrator, Rust, *see* Fee Mot. Mem. at 7–8, which includes "fees incurred and future costs for completion of the administration," Pikus Decl. ¶ 16. No objections have been made to these expenses, and the Court finds that the Settlement Administrator's expenses are reasonable. The Court therefore approves the requested administration expenses in the amount of $39,000.

/ / /

/ / /

### IV. Service Awards

Incentive awards are "fairly typical" discretionary awards "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009) (citations omitted). In deciding whether to give an incentive award, the Court may consider:

> 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995) (citations omitted).

Class Counsel seek a $10,000 service award for each of named Plaintiffs Marta L. Ceron de Orozco and Emma Barcenas, for a total of $20,000. Fee Mot. Mem. at 8–15. In its Preliminary Approval Order, the Court found, on the record before it at the time, the requested service awards "unreasonable in light of the time expended and the average payment each of the Class Members will receive." Prelim. Approv. Order at 16 (citations omitted). Accordingly, the Court preliminarily approved service awards in the revised amount of $5,000 for each named Plaintiff as reasonable but indicated that "Plaintiffs may attempt to substantiate a $10,000 Named Plaintiff Service Award in their motion for final approval." *Id.*

In the Fee Motion, Class Counsel contend that the requested awards are reasonable in light of other awards within this District. Fee Mot. Mem. at 9. Class Counsel point to *Moreno v. Beacon Roofing Supply, Inc.*, No. 19cv185-GPC(LL), 2020 WL 3960481 (S.D. Cal. July 13, 2020), in which a $10,000 service award was approved for a $230,000 settlement and where the plaintiff "responded to discovery, including obtaining phone

records, participated in interviews, meetings, and telephone consultations, and reached out to other witnesses." Fee Mot. Mem. at 9. Class Counsel contend that the named Plaintiffs in this action "performed even greater duties in service of the class," because each named Plaintiff sat for a full-day deposition and sought out additional witnesses for Class Counsel to interview. *Id.* (citing Hollis Decl. ¶¶ 105, 108).

Class Counsel also note that the named Plaintiffs took on the risk of potentially having to pay Defendant an award of costs were they to be unsuccessful and the risk that future employers would be reluctant to hire them in light of this litigation. *Id.* at 10 (citing Hollis Decl. ¶ 104). The named Plaintiffs also "have gone above and beyond their regular class members' duties and without their efforts, this litigation would have not been able to resolve." *Id.* Since preliminary approval, the named Plaintiffs have performed additional work, including reaching out to Class Members and explaining the terms of the Settlement to Spanish-speaking Class Members. *Id.* at 10–11 (citing Hollis Decl. ¶¶ 105, 112). Many Spanish-speaking Class Members reached out to the named Plaintiffs after receiving the Notice of Proposed Settlement with questions, which the named Plaintiffs "patiently and diligently answered." *Id.* at 11 (citing Barcenas Decl. ¶ 22; Ceron Decl. ¶ 25). Although the named Plaintiffs had previously estimated spending thirty to forty hours each on this litigation, they each now estimate having expended more than fifty hours on this litigation, including time pre-filing and post-preliminary approval. *Id.* (citing Barcenas Decl. ¶ 27; Ceron Decl. ¶ 30).

Class Counsel also submit declarations from each named Plaintiff to further support the reasonableness of their service award requests. *See* ECF Nos. 48-4 ("Ceron Decl."), 48-5 ("Barcenas Decl."). In addition to setting forth many of the facts previously mentioned, the Barcenas Declaration notes that Ms. Barcenas "was also a union representative for janitorial workers at Flagship so other janitors would voice their complaints to [her]." Barcenas Decl. ¶ 6. In addition to declaring many of the previously set forth facts, the Ceron Declaration indicates that Ms. Ceron de Orosco has continued to make herself available to Class Counsel despite herself and her husband becoming ill

from—and her husband recently passing away due to—COVID-19. Ceron Decl. ¶¶ 9, 26. The Court offers its sincere condolences to Ms. Ceron on the loss of her husband and wishes her a full and speedy recovery.

Finally, Class Counsel highlight the "significantly broader release" named Plaintiffs agreed to under the Settlement as further supporting the requested $10,000 service awards. Fee Mot. Mem. at 13. Class Counsel claim that this release justifies the requested service awards relative to the average payment received by each Class Member. *Id.* Class Counsel note that, "[w]hile Plaintiffs release any and all claims, Class Members only release those that were brought or could have been brought under the operative complaint," *id.* (citing Proposed Settlement ¶ 1.33), and "[t]hese do not include the claims at issue in [two] previously resolved class cases," *id.*, nor "those claims still being litigated in [an action currently pending in Santa Clara Superior Court]," *id.* Thus, although the named Plaintiffs "are foreclosed from seeking any other remedies," the Class Members "have recovered and/or may continue to recover damages from Defendant based on the claims in these other cases." *Id.*

Having considered the relevant factors, Class Counsel's arguments, and the supporting declarations, the Court finds the requested service award of $10,000 to each named Plaintiff, in the total amount of $20,000, to be reasonable.

## V.  Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Fee Motion.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motions (ECF Nos. 47, 48) and **ORDERS** as follows:

1. The Court **GRANTS** final approval of the Settlement and finds that: (1) the Settlement is fair and reasonable to the Class when balanced against the possible risks of further litigation, including issues relating to class certification, liability, calculating damages, and potential appeals; (2) significant investigation, research, and litigation was conducted, which

allowed the Parties to fairly evaluate their respective positions; (3) settlement at this time will avoid the substantial cost, delay, and risks presented by further litigation of the action; and (4) the Settlement was reached after serious, informed, and non-collusive negotiations, which were conducted at arm's length by experienced counsel with the assistance of a neutral and reputable mediator.

2. The Court further finds that the proposed Settlement Class meets the requirements of numerosity, commonality, and typicality to justify certification, and that there is adequate and fair representation.

3. The Court hereby **GRANTS** final approval to the Settlement and finds it reasonable and adequate, and in the best interests of the Class as a whole. Accordingly, the Court hereby **DIRECTS** that the Settlement be effectuated in accordance with the Stipulation of Settlement. In light of the foregoing, the Court:

   a. **ORDERS** that the settlement awards be made and administered in accordance with the terms of the Stipulation of Settlement as to the 6,922 Class Members, which includes the 908 individuals who have validly opted to participate in the FLSA Collective Action.

   b. Finds that, under the California Private Attorneys General Act ("PAGA"), California Labor Code §§ 2699 *et seq.*, a PAGA payment of $20,000 is reasonable, and hereby **ORDERS** that the Settlement Administrator shall pay the PAGA Payment of $20,000 as set forth in the Stipulation of Settlement. Of this amount, seventy-five percent, or $15,000, will be paid to the LWDA and twenty-five percent, or $5,000, will be distributed to Class Members pursuant to the terms of the Settlement.

   c. **CONFIRMS** Graham Hollis APC as Class Counsel and **APPROVES** the requested fee of $600,000, as well as $26,861.68 in costs, both to be paid from the Settlement Fund.

   d. **CONFIRMS** Rust as the Settlement Administrator and **APPROVES** $39,000 in costs and expenses to be paid to Rust from the Settlement Fund.

   e. Finds named Plaintiffs Marta L. Ceron De Orozco and Emma Barcenas suitable class representatives and **ORDERS** payment to each of $10,000 out of the Settlement Fund.

   f. Directs that, in accordance with the Stipulation for Settlement, any uncashed settlement checks or settlement checks that remain uncashed after 180 days after mailing be redistributed to Legal Aid at Work as a *cy pres* award.

  Without affecting the finality of this Order for purposes of appeal, the Court **RETAINS** jurisdiction over this matter for the purposes of enforcing the Settlement and issuing any orders in connection therewith.

  **IT IS SO ORDERED.**

Dated: December 18, 2020

             *Janis L. Sammartino*
             Hon. Janis L. Sammartino
             United States District Judge

16

18-CV-2397 JLS (JLB)